IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FILENE'S BASEMENT, INC., et al.,[1] | ) | Case No. 09-11525 (___) |
| | ) | |
| Debtors. | ) | |

## MOTION FOR ENTRY OF AN ORDER PURSUANT TO SECTIONS 105(a), 363(c), 1107(a), AND 1108 OF THE BANKRUPTCY CODE AUTHORIZING THE DEBTORS TO HONOR PREPETITION OBLIGATIONS TO CUSTOMERS AND TO OTHERWISE CONTINUE CUSTOMER PRACTICES AND PROGRAMS IN THE ORDINARY COURSE OF BUSINESS

The captioned debtors and debtors in possession (the "Debtors") hereby move this Court (this "Motion") for entry of an order authorizing the Debtors to honor certain prepetition obligations to customers and to otherwise continue customer practices and programs in the ordinary course of business. In support of this Motion, the Debtors respectfully state as follows:

### Jurisdiction and Venue

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for the relief requested herein are sections 105(a), 363, 1107 and 1108 of title 11 of the United States Code (the "Bankruptcy Code").

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Filene's Basement, Inc. (8237); FB Services LLC (7224); and FB Leasing Services LLC (7228). The address for all Debtors is 25 Corporate Drive, Suite 400, Burlington, MA 01803.

28189-001\DOCS_DE:147762.1

## Background

3. On the date hereof (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors continue in possession of their property and operate and manage their business, as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

4. The factual background relating to the Debtors' commencement of these chapter 11 cases is set forth in detail in the *Declaration of Mark Shulman, President of Filene's Basement, Inc., in Support of First Day Motions* (the "Shulman Declaration") filed contemporaneously with this Motion and incorporated herein by reference.

## Relief Requested

5. Prior to the Petition Date and in the ordinary course of their business, the Debtors engaged in certain practices to maximize sales, engender customer loyalty, and develop and sustain brand loyalty and a positive reputation in the marketplace. These practices include, but are not limited to, the following: (a) gift card program ("Gift Card Program"), (b) a product exchange and returns program ("Product Returns Program"), and (c) advertising and promotional coupon programs ("Advertising and Promotional Program" and, together with the Gift Card Program, and the Advertising and Promotional Program, the "Customer Programs"). The Customer Programs create incentives for continuing and increased sales to the Debtors' customers. The Customer Programs, which are commonplace among retailers similar to the Debtors, are described in detail below. The common goals of the Customer Programs are to meet competitive pressures, ensure customer satisfaction, and generate brand loyalty and

goodwill for the Debtors, thereby retaining current customers, attracting new ones, and ultimately enhancing net revenue and the going concern value of the business.

6. The Debtors need to continue those Customer Programs post-petition that have been cost-effective and beneficial to their business and, in connection therewith, seek authority to honor their prepetition obligations with respect to such Customer Programs. Such relief is necessary to preserve the Debtors' critical customer relationships and goodwill for the benefit of the estates. For the reasons set forth herein, it is in the best interest of the Debtors, their estates and creditors, to honor, in the Debtors' discretion, the Debtors' prepetition obligations in connection with the Customer Programs, and to continue the Customer Programs in the ordinary course of business.

7. Pursuant to new Rule 6003(b) of the Federal Rules of Bankruptcy Procedure, which became effective on December 1, 2007, "a motion to pay all or part of a claim that arose before the filing of the petition" shall not be granted by the Court within 20 days of the Petition Date "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm . . . ." Fed. R. Bankr. P. 6003(b). For the reasons described herein and as supported by the Shulman Declaration, the Debtors submit that the requirements of Rule 6003 have been met and that the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates.

## Customer Programs

8. The following describe the Debtors' Customer Programs:

A.  **Gift Card Program**

9. The Debtors issue prepaid gift cards (the "Gift Cards") that are redeemable by customers at any of the Debtors' stores in return for merchandise. Gift Cards may be purchased for use by the purchaser or a third party. The Gift Cards are typically for amounts between $20 and $100. The Gift Cards do not have expiration dates. As of the Petition Date, the Debtors estimate that there were approximately $550,000 in outstanding Gift Cards issued under the Gift Card Program.

10. Programs such as the Gift Card Program are common in the marketplace, and are an essential component of a retailer's competitive customer services. Customer confidence and goodwill, and the Debtors' ability to remain competitive and preserve assets, will be severely harmed and the Debtors' revenues will decline if the Debtors are prevented from honoring the prepetition Gift Cards after the Petition Date. Moreover, the Debtors believe that honoring the Gift Card Program will also contribute to additional sales as customers often purchase in excess of the face amount of the Gift Card when they are redeemed.

11. The Debtors seek authority, in the exercise of their business judgment and in its sole their discretion, to honor prepetition obligations related to the Gift Card Program up to the maximum aggregate amount of $550,000 and to continue to implement the Gift Card Program on a postpetition basis and honor postpetition obligations related to the Gift Card Program in the ordinary course of business and in their sole discretion.

B. **Advertising and Promotion Program**

12. Under the Advertising and Promotion Program, the Debtors issue discount coupons for certain products that are redeemable in the Debtors' stores by the holder of the coupon during each week of the upcoming month. The coupons are generally valid for one week. The Debtors mail the coupons to certain customers in the Debtors' database by U.S. mail and electronic mail. In addition, the Debtors sometime place advertisements in newspapers and other periodicals whereby they offer discount coupons on merchandise and which are redeemable for a period of time at the Debtors' stores.

13. The Debtors estimate that discount coupons with an estimated value of approximately $100,000 are outstanding as of the Petition Date.

14. Like the Gift Card Program, the Advertising and Promotion Program is common in the Debtors' industry, and are an essential component of the retail business. The Debtors' ability to remain competitive will be harmed and the Debtors' revenues will decline if the Debtors are prevented from honoring existing coupons and discounts under the Advertising and Promotion Program after the Petition Date. The Debtors seek authority, in the exercise of their business judgment and in their discretion, to honor prepetition obligations related to the discount coupons and to continue to honor postpetition obligations related to the Advertising and Promotion Program in the ordinary course of business.

C. **Product Returns Program**

15. Pursuant to the Product Returns Program, cash and debit card purchases that are returned are refunded in cash, to the credit card used for the purchase, or to a store credit,

depending upon when the purchase transaction occurred, the form of payment that was used, and whether the customer presents a sales receipt with the returned item. If the customer does not have a receipt, then the merchandise may only be exchanged for store credit.

16. The policies reflected in the Product Returns Program are common in the Debtors' marketplace and, like the other Customer Programs, are an essential component of the Debtors' business. The Product Returns Program is an integral part of the Debtors' business strategy and is designed to ensure customer confidence in the Debtors' merchandise. Customer loyalty would be impacted if the Debtors are not able to continue to honor the return of merchandise sold prepetition. In addition, the Debtors believe that sales will be negatively impacted if customers do not believe that they can return purchased merchandise for store credit.

17. The Debtors estimate that the amount owed as of the Petition Date under the Product Returns Program is up to $1,800,000. The Debtors seek authority, in the exercise of their business judgment and in their discretion, to continue to implement the Products Return Policy consistent with this Motion on a postpetition basis and honor postpetition obligations related to the Product Returns Program in the ordinary course of business.

## Basis for Relief

18. Sections 1107(a) and 1108 of the Bankruptcy Code authorize a debtor in possession to continue to operate its business. Section 363(c) of the Bankruptcy Code authorizes a debtor in possession operating its business pursuant to section 1108 of the Bankruptcy Code to use property of the estate in the ordinary course of business without notice or a hearing. The Debtors respectfully submit that continuing, renewing, replacing, initiating and terminating their

Customer Programs is in the ordinary course of their business, and is permitted by sections 363(c), 1107(a) and 1108 of the Bankruptcy Code, without further application to the Court. However out of an abundance of caution, the Debtors request the relief stated herein.

19. In connection with honoring prepetition claims, section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. §105(a). A bankruptcy court's use of equitable powers to "authorize the payment of prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept." *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989). Under 11 U.S.C. §105, a court "can permit pre-plan payment of a pre-petition obligation when essential to the continued operation of the debtor." *In re NVR L.P.*, 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) (*citing Ionosphere Clubs*, 98 B.R. at 177). The Debtors strongly believe that continuation of the Customer Programs is imperative to their ongoing operations and viability. Conversely, the Debtors submit that the Debtors' failure to honor their obligations under the Customer Programs would have a disastrous impact upon customer loyalty and goodwill.

20. The "necessity of payment" doctrine further supports the relief requested herein. This doctrine "recognizes the existence of the judicial power to authorize a debtor in a reorganization case to pay prepetition claims where such payment is essential to the continued operation of the debtor." *Ionosphere Clubs*, 98 B.R. at 176, *see also In re Lehigh & New England Railway Co.*, 657 F.2d 570, 581 (3rd Cir. 1981) (stating the "necessity of payment" doctrine "teaches no more than, if payment of a claim which arose prior to reorganization is

essential to the continued operation of the [business] during reorganization, payment may be authorized even if it is made out of corpus."); *In re Chateaugay Corp.*, 80 B.R. 279 (S.D.N.Y. 1987). The rationale for the necessity of payment rule is consistent with the paramount goal of chapter 11, "facilitating the continued operation and rehabilitation of the debtor." *Ionosphere Clubs*, 98 B.R. at 176; *see also Dudley v. Mealey*, 147 F.2d 268, 271 (2nd Cir.), *cert. denied*, 325 U.S. 813 (1945) ("let [the Debtor] once shut down, and it will lose much of its value. . . . Some priority to [the Debtor's prepetition suppliers] may be essential to preservation of the business").

21. The loyalty and continued patronage of the Debtors' customers is critical to the Debtors' goal of maximizing the value of their estates. Where retaining loyalty and patronage of customers is critical to the ongoing operations of a debtor for the benefit of its estate and creditors, courts in this and other districts have granted relief similar to that requested here. *See, e.g.,* See, e.g., In re *ACG Holdings, Inc.*, Case No. 08-11467 (CSS) (Bankr. D. Del. July 16, 2008); *In re Vertis Holdings, Inc.*, Case No. 08 11460 (CSS) (Bankr. D. Del. July 16, 2008); *In re Tropicana Entm't Corp.*, Case No. 08 10856 (KJC) (Bankr. D. Del. May 6, 2008); *In re Sharper Image Corp.*, Case No. 08 10322 (KG) (Bankr. D. Del. Feb. 20, 2008) *In re Goody's Family Clothing, Inc., et al.*, Case No. 08-11133 (CJS) (Bankr. D. Del. June 10, 2008; *In re Tweeter Home Entertainment Group, Inc.*, Case No. 07-10787 (PJW) (Bankr. D. Del. June 12, 2007); *In re Western Nonwovens, Inc.*, Case No. 08-11435 (PJW) (Bankr. D. Del. July 15, 2008); *In re Global Motorsports Group*, et al., Case No. 08-10192 (KJC) (Bankr. D. Del. February 1, 2008); *In re Global Home Products, LLC, et. al.*, Case No. 06-10340 (KG) (Bankr. D. Del. April 11, 2006); *J.L. French Automotive Castings, Inc., et al.*, Case No. 06-10119

(MFW) (D. Del. Mar. 3, 2006); *In re Radnor Holdings Corp.*, Case No. 06-10894 (PJW) (Bankr. D. Del. Aug. 23, 2006); *Nellson Nutraceutical, Inc., et al.*, Case No. 06-10072 (PJW) (D. Del. Mar. 31, 2006); and *In re Werner Holding Co. (DE), Inc.*, Case No. 06-10578 (KJC) (Bankr. D. Del. June 13, 2006).

22. Moreover, section 363(b)(1) of the Bankruptcy Code empowers the Court to allow a debtor to "use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). A debtor's decisions to use, sell or lease assets outside of the ordinary course of business must be based upon the sound business judgment of the debtor. *See, e.g., Meyers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996); *In re Chateaugay Corp.*, 973 F.2d 141, 143 (2d Cir. 1992) (a judge determining a section 363(b) application must find a good business reason to grant such application); *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143 (3d Cir. 1986); *In re Lionel Corp.*, 722 F.2d 1063 (2d Cir. 1983); *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991); *In re Ionosphere Clubs, Inc.*, 100 B.R. 670, 675 (Bankr. S.D.N.Y. 1989) (the standard for determining a section 363(b) motion is "good business reason").

23. The business judgment rule is satisfied where "the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992), *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993) (*quoting Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)). In a bankruptcy case, the decision must be "reasonable in light of the circumstances surrounding the Debtor's bankruptcy." *In re Montgomery Ward Holding*

*Corp.*, 242 B.R. 147, 155 (D. Del. 1999). In fact "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986). Courts have consistently and appropriately been loathe to interfere with corporate decisions absent a showing of bad faith, self-interest, or gross negligence, and will uphold a board's decisions as long as they are attributable to any "rational business purpose." *Integrated Res., Inc.*, 147 B.R. at 656.

24. The Debtors submit that the relief requested herein represents a sound exercise of the Debtors' business judgment and is justified under section 363(b), as well as under section 105(a) of the Bankruptcy Code. If the Debtors are prohibited from honoring their prepetition Customer Program obligations and maintaining those Customer Programs consistent with past business practices, customers will likely lose confidence in the Debtors, thereby impeding the Debtors' ability to maintain and enhance their business operations for the benefit of their creditors. The Debtors' failure to honor the Customer Programs would significantly disadvantage the Debtors in the highly competitive marketplace in which such programs are commonplace, and there is no reason to think that the Debtors' loyal customers would stay loyal if the Debtors did not honor or continue their Customer Program obligations. Ultimately, the damage from refusing to honor these obligations or continue these programs far exceeds the cost associated with honoring prepetition obligations and continuing the Customer Programs. At this critical early state, the Debtors simply cannot risk any loss of customer confidence as a result of their failure to honor prepetition obligations to customers or discontinuing their Customer

Programs. The relief requested herein will protect the Debtors' goodwill during this critical time and enhance the Debtors' ability to generate revenue. Consequently, the Debtors' estates and creditors will benefit if the requested relief is granted. The Debtors shall use their discretion to maintain the programs only where, in their business judgment, doing so will continue to inure to the benefit of the estates.

25. Accordingly, the Debtors request that they be authorized, in their business judgment and at their discretion, to (a) perform and honor their prepetition obligations under the Customer Programs as they deems appropriate, and (b) continue, renew, replace, implement new and terminate such of the Customer Programs as they deems appropriate, in the ordinary course of business, without further application to the Court. Any delay in the relief sought herein, even being forced to advise customers that further judicial relief is necessary, could result in the loss of a substantial portion of the Debtors' customer base, diminish the value of the Debtors' assets, and severely harm the Debtors' prospects for a successful sale of their assets.

26. Nothing herein is intended or should be construed as an admission as to the validity of any claim against any of the Debtors, a waiver of any of the Debtors' rights to dispute any claim, or an approval or assumption of any agreement, contract, or lease. If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any claim or a waiver of any of the Debtors' rights to subsequently dispute such claim and recover such payments.

## Notice

27. Notice of this Motion has been given to the following parties or, in lieu thereof, to their counsel, if known: (i) the Office of the United States Trustee; (ii) the Debtors' pre-petition and post-petition secured lenders; and (iii) the Debtors' prepetition *ad hoc* committee of unsecured creditors. As the Motion is seeking "first day" relief, within two business days of the hearing on the Motion, the Debtors will serve copies of the Motion and any order entered respecting the Motion as required by Del. Bankr. LR 9013-1(m). The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

WHEREFORE, the Debtors respectfully request that the Court (i) enter an order granting the Motion and (ii) grant such other and further relief as this Court may deem just and proper.

Dated: May 4, 2009

PACHULSKI STANG ZIEHL & JONES LLP

/s/ Laura Davis Jones
Laura Davis Jones (Bar No. 2436)
David M. Bertenthal (CA Bar No. 167624)
Michael R. Seidl (Bar No. 3889)
Joshua M. Fried (CA Bar No. 181541)
Timothy P. Cairns (DE Bar No. 4228)
919 North Market Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
E-mail:  ljones@pszjlaw.com
         dbertenthal@pszjlaw.com
         mseidl@pszjlaw.com
         jfried@pszjlaw.com
         tcairns@pszjlaw.com

[Proposed] Counsel to Debtors and
Debtors in Possession