IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FILENE'S BASEMENT, INC., et al.,[1] | ) | Case No. 09-11525 (___) |
| | ) | |
| Debtors. | ) | |

**MOTION (A) FOR AUTHORIZATION TO (I) UTILIZE
CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363; AND (II) PROVIDE
ADEQUATE PROTECTION PURSUANT TO 11 U.S.C. §§ 361 AND 363 AND (B)
TO SCHEDULE A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001**

The captioned debtors and debtors in possession (collectively, the "Debtor") in the captioned chapter 11 case (the "Case"), pursuant to sections 105, 361, 362, 363 and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code"), Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-2 of the Delaware Local Bankruptcy Rules (the "Local Rules"), hereby moves this Court for entry of the interim order attached hereto (the "Interim Order") on an expedited basis, the scheduling of the final hearing on this Motion (the "Final Hearing"), and the entry of a final order on this Motion (the "Final Order"), seeking, without limitation, the following relief:

    (i)    authorizing the Debtor's use of "cash collateral" as defined in Section 363(a) of the Bankruptcy Code ("Cash Collateral") in which the Prepetition Agent, the

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Filene's Basement, Inc. (8237); FB Services LLC (7224); and FB Leasing Services LLC (7226). The address for all Debtors is 25 Corporate Drive, Burlington, MA 01803.

Prepetition Lenders and the Prepetition Junior Participant (each as defined herein) assert an interest;

   (ii) providing adequate protection to the Prepetition Agent, the Prepetition Lenders and the Prepetition Junior Participant for any diminution in value of their interests in the Prepetition Collateral (as defined herein), including the Cash Collateral;

   (iii) vacating and modifying the automatic stay imposed by Section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of this Interim Order; and

   (iv) scheduling a final hearing (the "Final Hearing") to consider the relief requested in the Motion and approving the form of notice with respect to the Final Hearing.

In support of this Motion, the Debtor represents as follows:

## Jurisdiction

1. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§157 and 1334. This is a core proceeding pursuant to 28 U.S.C. §157(b)(2). Venue for proceedings on this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for the relief requested herein are sections 105(a), 361, 362, 363 and 507 of title 11 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001(b) and 9014, and Del.Bankr.L.R. 4001-2.

## Background

3. On the date hereof (the "Petition Date"), the Debtor commenced this case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor has

continued in the possession of its property and has continued to operate and manage its business as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner or committee has been appointed in the Debtor's chapter 11 case.

4. The factual background relating to the Debtor's commencement of this chapter 11 case is set forth in detail in the *Declaration of Mark Shulman, President of Filene's Basement, Inc, in Support of First Day Motions* (the "Shulman Declaration") filed contemporaneously with this Motion and incorporated herein by reference.

### The Prepetition Loan

5. Prior to the commencement of the Case, the Debtor was party to that certain Second Amended and Restated Loan and Agreement dated as of January 23, 2008 (as may be amended, supplemented, restated or otherwise modified prior to the Petition Date, the "Prepetition Agreement"), among the Debtor, National City Business Credit, Inc., as Administrative Agent, Collateral Agent, L/C Issuer and Lender (the "Prepetition Agent"), National City Bank, as L/C Issuer and Lead Arranger, Wells Fargo Retail Finance, LLC, and Wachovia Capital Finance Corporation (Central), as Co-Documentation Agents and the lenders that are parties thereto from time to time (collectively, together with the Prepetition Agent, the "Prepetition Lenders"), pursuant to which the Prepetition Lenders provided credit and letter of credit facilities to the Debtor and provided other financial accommodations to or for the benefit of the Debtor (collectively, the "Prepetition Revolver Facility"). The Prepetition Revolver Agreement and all other loan and security documents executed in connection therewith, are herein occasionally referred to as the "Prepetition Documents".

6. The Prepetition Revolver Facility provided the Debtor with up to $100,000,000 in aggregate maximum principal amount of revolving commitments, including letter of credit and swingline loan commitments, with a sublimit for letters of credit and bankers' acceptances of $25,000,000.

7. Pursuant to that certain Last Out Participation Agreement dated as of February 11, 2009 (as may be amended, supplemented, restated or otherwise modified prior to the Petition Date, the "Prepetition Participation Agreement"), among the Prepetition Agent, as Agent, and Retail Ventures, Inc. (the "Prepetition Junior Participant"), the Prepetition Junior Participant purchased a junior last out participation in the Prepetition Revolver Facility in the aggregate principal amount of $7,500,000.00.

8. The Prepetition Lenders allege that, and the Debtor stipulates that, pursuant to the Prepetition Financing Agreements, subject to and without prejudice the challenge rights set forth in ¶19 of the Interim Order, and to be set forth in the Final Order:

    a    **Prepetition Obligation.** As of the Petition Date, the outstanding principal amount of all loans, including the Prepetition Participation Obligations (as defined below) under the Prepetition Agreement was $16,981,631, which amount includes $1,746,807 face amount of issued and outstanding letters of credit and banker's acceptances (collectively, together with any amounts paid, incurred or accrued prior to the Petition Date in accordance with the Prepetition Revolver Documents, principal, accrued and unpaid interest, any fees, including the early termination fee, expenses, and disbursements (including, without limitation, attorneys' fees, related expenses and disbursements), indemnification obligations and other charges of whatever nature, whether or not contingent, whenever arising, due or owing in respect thereof, the "Prepetition Obligations"). The Prepetition Obligations are guaranteed by certain non-debtors. As of the Petition Date, the outstanding principal amount of all loans under the Prepetition Participation Agreement was $7,500,000.00 (together with any amounts paid, incurred, or accrued prior to the Petition Date in accordance with the Prepetition Participation Agreement, principal, accrued and unpaid interest, any fees, expenses, and disbursements (including, without

limitation, attorneys' fees, related expenses and disbursements), indemnification obligations and other charges of whatever nature, whether or not contingent, whenever arising, due or owing in respect thereof, the "Prepetition Participation Obligations").

b **Prepetition Liens and Prepetition Collateral.** As more fully set forth in the Prepetition Documents, prior to the Petition Date, the Debtor granted security interests in and liens on, among other things, substantially all assets of the Debtor (collectively, the "Prepetition Collateral") to the Prepetition Agent, for itself and the Prepetition Lenders (the "Prepetition Liens").

c **Validity, Perfection and Priority of Prepetition Liens and Prepetition Obligations.** The Debtor (for itself and its estate), acknowledges and agrees that: (a) as of the Petition Date, the Prepetition Liens on the Prepetition Collateral were valid, binding, enforceable, non-avoidable and properly perfected; (b) as of the Petition Date, the Prepetition Liens were senior in priority over any and all other liens on the Prepetition Collateral, subject only to certain liens otherwise permitted by the Prepetition Documents (to the extent any such permitted liens were valid, properly perfected, non-avoidable and senior in priority to the Prepetition Liens as of the Petition Date, the "Permitted Prior Liens");[2] (c) the Prepetition Obligations constitute legal, valid, binding, and non-avoidable obligations of the Debtor; (d) no offsets, challenges, objections, defenses, claims or counterclaims of any kind or nature to any of the Prepetition Liens or Prepetition Obligations exist, and no portion of the Prepetition Liens or Prepetition Obligations is subject to any challenge or defense including, without limitation, avoidance, disallowance, disgorgement, recharacterization, or subordination (whether equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (e) the Debtor and its estate has no claims, objections, challenges, causes of actions, and/or chose in action, including without limitation, avoidance claims under chapter 5 of the Bankruptcy Code, against the Prepetition Agent or the Prepetition Lenders or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors and employees arising out of, based upon or related to the respective loans to the Debtor; (g) as of the Petition Date, the value of the Prepetition Collateral securing the Prepetition Obligations exceeded the amount of those obligations, and accordingly the Prepetition Obligations are allowed secured claims within the meaning of Section 506 of the Bankruptcy Code, in a principal amount of not less than $16,981,631, together with

---

[2] Nothing herein shall constitute a finding or ruling by this Court that any such Permitted Prior Liens are valid, senior, enforceable, prior, perfected or non-avoidable. Moreover, nothing shall prejudice the rights of any party in interest including, but not limited, to the Debtor, the Prepetition Agent, the Prepetition Lender, and any Statutory Committee to challenge the validity, priority, enforceability, seniority, avoidability, perfection or extent of any such Permitted Prior Lien and/or security interest.

accrued and unpaid interest, fees (including, without limitation, the early termination fee) and costs (including without limitation attorneys' fees and related expenses), and any and all other charges of whatever nature owing in respect of such Prepetition Obligations; and (h) any payments made on account of the Prepetition Obligations to or for the benefit of the Prepetition Agent or the Prepetition Lenders prior to the Petition Date were on account of amounts in respect of which the Prepetition Agent and the Prepetition Lenders were oversecured, were payments out of the Prepetition Collateral, and such payments did not diminish any property otherwise available for distribution to unsecured creditors.

    d    **Cash Collateral.** The Debtor represents that all of the Debtor's cash, including the cash in its deposit accounts, wherever located, whether as original collateral or proceeds of other Prepetition Collateral, constitutes the Cash Collateral of the Prepetition Agent and the Prepetition Lenders and the Prepetion Junior Participant.

    e    **Default by the Debtor**. The Debtor acknowledges and stipulates that the Debtor is in default of its debts and obligations under the Prepetition Documents.

### Need for the DIP Facility and Use of Cash Collateral

9.    The Debtor has an immediate and critical need to use Cash Collateral in order to continue its operations, pay its employees, suppliers and service providers and other accounts payable, preserve the going concern value of its business and conduct and orderly sale of its assets. The Debtor's access to sufficient use of Cash Collateral is vital to the Debtor's operating its business as a going concern and the Debtor's maximizing the value of its assets and estate. Without the use of Cash Collateral, the Debtor could not continue to operate, and the going concern value of its business would be diminished or lost entirely, and the Debtor and its estate would suffer immediate and irreparable harm.

10.    The Prepetition Agent, the Prepetition Lenders and the Prepetition Junior Participant have consented to the Debtor's use of Cash Collateral in which they assert and interest, but solely on the terms and conditions set forth in the Interim Order and the Budget.

The Debtor, after considering all of its alternatives, has concluded, in an exercise of its sound business judgment, that the use of Cash Collateral on such terms and conditions, represents the best terms for funding presently available to the Debtor.

11. The Debtor has negotiated the use of Cash Collateral in good faith and at arm's-length basis with the Prepetition Agent. The Debtor believes that the terms of the use of Cash Collateral are fair and reasonable, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and fair consideration.

## Summary of Interim Order

12. Pursuant to Rule 4001(b) of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules"), the relevant provisions of the Interim Order are as follows.[3] **The proposed form of Interim Order contains the following provision that is required to be highlighted under Local Bankruptcy Rule 4001-2: (a) disparate treatment of the Debtor's professionals and the professionals of any official committee of unsecured creditors (the "Committee" with respect to the Carve Out (hereinafter defined). In addition, a waiver of Bankruptcy Code Section 506(c) surcharge rights is sought on entry of the Final Order.**

>  (1) <u>Name of Each Entity with Interest in Cash Collateral</u>: National City Business Credit, Inc., as Administrative Agent, Collateral Agent, L/C Issuer and Lender (defined herein as the "Prepetition Agent"), National City Bank, as L/C Issuer and Lead Arranger, Wells Fargo Retail Finance, LLC, and Wachovia Capital Finance Corporation (Central),

---

[3] To the extent there is any discrepancy between the summary herein (or the description of the Interim Order in this Motion) and the Interim Order, the terms of the Interim Order shall govern.

as Co-Documentation Agents and the lenders that are parties thereto from time to time (collectively, together with the Prepetition Agent, (defined herein as the "Prepetition Lenders") under the Prepetition Agreement, and Retail Ventures, Inc. (defined herein as the "Prepetition Junior Participant") under the Prepetition Participation Agreement. Interim Order ¶ E.

(2) Use of Cash Collateral. The Debtors shall use the Cash Collateral solely up to the amounts (including all applicable variances), at the times, and for the purpose identified in the Budget attached hereto as Exhibit A and as defined in the Interim Order. Interim Order ¶ 3.

(3) Termination Date. The use of Cash Collateral will terminate a three (3) business days following receipt of notice by the Debtors that the from the Prepetition Agent that an event of default (as defined in the Interim Order) has occurred and is continuing, or (b) . ) forty-eight (48) calendar days following the date of execution of that certain Asset Purchase Agreement dated as of May 1, 2009 among FB and FB Leasing (collectively, as Seller thereunder) and Crown FB LLC (the "Purchaser") (the "Crown APA"). Interim Order ¶ 3.

(4) Adequate Protection. The Prepetition Agent, for the benefit of itself, the Prepetition Lenders and the Prepetition Junior Participant, is entitled to receive adequate protection to the extent of any diminution in value of their respective interests in the Prepetition Collateral (including the Cash Collateral) resulting from the use of Cash Collateral, the use, sale or lease of Prepetition Collateral authorized herein, the subordination of the Prepetition Liens to the Carve Out, as described herein, and the imposition of the automatic stay (collectively the "Diminution in Value") pursuant to Sections 361, 362, and 363 of the Bankruptcy Code. Pursuant to Sections 361, 363, and 507(b), as adequate protection the Prepetition Agent, for the benefit of itself, the Prepetition Lenders, and the Prepetition Junior Participant, will receive: (a) the Adequate Protection Liens; (b) the Adequate Protection Superpriority Claim; (c) the Adequate Protection Payments; and (d) the Prepetition Indemnity Account (each as defined in the Interim Order) (collectively, the "Adequate Protection Obligation"). Interim Order ¶¶F, 6, 7 and 8.

(5) <u>Sections 506(c) and 552(b)</u>. In light of the Prepetition Agent's and the Prepetition Lenders' agreement to subordinate their liens and superpriority claims to the Carve Out and to permit the use of their Cash Collateral for payments made in accordance with the Budget and the terms of the Interim Order, the Prepetition Agent and each of the Prepetition Lenders and the Prepetiton Junior Participant are entitled to (a) a waiver of any "equities of the case" claims under Section 552(b) of the Bankruptcy Code and (b) upon entry of a Final Order (as defined herein), a waiver of the provisions of Section 506(c) of the Bankruptcy Code. Interim Order ¶G.

(6) <u>Modification of Automatic Stay</u>. The automatic stay under Bankruptcy Code Section 362(a) is modified by the Interim Order as necessary to effectuate all of the terms and provisions of the Interim Order, including, without limitation, to: (a) permit the Debtor to grant the Adequate Protection Obligations; (b) permit the Debtor to perform such acts as the Prepetition Agent may request in its sole discretion to assure the perfection and priority of the liens granted herein; (c) permit the Debtor to incur all liabilities and obligations to the Prepetition Agent, the Prepetition Lenders and the Prepetition Junior Participant under the Interim Order; and (d) authorize the Debtor to pay, and the Prepetition Agent, the Prepetition Lenders to and the Prepetition Junior Participant to retain and apply, payments made in accordance with the terms of this Interim Order. Interim Order ¶9.

(7) <u>Carve Out</u>. (a) *Carve Out*. As used in the Interim Order, the "Carve Out" means the following expenses: (i) statutory fees payable to the United States Trustee pursuant to 28 U.S.C. §1930(a)(6); and (ii) the accrued and unpaid professional fees and disbursements subject to the Budget ("Accrued Professional Fees") incurred by the Debtor and any Statutory Committee for any professional (the "Case Professionals") retained by final order of the Court (which order has not been vacated, stayed, or appealed) by the Debtor and any Statutory Committee under Sections 327 or 1103(a) of the Bankruptcy Code minus the amount of any unapplied prepetition retainers (the "Case Professionals Carve Out"); (b) *No Direct Obligation to Pay Professional Fees*. The Prepetition Agent, the Prepetition Lenders and the Prepetition Junior Participant shall not be responsible for the direct payment or reimbursement of any fees or

disbursements of any Case Professionals incurred in connection with the Case or any Successor Case. Nothing in this Interim Order or otherwise shall be construed (i) to obligate the Prepetition Agent, the Prepetition Lenders or the Prepetition Junior Participant, in any way to pay compensation to or to reimburse expenses of any Case Professional, or to guarantee that the Debtor will have sufficient funds to pay such compensation or reimbursement, (ii) to increase the Carve Out if actual Accrued Professional Fees are higher in fact than the estimated fees and disbursements of Case Professionals reflected in the Budget, (iii) consent to the allowance of any professional fees or expenses of any Case Professionals, or (iv) to affect the right of the Prepetition Agent, the Prepetition Lenders or the Prepetition Junior Participant, to object to the allowance and payment of such fees and expenses; (c) *Payment of Accrued Professional Fees*. The Carve Out shall be funded from the final proceeds of a Sale Order Transaction or other sale or liquidation of the Collateral (other than sales in the ordinary course of business), and shall be delivered to counsel for the Debtor to be held in escrow in accordance with the provisions of this Order. Any amounts so delivered shall continue to constitute the Cash Collateral of the Prepetition Agent, the Prepetition Lenders and the Prepetition Junior Participant, subject to the rights of the United States Trustee and the Case Professionals thereto pursuant to section 17(a) above. Any funding of the Carve Out shall be added to and made a part of the Prepetition Obligations and the Adequate Protection Superpriority Claims and shall be secured by the Prepetition Liens and the Adequate Protection Liens and otherwise entitled to the protections granted under this Interim Order, the Bankruptcy Code, and applicable law. Interim Order ¶17.

## Basis for Relief Requested

13. The Debtor requires the use of Cash Collateral, in accordance with Budget (subject to all variances) and the terms of the Interim Order and the Final Order, to continue to fund its operations, pay its employees, suppliers and service providers and other accounts

payable, preserve the going concern value of its business and conduct an orderly sale of its assets.

14. The Debtor seeks authorization to use the Cash Collateral and to grant the Adequate Protection Obligations to the Prepetition Agent for the benefit of the Prepetition Lenders and the Prepetition Junior Participant, as adequate protection of their interests in the Prepetition Collateral, solely to the extent of any Diminution in Value of the Prepetition Collateral.

15. The Debtors request that the Court conduct an interim hearing (the "Interim Hearing"), pursuant to Bankruptcy Rule 4001(b), to consider the entry of the Interim Order; and schedule the Final Hearing, pursuant to Bankruptcy Rule 4001(b), to consider entry of a Final Order.

## Basis For Relief

## Legal Requirements For Use of Cash Collateral

16. The Debtor's use of property of the Debtor's estate is governed by section 363 of the Bankruptcy Code. Section 363(c)(1) provides, in pertinent part, that:

> If the business of the debtor is authorized to be operated under section . . . 1108 . . . of this title and unless the court orders otherwise, the trustee [or debtor-in-possession] may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or hearing, and may use property of the estate in the ordinary course of business without notice or hearing.

11 U.S.C. § 363(c)(1). The Bankruptcy Code establishes a special requirement, however, regarding the debtor in possession's use of "cash collateral," defined as "cash, negotiable

instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest . . .." 11 U.S.C. § 363(a). Bankruptcy Code section 363(c)(2) permits the trustee to use, sell or lease cash collateral under subsection (c)(1) only if either of two alternative circumstances exist:

> (A)  each entity that has an interest in such cash collateral consents; or
>
> (B)  the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section. 11 U.S.C. § 363(c)(2).

17. If the secured creditor does not consent to the use of its cash collateral, the Court can authorize the trustee to use said cash collateral under Bankruptcy Code section 363(c)(2)(B) if the court determines that the debtor has provided "adequate protection" of the secured creditor's interest in the cash collateral. 11 U.S.C. § 363(e).

18. Section 361 of the Bankruptcy Code provides that:

> [W]hen adequate protection is required . . . of an interest of an entity in property, such adequate protection may be provided by --
>
> (1) requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the . . . use . . . under section 363 of this title . . . results in a decrease in the value of such entity's interest in such property;
>
> (2) providing to such entity an additional or replacement lien to the extent that such ... use ... results in a decrease in the value of such entity's interest in such property; or
>
> (3) granting such other relief ... as will result in the realization by such entity of the indubitable equivalent in such entity's interest in such property. 11 U.S.C. § 361.

19. Neither section 361 nor any other provision of the Bankruptcy Code defines the nature and extent of the "interest in property" of which a secured creditor is entitled to adequate protection under section 361. However, the statute plainly provides that a qualifying interest demands protection only to the extent that the use of the creditor's collateral will result in a decrease in "the value of such entity's interest in such property." 11 U.S.C. §§ 361, 363(e). See also General Electric Mortgage Corp. v. South Village, Inc. (In re South Village, Inc.), 25 B.R. 987, 989-90 & n.4 (Bankr. D. Utah 1982); O'Toole, Adequate Protection and Post-Petition Interest in Chapter 11 Proceedings, 56 Am. Bankr. L.J. 251, 263 (1982)

20. The phrase "value of such entity's interest," although not defined in the Bankruptcy Code, was addressed by the Supreme Court in the landmark Timbers decision, United Savings Association of Texas v. Timbers of Inwood Forest Associates, Ltd., 484 U.S. 365, 108 S.Ct. 626 (1988). For the meaning of "value of such entity's interest," the Supreme Court was guided by section 506(a), which defines a creditor's allowed secured claim:

> The phrase 'value of such creditor's interest' in § 506(a) means 'the value of the collateral.' H.R. Rep. No. 950-595, pp. 181, 356 (1977); see also S. Rep. No. 95-989, p. 68 (1978), U.S. Code Cong. & Admin. News, 1978 pp. 5787, 5854, 6141, 6312. <u>We think the phrase 'value of such entity's interest' in § 361(1) and (2), when applied to secured creditors, means the same</u>.

Id. at 630 (emphasis added). Timbers teaches that a secured creditor is entitled to "adequate protection" only against diminution in the value of the collateral securing the creditor's allowed secured claim. Under Timbers, therefore, where the "value of the collateral" is not diminishing by its use, sale, or lease, the creditor's interest is adequately protected. This conclusion flows directly from the equivalency of "value of such entity's interests" with "value of the collateral."

21. The Prepetition Agent, the Prepetition Lenders, and the Prepetition Junior Participant have consented to the Debtors' use of their Cash Collateral pursuant to the Interim Order, the Final Order and the Approved Budget. Such terms include the grant to the Prepetition Agent, the Prepetition Lenders, and the Prepetition Junior Participant of the Adequate Protection Obligations as adequate protection of those lenders' interests in the Prepetition Collateral, solely to the extent of any Diminution in Value of the Prepetition Collateral.

22. By this Motion, pursuant to the proposed Interim Order and the Final Order, the Debtor seeks to grant to the Prepetition Agent on behalf of the Prepetition Lenders and the Prepetition Junior Participant the Adequate Protection Obligations set forth in paragraph 12(4) above, to the extent of any Diminution in Value, in each case as set forth in the Interim Order and the Final Order, and subject to the limitations provided for therein.

23. Without the use of Cash Collateral, the Debtor will not be able to operate its business, or turn assets into cash in an orderly, effective and efficient manner to maximize the value of those assets for the benefit of their creditors. The Debtor's use of Cash Collateral will allow the Debtor to maximize the recoveries for all creditors.

24. Based upon the foregoing and the applicable legal standards, this Court should authorize the Debtor's use of Cash Collateral and the granting of the adequate protection to the Prepetition Agent on behalf of the Prepetition Lenders and the Prepetition Junior Participant, as adequate protection for and to the extent of any Diminution in the Value after the Petition Date of the Prepetition Agent's or the Prepetition Lenders' or Prepetition Junior Participant's respective interest in the Prepetition Collateral.

## The Proposed Interim Use of Cash Collateral
## Is Appropriate Under The Circumstances

25.     Bankruptcy Rules 4001(b) provide that a final hearing on a motion to use cash collateral may not be commenced earlier than fifteen (15) days after the service of such motion. Upon request, however, the Court is empowered to conduct a preliminary expedited hearing on the motion and authorize the use of cash collateral and the obtaining of credit to the extent necessary to avoid immediate and irreparable harm to a debtor's estate pending a final hearing.

26.     Pursuant to Bankruptcy Rules 4001(b), the Debtor requests that the Court conduct an expedited preliminary hearing on this Motion and (a) authorize the Debtor to use Cash Collateral on an interim basis, pending entry of the Final Order, in order to (i) maintain and finance the ongoing operations of the Debtor, and (ii) avoid immediate and irreparable harm and prejudice to the Debtor's estate and all parties in interest, and (b) schedule a hearing to consider entry of the Final Order.

27.     The Debtor has an urgent and immediate need for cash to continue to operate. Absent immediate authority to use the Cash Collateral, the Debtor will not have sufficient funds with which to operate its business, pay the other administrative expenses incurred in connection with its Chapter 11 Case, and turn its assets into cash in an orderly, effective and efficient manner. The value of the Debtor's estate would decline immediately and dramatically in the absence of the relief requested herein. Accordingly, entry of the emergency Interim Order is necessary to avoid immediate and irreparable harm to the Debtor's estate and, therefore, is appropriate under the circumstances. Absent authorization from the Court to use the

Cash Collateral, as requested, on an interim basis pending the Final Hearing on this Motion, the Debtor will be immediately and irreparably harmed. Accordingly, the interim relief requested is critical to preserving and maximizing the value of the Debtor's assets for the benefit of its estates and creditors.

28. The Debtor further submits that because the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtor, for the reasons set forth herein, Bankruptcy Rule 6003 has been satisfied.

29. To successfully implement the foregoing, the Debtor seeks a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the ten-day stay under Bankruptcy Rule 6004(h).

30. The Debtor further requests that the Court schedule the Final Hearing on the Final Order.

### Notice

A. **Notice With Respect to Emergency Interim Financing Request**

31. Notice of this Motion has been given to the following parties or, in lieu thereof, to their counsel, if known: (i) the Office of the United States Trustee; (ii) the Debtor's prepetition lenders or their counsel; (iii) the Debtors' prepetition *ad hoc* committee of unsecured creditors; (iv) other parties known to hold security interests or liens in the Prepetition Collateral; and (v) the holders of the twenty largest unsecured claims against the Debtor. As the Motion is seeking "first day" relief, within two business days of the hearing on the Motion, the Debtor will serve copies of the Motion and any order entered respecting the Motion as required by Del.

Bankr. LR 9013-2(d). The Debtor submits that, in light of the nature of the relief requested, no other or further notice need be given.

B. <u>Notice With Respect to Final Order</u>

32. The Debtor further requests that, at the Interim Hearing, the Court schedule the Final Hearing. Following the Interim Hearing, the Debtor propose to serve this Motion, the Interim Order and notice of the Final Hearing on (i) the Office of the United States Trustee; (ii) the Debtor's prepetition lenders or their counsel; (iii) the Debtors' prepetition *ad hoc* committee of unsecured creditors (iv) other parties known to hold security interests or liens in the Prepetition Collateral; (v) the holders of the twenty largest unsecured claims against the Debtor; and (vi) parties requesting notice under Bankruptcy Rule 2002. The Debtor submits that, in light of the nature of the relief requested, no other or further notice need be given.

<u>No Prior Request</u>

33. No previous application for the relief sought herein has been made by the Debtor to this or any other court.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE, the Debtor respectfully requests: (i) entry of the Interim Order attached to this Motion, approving the authority to use Cash Collateral on an interim basis pending the Final Hearing; (ii) scheduling the Final Hearing on this Motion for approval of the use of Cash Collateral on a final basis; (iii) final approval authorizing the use of Cash Collateral following the Final Hearing; and (iv) such further relief as is just and proper.

Dated: May 4, 2009

                              PACHULSKI STANG ZIEHL & JONES LLP

                              */s/ Laura Davis Jones*
                              Laura Davis Jones (Bar No. 2436)
                              David M. Bertenthal (CA Bar No. 167624)
                              Michael R. Seidl (Bar No. 3889)
                              Joshua M. Fried (CA Bar No. 181541)
                              Timothy P. Cairns (DE Bar No. 4228)
                              919 North Market Street, 17th Floor
                              Wilmington, Delaware 19801
                              Telephone: (302) 652-4100
                              Facsimile: (302) 652-4400
                              E-mail: ljones@pszjlaw.com
                                          dbertenthal@pszjlaw.com
                                          mseidl@pszjlaw.com
                                          jfried@pszjlaw.com
                                          tcairns@pszjlaw.com

                              [Proposed] Counsel to Debtor and
                              Debtor in Possession