IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FILENE'S BASEMENT, INC., et al., [1] | ) | Case No. 09-11525 (MFW) |
| | ) | |
| Debtors. | ) | |

## DEBTORS' MOTION FOR AN ORDER: (I) APPROVING ASSET PURCHASE AGREEMENT AND AUTHORIZING THE SALE OF CERTAIN OF THE DEBTORS' ASSETS OUTSIDE THE ORDINARY COURSE OF BUSINESS TO CROWN FB LLC OR A HIGHER AND BETTER BIDDER; (II) AUTHORIZING THE SALE OF ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS PURSUANT TO SECTIONS 363(B), (F) AND (M) OF THE BANKRUPTCY CODE, (III) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (IV) GRANTING RELATED RELIEF

The above-captioned debtors and debtors in possession (the "Debtors") file this

motion (the "Sale Motion") for entry of an Order (I) approving the asset purchase agreement and

authorizing the sale of certain of the their assets outside the ordinary course of business to Crown

FB LLC or its permitted assigns (the "Purchaser") or a higher and better bidder; (II) authorizing

the sale of assets free and clear of all liens, claims, encumbrances and interests pursuant to

sections 363(b), (f) and (m) of the Bankruptcy Code, (III) authorizing the assumption and

assignment of certain executory contracts and unexpired leases; and (IV) granting related relief.

Contemporaneously with the filing of this Sale Motion, the Debtors have filed

Debtors' Motion for Entry of an Order (A) Approving Bid Procedures for the Sale of Certain

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Filene's Basement, Inc. (8237); FB Services LLC (7224); and FB Leasing Services LLC (7228). The address for all Debtors is 25 Corporate Drive, Suite 400, Burlington, MA 01803.

Assets; (B) Scheduling an Auction and Hearing to Consider the Sale and Approve the Form and

Manner of Notice Related Thereto; (C) Establishing Procedures Relating to the Assumption and

Assignment of Certain Contracts, Including Notice of Proposed Cure Amounts; and (D) Granting

Related Relief (the "Bid Procedures Motion"), which seeks approval of certain sale and bid

procedures for the sale of certain of the Debtors' assets, as more particularly set forth therein (the

"Bid Procedures"). The sale, approval of which is sought by this Sale Motion (the "Sale" or

"Transaction") shall be to Purchaser or such other higher and better bidder or bidders, if any (a

"Successful Bidder"), at the auction provided for in the Bid Procedures Motion and the Bid

Procedures (the "Auction"), to take place on the date set forth in, and in accordance with, the

order to be entered by the Court on the Bid Procedures Motion (the "Bid Procedures Order"). In

support of this Sale Motion, the Debtors respectfully states as follows:

## Jurisdiction

1.      This Court has jurisdiction over this Sale Motion pursuant to 28 U.S.C.

§§ 157 and 1334. This proceeding is a core proceeding within the meaning of 28 U.S.C.

§§ 157(b)(2)(A), (M), (N) and (O).

2.      Venue of these proceedings and this Sale Motion is proper pursuant to 28

U.S.C. §§ 1408 and 1409.

3.      The statutory predicates for the relief sought herein are sections 105, 363,

365, 1107 and 1108 of title 11 of the United States Code (the "Bankruptcy Code"), Rules

2002(a)(2), 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules"), and Rules 2002-1(b) and 9006-1 of the Local Rules of Bankruptcy Practice

and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

## Background

4.     On the date hereof (the "Petition Date"), the Debtors commenced these cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

5.     The Debtors have continued in the possession of their property and have continued to operate and manage their business as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner or committee has been appointed in the Debtors' chapter 11 cases.

6.     The general factual background relating to the Debtors' commencement of these chapter 11 cases is set forth in detail in the *Declaration of Mark Shulman, President of Filene's Basement, Inc., in Support of First Day Motions* (the "Shulman Declaration") filed contemporaneously with this Motion and incorporated herein by reference.

7.     In order to maximize the value of their business and assets, the Debtors have determined to market and sell certain of their assets through (a) a sale of the assets proposed to be sold to the Purchaser (the "Assets") which consist of certain of the Debtors' real property leases, contracts and property as set forth in the Agreement(defined below) to the highest or otherwise best bidder(s) and (b) evaluation of other possible sales or asset dispositions for the Debtors' remaining assets (the "Remaining Assets").

## The Sale Process

8.     The proposed asset purchase agreement with the Purchaser is the culmination of a process, during which process the Debtors' assets were marketed for sale or other disposition.

9.     Commencing in March of 2009, Retail Ventures, Inc.("RVI"), Debtor Filene's Basement Inc.'s parent, sought to sell Filene's Basement, Inc. and, with the assistance of its advisor, Houlihan Lokey Howard & Zukin Capital, Inc. ("Houlihan"), sought to identify a possible purchaser for the Debtors' assets. Commencing on or about March 19, 2009, Houlihan contacted approximately thirteen (13) potential strategic and financial buyers through telephone calls, emails and/or other correspondence. The Debtors are also informed and believe that the list of potential buyers was compiled by Houlihan using Houlihan's internal database and based on discussions with the Debtors and RVI.

10.     Of the approximately thirteen (13) parties contacted by Houlihan, six (6) parties signed and returned confidentiality agreements and were provided varying levels of additional information, including a detailed confidential information memorandum.

11.     Of the six (6) parties that signed and returned confidentiality agreements, one (1) party expressed definite interest and engaged in more extensive due diligence.

12.     One additional party, the Purchaser, also learned of the availability of the Debtors' assets and expressed interest.

13.     The Debtors' advisors worked with each of these interested parties and, as a result, at the conclusion of the initial effort, the Debtors had two competing bids for various groups of the Debtors' assets (the "Competing Bids").

14.     During the approximately two weeks immediately prior to the Petition Date, the Debtors and their advisors worked with the potential purchasers to develop the Competing Bids.

15.     An informal committee of certain unsecured creditors (the "Ad Hoc Committee") formed and was briefed by the Debtors and their professionals on the sale process to date and the terms of the Competing Bids.

16.     With the advice and assistance of their advisors, and after reviewing and negotiating with the potential purchasers, the Debtors determined in late April 2009 that a combination of the proposed acquisition of the Assets by the Purchaser, together, with continuing to examine other avenues of disposing of the Debtors' remaining assets (the "Remaining Assets") were the best options for the Debtors in order to maximize the value of their assets and business.

17.     On May 1, 2009, after extensive negotiations, the Seller entered into an Asset Purchase Agreement (the "Agreement" or the "APA") with the Purchaser, for the sale and purchase of the Assets. Pursuant to the terms of the Agreement, the Seller, subject to an auction and sale process, intends to sell the Assets to the Purchaser (or a designated affiliate) and in connection therewith, assign to the Purchaser certain leases, with such sale to be free and clear of all liens, claims and encumbrances pursuant to Bankruptcy Code section 363(f).

18.     During the same time that the Debtors were negotiating the Competing Bids with the potential purchasers, the Debtors continued in their marketing efforts for the Assets and the Remaining Assets, and will continue in these efforts postpetition. Specifically, the Debtors expanded on Houlihan's prepetition marketing efforts and will continue to market their

assets postpetition. Immediately prior to the Petition Date, Abacus Advisors Group LLC ("Abacus"), which is assisting the Debtors with their restructuring, distributed a cover memo to over 280 parties in an effort to solicit interest in a possible sale of the Assets and the Remaining Assets. Parties who expressed an interest were asked to sign and return a confidentiality agreement.

19. Abacus sent the cover memo out to two specifically targeted groups: strategic retailers and financial buyers.

20. Abacus has also planned a postpetition solicitation which will include mailings retail landlords, liquidation firms and an assortment of retail companies who have historically expressed interest in similar sales.

21. Abacus also solicited input from the Ad Hoc Committee in putting together the mailing list for these solicitations.

22. The Debtors and Abacus have also established a data room which will be made available to interested parties who return signed confidentiality agreements for purposed of conducting due diligence.

23. Between the prepetition marketing efforts and postpetition marketing of the Assets and the Remaining Assets[2], the Debtors believe that the Assets will be adequately marketed so as to maximize value for the Debtors' estates and their creditors.

24. The Debtors believe that the consummation of the proposed sale to the Purchaser or to any successful overbidder(s) and the expected disposition of the Remaining

---

[2] The Remaining Assets are the subject of a separate bid procedures motion and sale motion which the Debtors expect will be filed shortly.

Assets will provide the best opportunity possible for maximizing value by realizing upon the Debtors' assets.

25.     The Debtors, by the Bid Procedures Motion being filed concurrently herewith, seek approval of the Bid Procedures, under which the Purchaser is the stalking-horse bidder for the Assets. The terms of the Purchaser's stalking-horse bid are summarized below. The Debtors, with the assistance of their professionals, intend to seek higher and better bids for the Assets and, pursuant to the Bid Procedures, to hold the Auction of such assets. The Debtors believe that, given the marketing efforts undertaken prepetition and the anticipated pospetition marketing efforts, the sale process and time period contemplated by the Bid Procedures, will result in the highest or otherwise best price for the Assets.

### The Agreement with the Purchaser

26.     A copy of the Agreement, with schedules and exhibits[3], is attached hereto as Exhibit A.[4] Pursuant to the terms of the Agreement, the Debtors, subject to a Court approved auction and sale process and any higher and better offers, intend to sell (the "Sale" or "Transaction") the Assets to the Purchaser and in connection therewith, assume and assign to the Purchaser certain contracts and leases.[5] The Purchaser will acquire the Assets free and clear of all liens, claims and encumbrances pursuant to section 363 of the Bankruptcy Code, on the terms set forth in the Agreement, which are summarized below.

---

[3] Certain Schedules to the Agreement have not been completed as of this time. The Debtor will provide the additional Schedules upon completion.
[4] Capitalized terms not otherwise defined herein shall have the meanings set forth in the Agreement.

[5] Pursuant to the Agreement, the Purchaser may assign its rights to purchase some or all of the Assets to a designated affiliate.

27.     The Debtors believe that the consummation of the Sale to the Purchaser or to a successful overbidder will provide the Debtors and their creditors and other stakeholders with the best opportunity possible for maximizing value for the Assets being sold by realizing upon the Assets through a sale as a going concern.

### The Terms of the Agreement

28.     The terms of the Purchaser's offer to purchase the Assets are set forth in the Agreement, and are summarized below.  The description below only summarizes certain provisions of the Agreement, and the terms of the Agreement control in the event of any inconsistency.

      a.      **Purchase Price**.  Twenty Two Million Dollars ($22,000,000.00), plus (ii) the Security Deposits;  Agreement Section. 1.4

      b.      **Good Faith Deposit.**  An amount equal to $5,000,000 to be funded in the amount of $1,000,000.00 upon execution of the Agreement and $4,000,000.00 on the date that the Bankruptcy Court issues the Bid Procedures Order containing approval of the Break-Up Fee. Agreement Section. 1.4

      c.      **Assets**.  The Debtors' assets including certain (a) Assumed Leases which include leases for sixteen of the Debtors' store locations, (b) Assumed Contracts, (c) Intellectual Property, (d) Fixed Assets and Equipment, (e) Customer Information, (f) Security Deposits, (g) Books and Records, (h) Permits and certain other Assets all as identified in Section 1.1 of the Agreement

d. **Excluded Assets**. All of the Debtors' assets other than those identified in Section 1.1 of the Agreement as the Assets; Agreement Section 1.2

e. **Assumed Liabilities.** Those Liabilities arising with respect to the performance after the Closing Date of the Assumed Contracts, excluding any Liability resulting from any breach there of by the Seller on or prior to the Closing Date; Agreement Section 1.3

f. **Break-Up Fee/Expense Reimbursement**. Break-Up Fee of $660,000.00 and an Expense Reimbursement of up to $150,000.00; Agreement Section 7.2

g. **Closing.** Two Business Days following satisfaction or waiver of all conditions to the obligations of the parties set for in Sections 5 and 6 of the Agreement with an outside closing date of July 31, 2009; Agreement Section 1.5

h. **Representations and Warranties**. Representations and Warranties of the Seller as set forth in Section 2 of the Agreement; Representations and Warranties of the Purchaser as set forth in Section 3 of the Agreement.

i. **Termination Rights**. Termination Rights as set forth in Section 7 of the Agreement.

29. The Debtors seek authority to sell the Assets to the Purchaser or to a higher and better bidder or bidders to be determined in accordance with the Bid Procedures. The Debtors believe that the sale of the Assets as a going concern to the Purchaser or a higher and better bidder is far preferable to a piecemeal liquidation of the Assets, because it will result in a higher price for those assets and, to the extent that the Debtors' employees are rehired by the Purchaser, will preserve jobs. The Debtors further believe that their obtaining the Purchaser as a stalking horse bidder, further marketing the Assets with the assistance of their other professionals

over the time period contemplated by the Bid Procedures, and holding the Auction of the Assets

on the date specified by the Court will result in the highest or otherwise best price for the Assets

given the Debtors' present circumstances.

30.     The Debtors have examined the alternatives to a going concern sale of the

Assets and have determined that, in light of their collective financial situation and liquidity

needs, a viable alternative to such a sale is not available.

31.     For the reasons stated above, and in light of the obvious benefits to the

estate, the Debtors' board of directors have determined, in the exercise of their business

judgment, to consummate the proposal submitted by the Purchaser under the Agreement or, if

applicable, another bidder in the event that the Debtors receive a higher and better bid for the

Assets to the one proposed by the Purchaser.

## Relief Requested

32.     The Debtors are requesting that this Court, *inter alia*, (i) authorize the sale

of the Assets to the Purchaser pursuant to the Agreement, or, alternatively, to the other

Successful Bidder(s) pursuant to such competing agreement(s) with such other Successful

Bidder(s) entered into in accordance with the Bid Procedures Order, free and clear of all liens,

claims, encumbrances or other interests pursuant to sections 363(b), (f) and (m) and 365 of the

Bankruptcy Code, with such liens, claims, rights, interests and encumbrances (collectively, the

"Interests") to attach to the sale proceeds of the Assets with the same validity, priority and

perfection as existed immediately prior to such sale; (ii) approve the assumption and assignment

of the Assumed Contracts (as hereinafter defined) under Bankruptcy Code section 365, subject

to, and at the time of, closing under the Agreement; and (iii) grant such other relief as set forth in the proposed order on this Motion.

## Basis for Relief

33.     Section 363(b)(1) of the Bankruptcy Code provides that a debtor, "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, Property of the estate." 11 U.S.C. § 363(b)(1). Section 105(a) provides in relevant part that "[t]he Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

34.     A sale of the debtor's assets should be authorized pursuant to section 363 of the Bankruptcy Code if a sound business purpose exists for doing so. *See, e.g., Meyers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996), *citing Fulton State Bank v. Schipper (In re Schipper)*, 933 F.2d 513, 515 (7th Cir. 1991)); *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143 (3d Cir. 1986); *Stephens Indus., Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986); *In re Lionel Corp.*, 722 F.2d 1063 (2d Cir. 1983); *In re Titusville Country Club*, 128 B.R. 396 (W.D. Pa. 1991); *In re Delaware & Hudson Ry Co.*, 124 B.R. 169, 176 (D. Del. 1991). The *Delaware & Hudson Railway* court rejected the pre-Code "emergency" or "compelling circumstances" standard, finding the "sound business purpose" standard applicable and, discussing the requirements of that test under *McClung* and *Lionel*, observing:

> A non-exhaustive list of factors to consider in determining if there is a sound business purpose for the sale include:  the proportionate value of the asset to the estate as a whole; the amount of elapsed time since the filing; the likelihood that a plan of reorganization will be proposed and confirmed in the near future; the effect of the proposed disposition of the future plan of reorganization; the amount of proceeds to be obtained from the sale versus appraised

values of the Property; and whether the asset is decreasing or increasing in value. 124 B.R. at 176.

35.     The *Delaware & Hudson Railway* court further held that "[o]nce a court is satisfied that there is a sound business reason or an emergency justifying the pre-confirmation sale, the court must also determine that the trustee has provided the interested parties with adequate and reasonable notice, that the sale price is fair and reasonable and that the Buyer is proceeding in good faith." *Id*.

36.     The Debtors have proposed the sale of the Assets after thorough consideration of all viable alternatives, and have concluded that the sale of the Assets is supported by a number of sound business reasons.

37.     As discussed above, RVI sought a buyer for Filene's Basement Inc, starting in March of 2009. The Debtors, with the assistance of their professionals, have continued in the effort to market their assets and will further solicit proposals for the purchase of the Assets prior to the proposed bid deadline. The Debtors' continued marketing efforts have consisted of a solicitation of interest mailed out to over 280 strategic retailers and financial buyers and a further solicitation directed and retail landlords, liquidating firms and other retail related companies. The Debtors have also established a data room for parties to conduct due diligence. Finally, the Debtors have sought approval of the Bid Procedures. Based on the prepetition marketing effort and anticipated postpetition efforts, establishment of a data room and setting of the Bid Procedures, which include an auction process, the Debtors will have adequately marketed the Assets and established a process designed to maximize the purchase price that should be realized from the sale of the Assets.

38.     Based on the Debtors' current financial circumstances, as further described in the Shulman Declaration, the Debtors have determined that the sale of the Assets, as well as exploring other possible asset sales, is in the best interests of the Debtors and their estates. Absent a sale of the Assets, the Debtors believe it would be forced to quickly liquidate such assets in a piecemeal manner and would be unable to maximize the value of such assets by selling them on a going concern basis. The Debtors believe that the sale of the Assets as a going concern to the Purchaser or a higher and better bidder is far preferable to a piecemeal liquidation of the Assets.

39.     The Debtors have articulated sound business reasons, set forth above, for a sale of the Assets on an expedited basis. *See, e.g., In re Tempo Tech.*, 202 B.R. 363, 369-70 (D. Del. 1996) (approving a sale of all of the debtor's assets, within a month after the petition date, where the debtor faced a cash shortfall, operated in an industry where there were few potential buyers, and anticipated continuing losses and a decline in value of the bankruptcy estates); *Delaware & Hudson Ry.*, 124 B.R. at 177 (affirming the bankruptcy court's approval of a sale of substantially all of the debtor's assets where the debtor would have been "in liquidation mode if required to delay a sale until after filing a disclosure statement and obtaining approval for a reorganization plan"); *Titusville Country Club*, 128 B.R. at 400 (granting an expedited hearing on a motion to approve a sale as a result of "deterioration" of the debtor's assets); *Coastal Indus., Inc. v. Internal Revenue Src. (In re Coastal Indus., Inc.)*, 63 B.R. 361, 366-69 (Bankr. N.D. Ohio 1986) (approving an expedited sale pursuant to section 363(b) just five weeks after the petition date where the debtor was suffering operating losses).

40.     The Debtors believe that the Purchaser's offer for the Assets is fair and reasonable. The Debtors further believe that, as a result of the prepetition marketing efforts and the efforts that will be undertaken following the Petition Date, such offer or any higher and better offer obtained through the proposed Bid Procedures and Auction will provide maximum value to the Debtors under the current circumstances. Other potential buyers of the Assets will be served with notice of the Sale Motion in accordance with the proposed sale procedures order. The fairness and reasonableness of the consideration to be paid by the Purchaser or the Successful Bidder, as the case may be, is demonstrated by the marketing efforts that the Debtors have already undertaken and will undertake, followed by a fair and reasonable sale process including the Auction, and culminating in the proposed Sale. The Debtors will reduce their administrative costs by the Sale of the Assets, while realizing maximum value for the Assets through a going concern Sale.

41.     Overall, the Sale of the Assets is supported by sound business reasons and is in the best interests of the Debtors and their estates. Accordingly, the Debtors request approval under Bankruptcy Code section 363(b) of the Sale to the Purchaser, or the Successful Bidder, as set forth herein.

### The Proposed Sale Satisfies the Requirements of Section 363(f) of the Bankruptcy Code For a Sale Free and Clear of Liens, Claims, and Interests

42.     Section 363(f) of the Bankruptcy Code provides:

> The trustee may sell Property under subsection (b) or (c) of this section free and clear of any interest in such Property of an entity other than the estate, only if –
>
> (1) applicable nonbankruptcy law permits sale of such Property free and clear of such interest;
>
> (2) such entity consents;

(3) such interest is a lien and the price at which such Property is to be sold is greater than the aggregate value of all liens on such Property;

(4) such interest is in a bona fide dispute; or

(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

43.     Section 363(f) of the Bankruptcy Code provides for the sale of assets "free and clear of any interests." The term "any interest," as used in section 363(f), is not defined anywhere in the Bankruptcy Code. *Folger Adam Security v. DeMatteis/MacGregor, JV*, 209 F.3d 252, 259 (3d Cir. 2000). In *Folger Adam*, the Third Circuit specifically addressed the scope of the term "any interest." 209 F.3d at 258. The Third Circuit observed that while some courts have "narrowly interpreted that phrase to mean only *in rem* interests in Property," the trend in modern cases is towards "a broader interpretation which includes other obligations that may flow from ownership of the Property." *Id. at 258, citing* 3 *Collier on Bankruptcy 363.06*[1]. As determined by the Fourth Circuit in *In re Leckie Smokeless Coal Co.*, 99 F.3d 573, 581-582 (4th Cir. 1996), a case cited approvingly and extensively by the Third Circuit in *Folger Adam*, the scope of section 363(f) is not limited to *in rem* interests. Thus, the Third Circuit in *Folger Adam* stated that *Leckie* held that the debtors "could sell their assets under §363(f) free and clear of successor liability that otherwise would have arisen under federal statute." *Folger Adam*, 209 F.3d at 258.

44.     Section 363(f) is drafted in the disjunctive. Thus, satisfaction of any of the requirements enumerated therein will suffice to warrant the sale of the Assets free and clear of all liens, claims, rights, interests or encumbrances as provided in the Agreement (collectively,

the "Interests"), except with respect to any Interests that constitute Assumed Liabilities under the Agreement. *See Citicorp Homeowners Srcs., Inc. v. Elliot*, 94 B.R. 343, 345 (E.D. Pa. 1988). The Debtors submit that each Interest that is not an assumed liability satisfies at least one of the five conditions of section 363(f) of the Bankruptcy Code, and that any such Interest will be adequately protected by either being paid in full at the time of closing, or by having it attach to the net proceeds of the sale, subject to any claims and defenses the Debtors may possess with respect thereto. The Debtors accordingly request authority to convey the Assets to the Purchaser or, alternatively, to the Successful Bidder, free and clear of all Interests except for the Interests that are Assumed Liabilities under the express terms of the Agreement, with such Interests to attach to the proceeds of the sale, with the same validity (or invalidity), priority and perfection as existed immediately prior to the sale, subject to the terms of the Agreement and the proposed Sale Order.

45.    The Debtors' prepetition lenders, (ii) National City Business Credit, Inc., as Administrative Agent and Collateral Agent (in such capacities, the "Prepetition Agent"), (iii) National City Bank, as Issuer (the "Issuer") and Lead Arranger, (iv) Wells Fargo Retail Finance, LLC, and Wachovia Capital Finance Corporation (Central), as Co-Documentation Agents, and (v) the lenders that are parties thereto from time to time (collectively, together with the Prepetition Agent, the "Prepetition Lenders"), have been informed of the Sale as proposed in the Agreement and the Bid Procedures and it is expected that, if consummated, the proceeds of Sale will be sufficient to pay the Prepetition Lenders in full. The Debtors have conducted a UCC search of purported holders of liens against the Assets in conjunction with the proposed sale of the Assets. The Debtors have served or will serve such purported lienholders with notice of this

Sale Motion, and will serve notice of any Sale Order approving the relief requested by this Sale

Motion.

46.     Accordingly, this Court should approve the sale of the Assets to the

Purchaser or the Successful Bidder free and clear of Interests under Bankruptcy Code section

363(f), and any potential claimants should be compelled to look exclusively to the proceeds of

the sale for satisfaction of their claims.

### Good Faith Under Section 363(m) of the Bankruptcy Code; Sale Not In Violation of Section 363(n) of the Bankruptcy Code

47.     Section 363(m) of the Bankruptcy Code provides:

> The reversal or modification on appeal of an authorization under
> subsection (b) or (c) of this section of a sale or lease of Property
> does not affect the validity of a sale or lease under such
> authorization to an entity that purchased or leased such Property in
> good faith, whether or not such entity knew of the pendency of the
> appeal, unless such authorization and such sale or lease were
> stayed pending appeal.

11 U.S.C. § 363(m). Section 363(n) of the Bankruptcy Code, among other things, provides that a

trustee may avoid a sale under such section if the sale price was controlled by an agreement

among potential bidders as the sale. While the Bankruptcy Code does not define "good faith",

the Third Circuit in *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143 (3d Cir. 1986) has held that:

> [t]he requirement that a Buyer act in good faith . . speaks to the
> integrity of his conduct in the course of the sale proceedings.
> Typically, the misconduct that would destroy a Buyer's good faith
> status at a judicial sale involves fraud, collusion between the Buyer
> and other bidders or the trustee, or an attempt to take grossly unfair
> advantage of other bidders.

788 F.2d at 147 (citations omitted).

48.     The Agreement was a negotiated, arm's-length transaction, in which the

Purchaser has acted in good faith, without collusion or fraud of any kind, and in compliance with

the *Abbotts Dairies* standards. Neither the Debtors nor, on the Debtors' information and belief, the Purchaser has engaged in any conduct that (a) would prevent the application of section 363(m) of the Bankruptcy Code or cause the application of to the Agreement or (b) would implicate section 363(n) of the Bankruptcy Code with respect to the consummation of the sale transaction or the transfer of the Assets and the Assumed Contracts to the Purchaser. In addition, if a party other than Purchaser is the Successful Bidder, the Debtors intend to make an appropriate showing at the Sale Hearing that the purchase agreement with the other Successful Bidder is a negotiated, arm's-length transaction, in which the Successful Bidder at all times has acted in good faith under and otherwise in accordance with such standards.

49.     The Debtors thus request that the Court find that the Purchaser or the Successful Bidder has purchased the Assets in good faith within the meaning of section 363(m) of the Bankruptcy Code, and is entitled to the protections of sections 363(m) and (n) of the Bankruptcy Code.

## Authorization of Assumption and Assignment of Assumed Contracts

50.     As required by the Agreement, and in order to enhance the value to the Debtors' estates, the Debtors request approval of the assumption and assignment of the Assumed Contracts[6] to the Purchaser or Successful Bidder, as applicable, upon the Closing of the transactions contemplated under the Agreement.

---

[6] In accordance with the terms of Section 1.8 of the APA, the Purchaser may eliminate and Real Property Lease from the list of Assumed Contracts and may add or eliminate any Contract used in the conduct or related to the Business at any time on or prior to the second Business Day prior to the bid deadline set forth in the Bidding Procedures Order.

51. At Closing, the Debtors intend to assume and assign to the Purchaser or Successful Bidder, as applicable, the executory contracts and unexpired leases identified as the Assumed Contracts under the Agreement, as set forth in the Agreement.

52. The Debtors have proposed in the Bid Procedures Motion to serve, by no later than five (5) days after entry of the Bid Procedures Order, the proposed Cure Notice, in substantially the form attached as Exhibit E to the Bid Procedures Motion, upon each counterparty (a "Counterparty") to an Assumed Executory Contract or to any other executory agreement or lease that the Debtors determine may be assumed by a Successful Bidder. The Cure Notice also will identify the amounts, if any, that the Debtors believe are owed to the Counterparty in order to cure any defaults that exist under such contract (the "Cure Costs"). The Debtors further propose that the Cure Notice will state the date by which any objection to the Cure Costs or the assumption and assignment of the Assumed Executory Contract or other executory contract or lease (other than with respect to adequate assurance of future performance) must be filed and served, which will be fifteen (15) days from the date of service of the Cure Notice. If a contract or lease is assumed and assigned pursuant to the Bankruptcy Court's order approving same, then unless the affected Counterparty properly files and serves an objection to the Cure Costs contained in the Cure Notice, the Counterparty will receive at the time of the Closing (or as soon as reasonably practicable thereafter), the Cure Costs as set forth in the Cure Notice. If an objection is filed by a Counterparty to an Assumed Executory Contract or other executory contract or lease with respect to the amount of the Cure Costs set forth in the Cure Notice, the Debtors propose that such objection must set forth a specific default under the Assumed Contract or other executory contract or lease and claim a specific monetary amount

that differs from the amount (if any) specified by the Debtors in the Cure Notice or, alternatively, state why the Counterparty believes any Cure Costs is owing, and state the basis for any other objection to the assumption and assignment of the Assumed Contract or other executory contract or lease (other than with respect to adequate assurance of future performance). The Debtors further propose that an objection to the assignment and assumption of an Assumed Contract with respect to adequate assurance of future performance must be filed and served in advance of the Sale Hearing. The Cure Notice also will state such objection deadline and the date, time and place of the Sale Hearing.

53. The APA provides that the Seller shall pay all Cure Costs relating to assumption and assignment of the Assumed Leases (the "Real Estate Cures") out of the proceeds of the Sale and that the Purchaser shall be solely and exclusively responsible for payment of all Cure Costs associated with Assumed Contracts other than Assumed Leases (the "Other Cure Amounts"). The Successful Bidder shall be responsible for satisfying any requirements regarding adequate assurances of future performance that may be imposed under section 365(b) of the Bankruptcy Code in connection with the proposed assignment of any Assumed Contracts. The Debtors propose that the Court make its determinations concerning adequate assurance of future performance under the Assumed Contracts pursuant to 11 U.S.C. § 365(b) at the Sale Hearing or in the case of any Assumed Contracts not assumed and assigned to the Successful Bidder at the Sale Hearing, at such other hearing to approve assumption and assignment of such Assumed Contracts. The Debtors further propose that Cure Costs disputed by any Counterparty will be resolved by the Court at the Sale Hearing or at such other hearing to approve assumption and assignment of the relevant lease or contract.

54.     Except to the extent otherwise provided in the Agreement or the

agreement entered into with the Successful Bidder(s), subject to the payment of any Cure Costs,

the assignee of an Assumed Contracts will not be subject to any liability to the assigned contract

counterparty that accrued or arose before the closing date of the sale of the Assets and the

Debtors shall be relieved of all liability accruing or arising thereafter pursuant to 11 U.S.C. §

365(k).

55.     The Debtors further request that the Sale Order provide that the Assumed

Contracts will be assigned to, and remain in full force and effect for the benefit of the Successful

Bidder, notwithstanding any provisions in the Assumed Contracts, including those described in

sections 365(b)(2) and (f)(1) and (3) of the Bankruptcy Code, that prohibit such assignment.

56.     Section 365(f) of the Bankruptcy Code provides, in pertinent part, that:

> The trustee may assign an executory contract or unexpired lease of the
> debtor only if –
>
> (A)     the trustee assumes such contract or lease in accordance with the
> provisions of this section; and
>
> (B)     adequate assurance of future performance by the assignee of such
> contract or lease is provided, whether or not there has been a default in
> such contract or lease.

11 U.S.C. § 365(f)(2). Under section 365(a), a debtor "subject to the court's approval, may

assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a).

Section 365(b)(1), in turn, codifies the requirements for assuming an unexpired lease or

executory contract of a debtor, providing that:

> (b)(1) If there has been a default in an executory contract or unexpired
> lease of the debtor, the trustee may not assume such contract or lease
> unless, at the time of assumption of such contract or lease, the trustee --

(A) cures, or provides adequate assurance that the trustee will promptly cure, such default;

(B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and

(C) provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b)(1).

57.     Although section 365 of the Bankruptcy Code does not set forth standards for courts to apply in determining whether to approve a debtor in possession's decision to assume an executory contract, courts have consistently applied a "business judgment" test when reviewing such a decision. *See, e.g., Group of Inst. Invs. v. Chicago, Milwaukee, St. Paul & Pac. RR. Co.*, 318 U.S. 523, 550 (1953); *Matter of Talco, Inc.*, 558 F.2d 1369, 1173 (10th Cir. 1977). A debtor satisfies the "business judgment" test when it determines, in good faith, that assumption of an executory contract will benefit the estate and the unsecured creditors. *In re FCX, Inc.*, 60 B.R. 405, 411 (Bankr. E.D. N.Y. 1986). The assumption and assignment of the Assumed Contracts, or any of them, set forth in the Agreement, will be a necessary part of the deal that the Debtors have struck with the Successful Bidder and, as stated above, will benefit the estates of the Debtors.

58.     The Counterparties will have sufficient opportunity to file an objection to the proposed cure amounts set forth in the Cure Notices. To the extent no objection is filed with regard to a particular cure amount, such cure amount shall be binding on the applicable contract or lease counterparty. The payment of the cure amounts specified in the Cure Notices (or a

different amount either agreed to by the Debtors or resolved by the Court as a result of a timely-filed objection filed by a contract or lease counterparty) will be in full and final satisfaction of all obligations to cure defaults and compensate the Counterparties for any pecuniary losses under such contracts or leases pursuant to section 365(b)(1) of the Bankruptcy Code, unless the Debtors determine that a particular lease or contract is not truly executory, and does not need to be cured to transfer the Assets to the Successful Bidder or, alternatively, the Successful Bidder subsequently elects not to have any Assumed Contracts assumed or assigned to it prior to the Sale Hearing.

59. Cure Amounts disputed by any Counterparties, with respect to any Assumed Contracts to be assumed and assigned to the Successful Bidder at Closing, will be resolved by the Court at the Sale Hearing or other hearing as set forth above.

60. The Purchaser or Successful Bidder, as applicable, is responsible for providing evidence of "adequate assurances of future performance" to the extent required in connection with the assumption and assignment of any Assumed Contracts. The meaning of "adequate assurance of future performance" for the purpose of the assumption of executory contracts and unexpired leases pursuant to section 365 of the Bankruptcy Code depends on the facts and circumstances of each case, but should be given "practical, pragmatic construction." *See Carlisle Homes, Inc. v. Arrari (In re Carlisle Homes, Inc.)*, 103 B.R. 524, 538 (Bankr. D.N.J. 1989). *See also In re Natco Indus., Inc.*, 54 B.R. 436, 440 (Bankr. S.D.N.Y. 1985) (adequate assurance of future performance does not mean an absolute assurance that debtor will thrive and pay rent); *In re Bon Ton Rest. & Pastry Shop, Inc.*, 53 B.R. 789, 803 (Bankr. N.D. Ill. 1985). If

necessary, the Purchaser or the other Successful Bidder shall provide evidence of its ability to provide adequate assurances to Counterparties at the Sale Hearing.

### Notice

61.     The Debtors have served or will serve this Sale Motion (including a copy of the Agreement) on (i) the U.S. Trustee; (ii) the Prepetition Lenders; (iii) counsel to the official committee of unsecured creditors, if any (the "Committee"); (iv) the holders of the thirty largest unsecured claims against the Debtors; (v) all parties known to be asserting a lien on any of the Debtors' assets; and (vi) all other parties who have filed a notice of appearance and demand for service of papers in the Debtors' chapter 11 cases under Bankruptcy Rule 2002 (together with the parties identified in (i)-(vi), the "Sale Motion Parties"). The Debtors will serve notice of the Sale Motion in accordance with the provisions of any Bid Procedures Order entered by the Court, including on (a) the Sale Motion Parties; (b) all known counterparties to leases and/or contracts proposed to be assumed by the Purchaser; (c) all entities known to have expressed an interest in bidding on the Assets in accordance with the Bid Procedures Order; (d) the United States Attorney's office; (e) all state attorney generals in states in which the Debtors do business; (f) state taxing authorities in the states in which the Debtors do business and the Internal Revenue Service; and (g) the Purchaser and its counsel. Further, subject to Court approval, the Debtors will serve the Creditor Notice (as defined in the Bid Procedures Motion) on all known creditors of the Debtors.

62.     Several sections of the Bankruptcy Code and Bankruptcy Rules dictate the sufficiency of notice and adequacy of service, including Bankruptcy Code §§ 102(1)(a) and 363 and Bankruptcy Rules 2002, 6004 and 6004. The Debtors respectfully submit that the content

and manner of service of this Sale Motion as contemplated in the Bid Procedures Motion and the related notices satisfy all such and all other procedural due process requirements, and that the notice that the Debtors have provided and intend to provide of this Sale Motion and the Sale Hearing is reasonable and appropriate and should be approved by this Court as adequate and sufficient notice.

63.     The Debtors request pursuant to Bankruptcy Rules 6004(g) and 6006(d) that the order approving this Sale Motion become effective immediately upon its entry.

## Conclusion

64.     The Debtors' proposed sale of the Assets as described in this Sale Motion, including the assumption and assignment of the Assumed Contracts, is supported by sound business reasons as set forth herein.  The proposed sale is proper, necessary and serves the best interests of the Debtors, their estates and creditors and all parties in interest.  The Debtors thus request that the Court approve the proposed Sale of the Assets free and clear of all interests, liens, claims, and encumbrances including successor liabilities, as requested, including, without limitation, the assumption and assignment of the Assumed Contracts, to the Purchaser or other Successful Bidder.

## No Prior Request

65.     No prior request for the relief sought in this Sale Motion has been made to this or any other court.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Sale Motion and authorize the sale of the Assets to the Purchaser or the other Successful Bidder and approve the proposed Agreement in substantially the form attached to this Sale Motion, pursuant to the attached proposed order; (ii) approve the assumption and assignment of the Assumed Contracts in accordance with the Agreement; (iii) approve the form and manner of notice of this Sale Motion and of the proposed sale and assumptions and assignments; and (iv) grant such other and further relief as is just and proper.

Dated: May 4, 2009

PACHULSKI STANG ZIEHL & JONES LLP

*James E. O'Neill*

Laura Davis Jones (Bar No. 2436)
David M. Bertenthal (CA Bar No. 167624)
Michael R. Seidl (Bar No. 3889)
Joshua M. Fried (CA Bar No. 181541)
Timothy P. Cairns (DE Bar No. 4228)
James E. O'Neill (DE Bar 4042)
919 North Market Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
E-mail: ljones@pszjlaw.com
　　　　dbertenthal@pszjlaw.com
　　　　mseidl@pszjlaw.com
　　　　jfried@pszjlaw.com
　　　　tcairns@pszjlaw.com
　　　　joneill@pszjlaw.com

[Proposed] Counsel to Debtors and
Debtors in Possession