**Exhibit A**

**Form of Bidding Procedures Order**

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FILENE'S BASEMENT, INC., et al., [1] | ) | Case No. 09-11525 (MFW) |
| | ) | |
| Debtors. | ) | |

**ORDER (A) APPROVING BID PROCEDURES FOR THE SALE OF CERTAIN OF THE DEBTORS' ASSETS; (B) SCHEDULING AN AUCTION AND HEARING TO CONSIDER THE SALE AND APPROVE THE FORM AND MANNER OF NOTICE RELATED THERETO; (C) ESTABLISHING PROCEDURES RELATING TO THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, INCLUDING NOTICE OF PROPOSED CURE AMOUNTS; (D) AUTHORIZING DEBTORS TO OFFER CERTAIN BID PROTECTIONS AND (E) GRANTING RELATED RELIEF**

Upon the motion (the "Motion") of the captioned debtors and debtors-in-possession (the "Debtors") for entry of an order *(A) Approving Bid Procedures for the Sale of Certain of the Debtors' Assets; (B) Scheduling an Auction and Hearing to Consider the Sale and Approve the Form and Manner of Notice Related Thereto; (C) Establishing Procedures Relating to the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, Including Notice of Proposed Cure Amounts; (D) Authorizing Debtors to Offer Certain Bid Protections and (E) Granting Related Relief* (the "Motion")[2]; and it appearing that the Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing that this is a core proceeding pursuant to 28 U.S.C. § 157(a); the Court having considered the Motion; and it

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Filene's Basement, Inc. (8237); FB Services LLC (7224); and FB Leasing Services LLC (7228). The address for all Debtors is 25 Corporate Drive, Suite 400, Burlington, MA 01803.

[2] Capitalized terms used but not defined herein shall have the meaning ascribed thereto in the Motion or the APA (as defined herein), as the case may be.

appearing that the relief requested in the Motion, is in the best interests of the Debtors' bankruptcy estates, their creditors and other parties-in-interest; and after due deliberation and sufficient cause appearing therefor;

THE COURT HEREBY MAKES THE FOLLOWING FINDINGS:

A.     Notice of the Motion was adequate and sufficient under the circumstances of these chapter 11 cases, and such notice complied with all applicable requirements of 11 U.S.C. §§ 102 and 363, Rules 2002, 6004, 6006, and 9008 of the Federal Rules of Bankruptcy Procedure, and any other applicable provisions of title 11 of the United States Code (the "Bankruptcy Code"), the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules.

B.     The bid procedures attached hereto as Exhibit A (the "Bid Procedures") are reasonable and appropriate under the circumstances of these chapter 11 cases. The Debtors are authorized to take any and all actions necessary or appropriate to implement the Bid Procedures.

C.     All objections to the relief requested in the Motion that have not been withdrawn, waived or settled as announced to the Court at the hearing on the Motion or by stipulation filed with the Court, are overruled except as otherwise set forth herein.

D.      The Purchaser has expended, and likely will continue to expend, considerable time, money and energy pursuing the Transaction and has engaged in extensive arm's length and good faith negotiations. The Asset Purchase Agreement dated as of May 1, 2009 (the "APA") is the culmination of these efforts. The Debtors have been unable to find a purchaser for the Assets who is willing to enter into a definitive agreement to purchase the Assets on terms as favorable to the Debtors and their estates as the APA.

E.      The Debtors have demonstrated a compelling and sound business justification for authorizing the payment of the Break-Up Fee and Expense Reimbursement to the Purchaser.

F.      The Break-Up Fee and the Expense Reimbursement are fair and reasonable, provides a material benefit to the Debtors' estates and creditors, and was negotiated by the Debtors in good faith and at arm's-length.

G.      The Debtors' payment to the Purchaser (under the conditions of and as set forth in the APA and herein) of the Break-Up Fee and Expense Reimbursement is (i) an actual and necessary cost and expense of preserving the Debtors' estates; (ii) of substantial benefit to the Debtors' estates; (iii) reasonable and appropriate, in light of, among other things, (a) the size and nature of the Transaction under the APA, (b) the substantial efforts that have been and will be expended by the Purchaser, and (c) the benefits that the Purchaser has provided to the Debtors' estates and creditors and all parties in interest herein, notwithstanding that the Transaction is subject to higher or better offers; and (iv) necessary to ensure that the Purchaser will continue to pursue its proposed acquisition of the Assets. In particular, the APA was the culmination of a process undertaken by the Debtors and their professionals to negotiate a

transaction with a bidder who was prepared to pay the highest or otherwise best purchase price to date for the Assets in order to maximize the value of the Debtors estates.

H.     The assurance of the payment in cash of the Break-Up Fee and Expense Reimbursement (i) will promote more competitive bidding by inducing the Purchaser's bid, which otherwise would not have been made and which may be the highest and best available offer for the Assets, (ii) has induced the Purchaser to research the value of the Assets, conduct extensive due diligence and propose the Transaction, including, among other things, submission of a bid that will serve as a minimum or floor bid on which all other bidders can rely, and (iii) will provide a benefit to the Debtors' estates by increasing the likelihood that the price at which the Assets are sold will reflect its true worth.

I.     The Break-Up Fee and Expense Reimbursement are necessary to maximize the value of the Debtors' estates and approval thereof and all related provisions in the APA, including, without limitation, Section 7.2 of the APA, is in the best interests of the Debtors, their estates, creditors, and all other parties in interest.

J.     No other party to date has entered into an asset purchase agreement for the acquisition of the Assets on terms acceptable to the Debtors. The execution of the APA is a necessary prerequisite to determining whether any party other than the Purchaser is willing to enter into a definitive agreement for the acquisition of the Assets on terms acceptable to the Debtors and their creditor constituency. The protection afforded to the Purchaser by payment of the Break-Up Fee and Expense Reimbursement in accordance with the provisions of the APA and this Order was a material inducement for, and an express condition of, the Purchaser's willingness to enter into the APA. The Purchaser is unwilling to commit to hold

open its offer to acquire the Assets under the terms of the APA unless the provisions set forth in the APA with respect to the allowance and payment of the Break-Up Fee and Expense Reimbursement are approved.

K.      The stalking horse bid of the Purchaser provides the Debtors with the opportunity to sell the Assets on a "going concern" basis for the benefit of all parties. The Purchaser has provided a material benefit to the Debtors and their creditors by increasing the likelihood that the best possible price for the Assets will be received. The Bid Procedures are reasonable and appropriate and represent the best method for maximizing value for the benefit of the Debtors' estates.

L.      The Notice of Bid Procedures, Auction Date and Sale Hearing substantially in the form attached hereto as Exhibit B (the "Sale and Bid Procedures Notice"), the Auction and Hearing Notice (the "Creditor Notice"), substantially in the form attached hereto as Exhibit C, and the notice substantially in the form of Exhibit D hereto to be served on counterparties to the Assumed Leases and Potential Assumed Contracts ("Cure Notice"), each provide adequate notice concerning the Transaction and the proposed assumption and assignment of the Assumed Leases and Potential Assumed Contracts, and is intended to provide due and adequate notice of the relief sought in the Sale Motion.

IT IS HEREBY ORDERED THAT:

1.      The relief requested in the Motion is granted as set forth in this Bid Procedures Order.

2.      The Bid Procedures as set forth on the attached Exhibit A are approved in their entirety, and are incorporated herein by reference.

3.     The Transaction, the proposed assumption and assignment of the Assumed Contracts (as defined in the APA) the Auction (as defined below) and the Sale Hearing shall be conducted in accordance with the provisions of this Bid Procedures Order and the Bid Procedures.

4.     Immediately upon entry of this Bid Procedures Order, the APA shall be binding upon both parties thereto unless and until the Court approves a sale to a Successful Bidder other than the Purchaser, in which case the APA shall immediately terminate unless the Purchaser at its option, elects to be a Backup Bidder under the Bid Procedures; provided that nothing herein is intended to override or modify the parties' rights to terminate the APA pursuant to the terms thereof.

5.     Within three (3) Business Days following entry of this Order, the Debtors shall serve by first class mail the Sale and Bid Procedures Notice on (a) the U.S. Trustee; (b) counsel to the official committee of unsecured creditors (the "Committee"); (c) all parties known to be asserting a lien on any of the Debtors' assets; (d) non-debtor counterparties to the Assumed Leases and Potential Assumed Contracts (as defined herein), if any; (e) all entities known to have expressed an interest in acquiring any of the Assets, and known liquidators of real property leases (which the Debtors and their advisors may reasonably determine may be interested in any of the Assets); (f) the United States Attorney's office; (g) all state attorneys general in states in which the Debtors do business; (h) various known federal and state agencies and authorities asserting jurisdiction over the Assets, including the Internal Revenue Service; (i) the Purchaser and its counsel; and (j) all other parties that have filed a notice of appearance and demand for

service of papers in the Debtors' chapter 11 cases under Bankruptcy Rule 2002 as of the date of this Order (the "Sale and Bid Procedures Notice Parties").

6.    Within three (3) Business Days following entry of this Order, the Debtors shall serve the Creditor Notice on all of their known creditors.

7.    On or before five (5) days after entry of this Bid Procedures Order, the Debtors shall file and serve the Cure Notice upon each counterparty (a "Counterparty") to any lease to be assumed by the Purchaser pursuant to the APA (an "Assumed Lease") or to any other executory contract or unexpired lease, if any, that the Debtors determine may be assumed by a Successful Bidder (a "Potential Assumed Contract").[3] Each Counterparty to an Assumed Lease or Potential Assumed Contract[4] must file and serve any objection (a "Cure Amount Objection") to the cure amount set forth in the Cure Notice (the "Cure Amount") and to the assumption and assignment of the applicable Assumed Lease or Potential Assumed Contract by the date that is fifteen (15) days after service of the Cure Notice. Each Cure Amount Objection must set forth (i) the basis for the objection, (ii) with specificity, the amount the party asserts as the correct Cure Amount, and (iii) appropriate documentation in support of said amount.

8.    Any Counterparty failing to timely file an objection to the Cure Amount set forth in the Cure Notice shall be forever barred from objecting to the Cure Amount and from asserting any additional cure or other amounts against the Debtors, their estates, and/or the

---

[3]    A Potential Assumed Contract includes the Assumed Contracts identified in the APA to be assumed by the Debtors and assigned to the Purchaser in accordance with the APA.

[4]    The inclusion of any agreement as an Assumed Lease or a Potential Assumed Contract, and any reference herein or in the Cure Notice to an Assumed Lease, a Potential Assumed Contract, or any other agreement, document, instrument or relationship as an executory contract or unexpired lease does not constitute an admission by the Debtor that such actually constitutes an executory contract or unexpired lease under section 365 of the Bankruptcy Code, and the Debtor expressly reserves the right to challenge the status of any agreement, lease, document, instrument or relationship included as an Assumed Lease or Potential Assumed Contract or so referred to up until the time of the Sale Hearing.

Purchaser with respect to the Assumed Lease or Potential Assumed Contract (as applicable) to which it is a Counterparty, and will be deemed to consent to the Cure Amount as set forth in the Cure Notice. Notwithstanding anything to the contrary, no executory contract or unexpired lease will be assumed unless and until the occurrence of the Closing Date.

9. If any Counterparty objects for any reason to the assumption and assignment of an Assumed Lease or Potential Assumed Contract to the Purchaser (other than with respect to the Cure Amount, as set forth above) or for any other reason to the approval of the Transaction, the Counterparty must file any such objection with the Court on or before [_____, 2009,] at 4:00 p.m. (Eastern Daylight Time), and serve such objection in accordance with the Auction and Hearing Notice so as to be received by such date and time by (a) counsel for the Debtors; (b) counsel for the Committee; (c) the United States Trustee; and (d) counsel for the Purchaser, failing which the Counterparty will deemed to consent to the proposed assumption and assignment to the Purchaser of such Assumed Lease or Potential Assumed Contract to which it is a Counterparty. Notwithstanding the foregoing and any other provision herein, any objection of the Counterparty (an "Alternative Purchaser Adequate Assurance Objection") to the assumption and assignment of an Assumed Lease or Potential Assumed Contract to a third party other than the Purchaser ("Alternative Purchaser") on the basis of lack of adequate assurance of future performance under the applicable lease or contract must be filed with the Court and served by e-mail and/or facsimile on (i) Debtors' counsel, (ii) counsel to the Committee, (iii) the applicable third party buyer or its counsel, and (iv) the U.S. Trustee, by no later than 6:00 p.m. Eastern time on the day of the Auction, after the conclusion of the Auction.

10.     Any other objections to the relief requested at the Sale Hearing or to the proposed form of order (the "Sale Order") shall be in writing, shall state the basis of such objection with specificity, and shall be filed with the Court on or before [_____], at 4:00 p.m. (Eastern Daylight Time), and served in accordance with the Auction and Hearing Notice so as to be received by such date and time by (a) counsel for the Debtors; (b) counsel for the Committee; (c) the United States Trustee; and (d) counsel for the Purchaser.

11.     Compliance with the foregoing notice provisions shall constitute sufficient notice of the Debtors' Sale of the Assets, the assumption and assignment of each Assumed Lease and Potential Assumed Contract, the proposed Cure Amount with respect to each such Assumed Lease or Potential Assumed Contract, and no additional notice of such contemplated transactions need be given.

12.     If the Debtors receive more than one Qualified Bid (as defined in the Bid Procedures), an auction (the "Auction") will be held on [___, 2009], at 10:00 a.m. (Eastern Time), at the offices of Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, Wilmington, DE 19899, or at any such other location as the Debtors may hereafter designate.

13.     Counsel to the Debtors is authorized to hold and conduct the Auction in accordance with the Bid Procedures.

14.     In consideration for the Purchaser having expended considerable time and expense in connection with the APA and the negotiation thereof, the Court approves the Break-Up Fee and the Expense Reimbursement to be paid in accordance with and subject to the conditions provided for in the APA, including, without limitation, Section 7.2 of the APA. The

Debtors are authorized to pay the Break-Up Fee and the Expense Reimbursement to the extent payable to the Purchaser pursuant to the APA.

15.     In the event that the Court enters an order approving a transaction for the sale of the Assets to a party other than the Purchaser (a "Competing Transaction"), and the Purchaser terminates the APA under 7.1(e) thereof, the Debtors shall refund the Good Faith Deposit to the Purchaser pursuant to the terms of the APA no later than two (2) Business Days after the date of entry of the order approving the Competing Transaction.

16.     The hearing regarding the acceptance of the Successful Bid(s) and Backup Bid(s) shall be held on [___, 2009, at _:_ _.m. (Eastern Time) (the "Sale Hearing") in the Courtroom of the Honorable [_____], and, subject to the terms of the APA, may be adjourned from time to time without further notice other than an announcement in open court at the Sale Hearing.

17.     Notwithstanding the possible applicability of Bankruptcy Rule 6004(h) and 7062 or otherwise, the terms and conditions of this Bid Procedures Order shall be immediately effective and enforceable upon its entry, and no automatic stay of execution shall apply to this Bid Procedures Order.

18.     This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation of this Bid Procedures Order.

Dated: _____

_____
UNITED STATES BANKRUPTCY JUDGE

**EXHIBIT A**

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FILENE'S BASEMENT, INC., et al., [1] | ) | Case No. 09-11525 (MFW) |
| | ) | |
| Debtors. | ) | |

## BID PROCEDURES

The captioned debtors and debtors in possession (the "Debtors") have filed a motion dated [_____], 2009 (the "Motion"). The Debtors sought, among other things, approval of the process and procedures set forth below (the "Bid Procedures") through which it will determine the highest and best offer for certain of the Debtors' assets relating to the Debtors' retail clothing stores (the "Assets").[2] On [_____], 2009, the Bankruptcy Court entered its order (the "Bid Procedures Order"), which, among other things, approved the Bid Procedures.

On [\_\_\_\_], 2009, as further described below, in the Motion and in the Bid Procedures Order, the Bankruptcy Court shall conduct the Sale Hearing at which the Debtors shall seek entry of the Sale Order authorizing and approving the sale of the Assets (the "Transaction") to the Purchaser (defined below) or to one or more other Qualified Bidders (defined below) (an "Alternative Transaction"), which offer (or offers) that the Debtors, in their

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Filene's Basement, Inc. (8237); FB Services LLC (7224); and FB Leasing Services LLC (7228). The address for all Debtors is 25 Corporate Drive, Suite 400, Burlington, MA 01803.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the APA.

reasonable discretion and upon the Committee and the Prepetition Agent on behalf of the Prepetition Lenders, determine to constitute the highest and best offer.

## APA

On May 1, 2009], the Debtors entered into an asset purchase agreement (the "APA") with *Crown FB LLC.* (the "Purchaser"), pursuant to which the Purchaser proposes to acquire the Assets. Pursuant to the APA, the Purchaser would provide consideration for the Assets as provided in the APA (the "Purchase Price"). The transaction contemplated by the APA is subject to competitive bidding as set forth herein, and approval by the Bankruptcy Court pursuant to Bankruptcy Code §§ 363 and 365.

## Assets for Sale or Disposition

The Debtors are offering for sale in one or more transactions the Assets of the Debtors as set forth in Section 1.1 of the APA. The assets for sale do not include the Excluded Assets as defined and described in Section 1.2 of the APA.

## Participation Requirements

In order to participate in the bidding process and to or otherwise be considered for any purpose hereunder, a person interested in all or portions of the Assets (a "Potential Bidder") must first deliver (unless previously delivered) to the Debtors and their counsel, not later than [_____, 2009], the following (the "Participation Requirements"):

3.  Confidentiality Agreement. An executed confidentiality agreement in form and substance acceptable to the Debtors and their counsel (a "Confidentiality Agreement"); and

4.  Proof of Ability to Perform. Prior to or at the time of presentation of a Bid, written evidence that the Debtors reasonably conclude demonstrates the Potential Bidder has the necessary financial ability to close the contemplated transaction and provide adequate assurance of future performance under all contracts and leases to be assumed in such

contemplated transaction. Such information may include, in the Debtors' discretion, *inter alia*, the following:

a.  the Potential Bidder's current financial statements (audited if they exist);

b.  contact names and numbers for verification of financing sources;

c.  evidence of the Potential Bidder's internal resources and proof of any debt or equity funding commitments that is needed to close the contemplated transaction;

d.  any such other form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtors demonstrating that such Potential Bidder has the ability to close the contemplated transaction; provided, however, that the Debtors shall determine, in their reasonable discretion, in consultation with the Debtors' advisors, whether the written evidence of such financial wherewithal is reasonably acceptable, and shall not unreasonably withhold acceptance of a Potential Bidder's financial qualifications;

e.  information regarding the proposed use of the premises with regard to the leases to be assumed in the contemplated transaction;

f.  information regarding the Potential Bidder's prior experience in the retail industry, if any; and

g.  other such documentation as the Debtors may reasonably request.

## Designation as Qualified Bidder

A "Qualified Bidder" is a Potential Bidder (or combination of Potential Bidders whose bids for the Assets of the Debtors do not overlap and who shall also be referred to herein as a single Qualified Bidder) that complies with the requirements of the Participation Requirements and that the Debtors, in their discretion and with assistance from their advisors, and in consultation with the Committee and the Prepetition Agent on behalf of the Prepetition Lenders, determine is reasonably likely to submit a *bona fide* offer that would result in greater value being received for the benefit of the Debtors' creditors than under the APA and to be able to consummate a sale if selected as a Successful Bidder (defined below).

Upon the receipt from a Potential Bidder of the information required under subparagraph 1 and requested by the Debtors under the Participation Requirements, the Debtors, as soon as is practicable, shall determine in their discretion, and upon consultation with the Committee and the Prepetition Agent on behalf of the Prepetition Lenders, and notify the Potential Bidder with respect to whether such Potential Bidder is a Qualified Bidder.

The Purchaser (together with any assigns) is a Qualified Bidder and is deemed to satisfy all Bid Requirements (hereinafter defined).

**Access to Due Diligence Materials**

Only Potential Bidders that execute and deliver a Confidentiality Agreement are eligible to receive due diligence access or additional non-public information. If the Debtors determine, in their discretion and upon consultation with the Committee and the Prepetition Agent on behalf of the Prepetition Lenders, that a Potential Bidder that has otherwise satisfied the Participation Requirements does not constitute a Qualified Bidder, then such Potential Bidder's right to receive due diligence access or additional non-public information shall terminate. The Debtors will designate an employee or other representative to coordinate all reasonable requests for additional information and due diligence access from such Qualified Bidders. The Debtors shall not be obligated to furnish any due diligence information after the Bid Deadline (as hereinafter defined). The Debtors are not responsible for, and will bear no liability with respect to, any information obtained by Qualified Bidders in connection with the sale of the Assets.

**Due Diligence From Bidders**

Each Potential Bidder and Qualified Bidder (collectively, a "Bidder") shall comply with all reasonable requests for additional information and due diligence access by the Debtors or their advisors regarding such Bidder and its contemplated transaction ("Bidder Related Information"). Failure by a Potential Bidder to comply with requests for additional information and due diligence access will be a basis for the Debtors to determine that the Potential Bidder is not a Qualified Bidder. Failure by a Qualified Bidder to comply with such requests for additional information and due diligence access will be a basis for the Debtors to determine that a bid made by a Qualified Bidder is not a Qualified Bid. Unless the applicable Bidder consents to the Bidder Related Information being provided to other parties in interest, only the Debtors and their counsel and advisors will be provided with the Bidder Related Information.

The Purchaser (together with any assigns) is a Qualified Bidder and is deemed to have satisfied all requests for Bidder Related Information.

**Bidding Process**

The Debtors and their advisors shall: (i) determine whether a Potential Bidder is a Qualified Bidder; (ii) coordinate the efforts of Bidders in conducting its due diligence investigations, as permitted by the provisions above; (iii) receive offers from Qualified Bidders; and (iv) negotiate any offers made to purchase the Assets (collectively, the "Bidding Process"). The Debtors, in their discretion shall have the right to adopt such other rules for the Bidding

Process (including rules that may depart from those set forth herein) that will better promote the goals of the Bidding Process and that is not inconsistent with any of the other provisions hereof or of any Bankruptcy Court order.

## Bid Deadline

The deadline for submitting bids by a Qualified Bidder shall be [_____, 2009], at 4:00 p.m. (Eastern Time) (the "Bid Deadline").

Prior to the Bid Deadline, a Qualified Bidder that desires to make an offer, solicitation or proposal (a "Bid") shall deliver written copies of its Bid by electronic mail to: (i) the Debtors, c/o Abacus Advisors, 10 Reuten Drive, Closter, NJ 07624;, Attn: Alan Cohen with a copy to counsel for the Debtors, Pachulski Stang Ziehl & Jones LLP, 919 N. Market St., 17th Floor, Wilmington, DE 19801, Attn: Laura Davis Jones; (ii) the Purchaser, c/o Morris Missry, Wachtel & Masyr, LLP, 110 East 59th Street, New York, NY 10022 ; provided, however, that any confidential financial information may be delivered to the Debtors, their advisors, and their counsel only ("Bidder Confidential Information").

## Bid Requirements

To be eligible to participate in the Auction, each Bid and each Qualified Bidder submitting such a Bid must be determined by the Debtors to satisfy each of the following conditions (the "Bid Requirements"):

> Good Faith Deposit. Each Bid, other than a Bid submitted by the Purchaser, must be accompanied by a deposit (the "Good Faith Deposit") in the form of a certified check or cash payable to the order of the Debtors in an amount equal to 20% of the Purchase Price under the Bid up to a maximum amount of $5,000,000.00, provided, however, that a Bid for all the Assets that are the subject of the APA

must be accompanied by a $5,000,000 Good Faith Deposit. Such Good Faith Deposits shall be irrevocable until five (5) days after Closing of the transactions contemplated by the Successful Bid.

Minimum Overbid. The consideration proposed by the Bid may include only cash and/or other consideration acceptable to the Debtors in their discretion. The aggregate consideration must equal or exceed the sum of the Purchase Price (and, unless waived in whole or in part by the Debtors, in their sole discretion, must provide for the assumption of Assumed Liabilities) plus the Break-Up Fee and the Expense Reimbursement plus $290,000.00.

Irrevocable. A Bid must be irrevocable until the earlier of (i) the deadline set forth in the Bid, as such date may be modified, or (ii) July 31, 2009.

The Same or Better Terms. The Bid must be on terms that, in the Debtors' business judgment are substantially the same or better than the terms of the APA. A Bid must include an executed agreement pursuant to which the Qualified Bidder proposes to effectuate the contemplated transaction (the "Contemplated Transaction Documents"). A Bid shall include a copy of the APA marked to show all changes requested by the Bidder (including those related to the Purchase Price) (the "Marked-Up APA"). The Contemplated Transaction Documents must include a commitment to close promptly after the date on which the Sale Order is entered. A Bid should propose a contemplated transaction involving all or substantially of the Assets, provided, however, that the Debtors in their discretion, and upon consultation with the Committee and the Prepetition Agent on behalf of the Prepetition Lenders, may consider proposals for less (or more) than substantially all the Assets, provided further that the Debtors will evaluate all Bids, in their discretion, and upon consultation with the Committee and the Prepetition Agent on behalf of the Prepetition Lenders, to determine whether such Bid or combination of Bids maximizes the value of the Debtors' estates as a whole. The Bid must expressly identify, as part of the marked-up APA or the schedule(s) thereto, the leases and/or contracts proposed to be assigned to the Bidder as of the Closing.

Contingencies. A Bid may not be conditioned on obtaining financing or any internal approval or otherwise be subject to contingencies more burdensome than those in the APA, unless the Debtors in their discretion otherwise agree, but may be subject to the accuracy in all material respects at the closing of specified representations and warranties at or before closing or the satisfaction in all material respects at the closing of specified conditions, none of which shall be more burdensome than those set forth in the APA.

Financing Sources. A Bid must contain written evidence of a commitment for financing or other evidence of the ability to consummate the sale satisfactory to the Debtors with appropriate contact information for such financing sources.

<u>No Fees Payable to Qualified Bidder</u>. A Bid may not request or entitle the Qualified Bidder to any break-up fee, termination fee, expense reimbursement or similar type of payment. Moreover, by submitting a Bid, a Bidder shall be deemed to waive the right to pursue a substantial contribution claim under Bankruptcy Code § 503 related in any way to the submission of its Bid or the Bid Procedures.

A Bid received from a Qualified Bidder before the Bid Deadline that meets the above requirement shall constitute a "<u>Qualified Bid</u>," if the Debtors believe, in their discretion, and upon consultation with the Committee and the Prepetition Agent on behalf of the Prepetition Lenders, that such Bid would be consummated if selected as the Successful Bid.

In the event that any Potential Bidder is determined by the Debtors, in their discretion and upon consultation with the Committee and the Prepetition Agent on behalf of the Prepetition Lenders, not to be a Qualified Bidder, the Potential Bidder shall be refunded its Good Faith Deposit with interest thereon, if any has accrued, on or before the date that is five (5) days after Closing of the Sale.

The Debtors, in their discretion, and upon consultation with the Committee and the Prepetition Agent on behalf of the Prepetition Lenders, shall have the right to reject any and all bids that they believe, in their discretion, do not comply with the Bid Procedures. For purposes hereof, the APA shall constitute a Qualified Bid.

**Auction**

The Debtors will conduct an auction (the "Auction") to determine the highest and best bid with respect to the Assets. The Debtors shall provide the Purchaser and all Qualified Bidders with copies of all Qualified Bids by the business day following the Bid Deadline, which may exclude any confidential financial information, as determined by the Debtors in their

reasonable discretion or which has been so designated by the Qualified Bidder. The Auction shall commence at 10:00 a.m. (Eastern Time) on [____, 2009], at the offices of Pachulski, Stang, Ziehl & Jones LLP, 919 N. Market St., 17th Floor, Wilmington, DE 19801.

No later than [____, 2009], prior to the commencement of the Auction, the Debtors will notify all Qualified Bidders of (i) the highest and best Qualified Bid, as determined by the Debtors in their discretion and upon consultation with the Committee and the Prepetition Agent on behalf of the Prepetition Lenders, (the "Baseline Bid") and (ii) the time and place of the Auction, and provide copies of all submitted bids to all Qualified Bidders (excluding any Bidder Confidential Information).

If no higher and better offer is obtained at the Auction, then the Purchaser will be deemed the Successful Bidder, the APA will be the Successful Bid, and, at the Sale Hearing, the Debtors will seek approval of and authority to consummate the Transaction contemplated by the APA.

The Auction shall be conducted according to the following procedures:

*Participation At The Auction*

Only a Qualified Bidder that has submitted a Qualified Bid is eligible to participate at the Auction. Only the authorized representative of each of the Qualified Bidders, the Debtors, the Lenders, and the Committee shall be permitted to attend.

During the Auction, bidding shall begin initially with the highest Baseline Bid and subsequently continue in minimum increments of at least $150,000.00. Except as otherwise set forth herein, the Debtors may conduct the Auction in the manner they determine will result in the highest and best offer for the Debtors' assets available for sale.

*The Debtors Shall Conduct The Auction*

The Debtors and their professionals shall direct and preside over the Auction. At the start of the Auction, the Debtors shall describe the terms of the Baseline Bid. The determination of which Qualified Bid constitutes the Baseline Bid shall take into account any factors the Debtors reasonably deem relevant to the value of the Qualified Bid to the estates including, *inter alia*, the proposed closing date of any transaction proposed by a Qualified Bidder (the "Bid Assessment Criteria"). All Bids made thereafter shall be Overbids (as defined below) and shall be made and received on an open basis, and all material terms of each Bid shall be fully disclosed to all other Qualified Bidders. The Debtors shall maintain a transcript of all Bids made and announced at the Auction, including the Baseline Bid, all Overbids and the Successful Bid. The Debtors reserve the right to conduct the auction in the manner designed to maximize value based upon the nature and extent of the Qualified Bids received.

*Terms Of Overbids*

An "Overbid" is any bid made at the Auction subsequent to the Debtors' announcement of the Baseline Bid. To submit an Overbid for purposes of this Auction, a Qualified Bidder must comply with the following conditions:

(e) *Minimum Overbid Increment*

Any Overbid after the Baseline Bid shall be made in increments of at least $150,000.00. Additional consideration in excess of the amount set forth in the Baseline Bid may include only cash and/or other consideration acceptable to the Debtors.

(f) *Remaining Terms Are the Same as for Qualified Bids*

Except as modified herein, an Overbid must comply with the conditions for a Qualified Bid set forth above, provided, however, that the Bid Deadline and the Initial Minimum Overbid Increment shall not apply. Any Overbid made from time to time by a Qualified Bidder must remain open and binding on the Qualified Bidder until and unless (i) the Debtors accept a higher Qualified Bid as an Overbid and (ii) such Overbid is not selected as the Back-up Bid (as defined below).

To the extent not previously provided (which shall be determined by the Debtors in their discretion), a Qualified Bidder submitting an Overbid must submit at the Debtors' request, as part of its Overbid, written evidence (in the form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtors) demonstrating such Qualified Bidder's ability to close the transaction proposed by such Overbid. The Purchaser shall be deemed to have satisfied this requirement.

(g)     *Announcing Overbids*

The Debtors shall announce at the Auction the material terms of each Overbid, the basis for calculating the total consideration offered in each such Overbid, and the resulting benefit to the Debtors' estates based on, *inter alia*, the Bid Assessment Criteria.

(h)     *Consideration of Overbids*

The Debtors reserve the right to make one or more adjournments in the Auction to, among other things: facilitate discussions with individual Qualified Bidders; allow individual Qualified Bidders to consider how they wish to proceed; and give Qualified Bidders the opportunity to provide the Debtors with such additional evidence as the Debtors, in their discretion, may require, that the Qualified Bidder (other than the Purchaser) has sufficient

internal resources, or has received sufficient non-contingent debt and/or equity funding commitments, to consummate the proposed transaction at the prevailing Overbid amount.

Following the conclusion of the Auction, the Debtors may resume bidding on such procedures determined by the Debtors in their discretion for the sale of discrete assets not sold to the Successful Bidder.

## ADDITIONAL PROCEDURES AND MODIFICATIONS

The Debtors, in their discretion, may adopt additional rules for the Auction at or prior to the Auction that, in their reasonable discretion, will better promote the goals of the Auction and that are not inconsistent with any of the provisions of the Procedures Order. All such additional rules will be provided to each of the Qualified Bidders at the Auction. Further, at or before the Sale Hearing, the Debtors, in their discretion, may impose such other terms and conditions as the Debtors may determine to be in the best interests of the Debtors' estates, their creditors and other parties in interest; provided, however, that any such terms or conditions may not be materially inconsistent with the terms of these Bidding Procedures. The Bidding Procedures set forth herein may not be modified except with the express written consent of the Debtors and the Purchaser or upon Court Order.

**All Bids shall be made and received in one room, on an open basis, and all other Qualified Bidders shall be entitled to be present for all bidding with the understanding that the true identity of each Qualified Bidder (*i.e.*, the principals submitting the Bid ("Principals")) shall be fully disclosed to all other Qualified Bidders and that all material terms of each Qualified Bid will be fully disclosed to all other Qualified Bidders throughout the entire Auction.**

**The Debtors may (a) determine, which Qualified Bid, if any, is the highest and best offer and (b) reject at any time before entry of an order of the Bankruptcy Court approving a Qualified Bid, any Bid that is (i) inadequate or insufficient, (ii) not in conformity with the**

requirements of the Bankruptcy Code, the Bid Procedures, or the terms and conditions of sale, or (iii) contrary to the best interest of the Debtors, their estates and creditors.

## CONSENT TO JURISDICTION AS CONDITION TO BIDDING

All Qualified Bidders at the Auction shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court and waived any right to a jury trial in connection with any disputes relating to the Auction, and the construction and enforcement of each Qualified Bidder's Contemplated Transaction Documents, as applicable.

### Closing the Auction

Upon conclusion of the bidding, the Auction shall be closed, and the Debtors, upon consultation with the Committee and the Lenders, shall immediately identify the highest and best offer for the Assets (which may be an aggregate of bids for less than all of the Assets) (the "Successful Bid") and the entity submitting such Successful Bid (the "Successful Bidder"), which highest and best offer will provide the greatest amount of net value to the Debtors, and the next highest or otherwise best offer after the Successful Bid (the "Back-up Bid") and the entity submitting the Back-up Bid (the "Back-up Bidder"), and advise the Qualified Bidders of such determination. Upon five (5) business days' prior notice by the Debtor, the Back-up Bidder selected by the Debtors must immediately proceed with the closing of the transaction contemplated by the Back-up Bid in the event that the transaction with the Successful Bidder is not consummated for any reason. If the Purchaser's final bid is deemed to be highest and best at the conclusion of the Auction, the Purchaser will be the Successful Bidder, and such bid, the Successful Bid. The Purchaser may elect at its option, but shall not be required to serve as a Backup Bidder.

### Acceptance of a Successful Bid

The Debtors shall sell the Assets to the Successful Bidder upon the approval of the Successful Bid by the Bankruptcy Court after the Sale Hearing. The Debtors' presentation of a particular Qualified Bid to the Bankruptcy Court for approval does not constitute the Debtors' acceptance of such Qualified Bid. The Debtors will be deemed to have accepted a Qualified Bid only when the Qualified Bid has been approved by the Bankruptcy Court at the Sale Hearing. All interested parties reserve their right to object to the Debtors' selection of the Successful Bidder (including the assignment of any of such objector's Assumed Leases and/or Potential Assumed Contracts proposed to be assumed by the Debtors and assigned to the Successful Bidder, and the Debtors reserve the right to contest any such objection, including on the ground that the objector lacks standing, provided, however, that any objection to such assignment on the basis of amounts necessary, pursuant to Section 365 of the Bankruptcy Code, to cure all defaults under such objector's Assumed Lease or Potential Assumed Contract proposed to be assumed by the Debtors and assigned to the Successful Bidder must be made and/or reserved in accordance with the procedures set forth in the order approving these Bid Procedures).

### "AS IS, WHERE IS"

The sale of the Assets shall be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Debtors, their agents or their estates except to the extent set forth in the APA or the purchase agreement of another Successful Bidder. The Purchaser and each Qualified Bidder shall be deemed to acknowledge and represent that it has had an opportunity to conduct any and all due diligence regarding the Assets prior to making its offer, that it has relied solely upon its own independent review,

investigation and/or inspection of any documents and/or the Assets in making its bid, and that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Assets, or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in these Bid Procedures or, (i) as to the Purchaser, the terms of the sale of the Assets shall be set forth in the APA, or (ii) as to another Successful Bidder, the terms of the sale of the Assets shall be set forth in the applicable purchase agreement.

## FREE OF ANY AND ALL INTERESTS

Except as otherwise provided in the APA or another Successful Bidder's purchase agreement and subject to the approval of the Bankruptcy Court, all of Debtors' right, title and interest in and to the Assets subject thereto shall be sold free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options and interests thereon and thereagainst (collectively, the "Interests"), in accordance with Bankruptcy Code § 363(f), with such Interests to attach to the net proceeds of the sale of the Assets.

## SALE HEARING

The Sale Hearing shall be conducted by the Bankruptcy Court on a day that is one (1) business day following the Auction Date or on such other date as may be established by the Bankruptcy Court.

If the Successful Bidder fails to consummate an approved sale by the date that is the earlier to occur of (i) the deadline set forth in the Successful Bid, as such date may be or may have been modified by the Successful Bidder and the Debtors, or (ii) July 31, 2009 (the "Termination Date"), the Debtors shall be authorized, but not required, to deem the Back-up Bid,

as disclosed at the Sale Hearing, the Successful Bid, and the Debtors shall be authorized, but not required, to consummate the sale with the Qualified Bidder submitting such Bid without further order of the Bankruptcy Court.

## RETURN OF GOOD FAITH DEPOSIT

Any Good Faith Deposit of the Successful Bidder shall be applied to the purchase price of such transaction at Closing. Unless otherwise agreed by the Debtors in their discretion, Good Faith Deposits of all other Qualified Bidders shall be held in an interest-bearing escrow account until five (5) days after Closing of the transactions contemplated by the Successful Bid, and thereafter returned to the respective bidders with all accumulated interest thereon. If a Successful Bidder (including any Back-up Bidder that has become the Successful Bidder) fails to consummate an approved sale because of a breach or failure to perform on the part of such Successful Bidder, the Debtors shall be entitled to retain the Successful Bidder's Good Faith Deposit as part of their damages resulting from such Successful Bidder's breach or failure to perform. In the event the Court enters an Order approving Competing Transaction and the Purchasers terminates the APA under section 7.1(e) thereof, the Debtors hall refund the Good Faith Deposit to the Purchaser pursuant to the terms of the APA no later than two (2) Business Days after the date of entry of the Order approving the Competing Transaction.

## MODIFICATIONS

The Bid Procedures may not be modified except with the express written consent of the Debtors and the Purchaser.

The Debtors may (a) determine, which Qualified Bid, in any, is the highest and best offer and (b) reject at any time before entry of an order of the Bankruptcy Court approving a Qualified Bid, any Bid that is (i) inadequate or insufficient; (ii) not in conformity with the requirements of the Bankruptcy Code, the Bid Procedures, or the terms and conditions of sale; or (iii) contrary to the best interests of the Debtors, their estates and creditors.

At or before the Sale Hearing, the Debtors may impose such other terms and conditions as the Debtors may determine to be in the best interests of the Debtors' estates, their creditors, and other parties in interest.