**Exhibit C**

**Form of Holding Escrow Agreement**

# ESCROW AGREEMENT

THIS ESCROW AGREEMENT (this "**Escrow Agreement**") dated as of April ___, 2009, by and among _____, a Delaware limited liability company (the "**Purchaser**"), on the one hand, and Filene's Basement, Inc., a Delaware corporation, [ ___ ], a [ ___ ] (the "**FB Subsidiary**") and a wholly of Filene's Basement, Inc. (together with Filene's Basement, Inc., "**FB**" or the "**Seller**" and together with Purchaser, the "**Parties**"); on another, and Wilmington Trust Company, a Delaware banking corporation, as escrow agent (the "**Escrow Agent**"), on yet another.

## WITNESSETH

WHEREAS, Purchaser and Seller have entered into an Asset Purchase Agreement dated as of _____, 2009, by and among the same Parties (collectively, the "**Asset Purchase Agreement**") and capitalized terms used herein and not otherwise defined in this Escrow Agreement shall have the meanings ascribed to them in the Asset Purchase Agreement), involving the sale of certain assets of Seller to Purchaser;

WHEREAS, pursuant to Section 1.4(a) of the Asset Purchase Agreement, the Parties have agreed that not later than two (2) Business Days following the satisfaction of the condition set forth in Section 5.4 of the Asset Purchase Agreement relating to the entry of the Sales Approval Order, Purchaser would deposit an amount equal to the balance of the Purchase Price over and above the amount of the Good Faith Deposit previously deposited with Wilmington Trust Company under that certain Escrow Agreement dated as of April [ __ ], 2009 (the "**Initial Escrow Agreement**") among the Parties (the "**Holding Deposit**") into an Escrow Account (as defined below) with Escrow Agent;

WHEREAS, Purchaser and Seller desire to appoint the Escrow Agent to act as escrow agent hereunder in the manner hereinafter set forth and the Escrow Agent is willing to act in such capacity;

WHEREAS, the Asset Purchase Agreement contemplates that Seller will soon file (or prior to the execution of this Agreement did file) a petition initiating a Chapter 11 bankruptcy proceeding in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**") in which Seller will be the debtor and debtor in possession (the "**Case**").

WHEREAS, the Escrow Agent is not a party to the Asset Purchase Agreement, is not bound by any of its terms and will not be required to refer to the Asset Purchase Agreement for any instructions.

NOW THEREFORE, in consideration of the premises and of the mutual covenants and agreements hereinafter set forth and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Purchaser, Seller and the Escrow Agent hereby agree as follows:

1. <u>Establishment of Escrow Account</u>. Upon Escrow Agent's receipt of the Holding Deposit and such information as Escrow Agent requires in order to satisfy the requirements of the "United States Patriot Act" relating to the Escrow and the arrangements contemplated herein, Escrow Agent shall immediately invest the Holding Deposit in a bank money market account (the "**Escrow Account**") at Wilmington Trust. Interest accruing on such money market account shall be credited to the Escrow Account. All funds credited to the Escrow Account shall be applied and disbursed only as provided herein. The Escrow Agent shall segregate the funds credited to the Escrow Account from its other funds, whether held by Escrow Agent as an agent, in trust or otherwise.

2. <u>Deposit to the Escrow Account; Investment</u>.

(a) Within two (2) Business Days following the satisfaction of the condition set forth in Section 5.4 of the Asset Purchase Agreement relating to the entry of the Sales Approval Order, Purchaser shall cause the Holding Deposit to be delivered to the Escrow Agent for deposit in the Escrow Account.

(b) All amounts to be deposited with the Escrow Agent shall be transferred by cashier's check or by wire transfer of immediately available funds of the United States of America to the following account of the Escrow Agent (or to such other account of the Escrow Agent as the Escrow Agent shall notify Seller and Purchaser in writing prior to the transfer of funds and which account Seller and Purchaser approve):

> Wilmington Trust Co.
> ABA No. 031100092
> Account Name: _____
> Escrow Account No. _____

(c) Upon receipt, the Escrow Agent shall confirm in writing to Seller and Purchaser its receipt of the Holding Deposit pursuant to Section 2(a) above.

3. <u>Distributions from Escrow Account</u>.

(a) Funds on deposit in the Escrow Account shall be withdrawn and disbursed by the Escrow Agent only in accordance with this Section 3.

(b) Upon Escrow Agent's receipt, from time to time, of joint written instructions signed by Purchaser and Seller, Escrow Agent shall disburse to the Party(ies) designated therein the portion(s) of the Holding Deposit specified for disbursement to such Party therein.

(c) If only one of the Parties (the "**Notifying Party**") (without joint instructions from the other Party(ies)) notifies the Escrow Agent that it is entitled to the Holding Deposit (or any portion thereof) pursuant to the provisions of Section 3(d) below, such notice (the "**Notice**") shall state the reason that the Notifying Party is entitled to the Holding Deposit (or any portion thereof), and the Notice will also be sent concurrently to the other Party(ies) (the "**Recipient**"). The Recipient shall have ten (10) calendar days from its actual receipt of the Notice to provide notice to the Escrow Agent and the Notifying Party disputing the Notifying Party's entitlement to

2

the Holding Deposit. If the Escrow Agent does not receive notice disputing such entitlement to the Holding Deposit (or a portion thereof) within ten (10) calendar days after Escrow Agent receives the Notice, the Escrow Agent shall pay the portion of the Holding Deposit as demanded by the Notifying Party on the next succeeding Business Day (as defined in Section 17 below). The Escrow Agent shall have no duty to monitor or confirm the actions of the Notifying Party or the Recipient or confirm that the Recipient has actually received the Notice. The Escrow Agent shall be entitled to conclusively assume that the Recipient has actually received any Notice on the same date that the Escrow Agent actually received such Notice. The Escrow Agent shall not be liable for making any distribution in accordance with this Section 3(c) in reliance on such assumption. If the Escrow Agent receives notice disputing such entitlement to the Holding Deposit or portion thereof within ten (10) calendar days after Escrow Agent receives the Notice, the Escrow Agent shall not disburse any portion of the Holding Deposit until the Escrow Agent receives either an order of the Bankruptcy Court, which order has become final and not subject to appeal and has been certified by the clerk of the Bankruptcy Court or other appropriate official, or joint written notice signed by Purchaser and Seller indicating that the dispute has been resolved and directing the Escrow Agent to whom to pay the Holding Deposit or the portion thereof then in dispute (collectively, a **"Final Resolution"**). The Escrow Agent shall then pay the Holding Deposit, or applicable portion thereof, within two (2) Business Days following its receipt of the written evidence of a Final Resolution required above in this Section 3(c). The Escrow Agent shall be entitled to rely, exclusively and conclusively, on any representation jointly made by Purchaser and Seller in writing in relation to the release of funds from the Escrow Account or any Final Resolution, and shall release funds from the Escrow Account from time to time as directed in any such joint written instruction from Purchaser and Seller or pursuant to a Final Resolution.

(d) For their part (and as matters with which Escrow Agent need not concern itself), the Parties agree to execute and deliver to Escrow Agent joint written instructions with respect to the disbursement of the Holding Deposit (or the portion thereof theretofore deposited by Purchaser) in accordance with (and as and when required by) the applicable provisions of Sections 1.4(a) of the Asset Purchase Agreement.

4. Termination of Escrow Account and Escrow Agreement. The Escrow Account shall be deemed dissolved and this Escrow Agreement shall terminate upon the written agreement of the parties hereto consistent with the terms of Section 3 above, upon disbursement of all of the funds in the Escrow Account, or upon transfer of all amounts in the Escrow Account then in the possession of the Escrow Agent to the Bankruptcy Court or such other party as the Parties may jointly agree upon in writing, all of which shall be in accordance with the terms of this Escrow Agreement.

5. Escrow Agent.

(a) Concurrently with the mutual execution and delivery of this Escrow Agreement, Purchaser and Seller jointly and severally agree to pay (i) the Escrow Agent's reasonable compensation for its services as Escrow Agent hereunder, as listed on Schedule A annexed hereto, promptly upon request therefor, and (ii) the reimbursement of the Escrow Agent for all reasonable out-of-pocket expenses of or reasonable disbursements incurred by the Escrow Agent in the performance of its duties hereunder, including the reasonable fees, expenses and

3

disbursements of counsel to the Escrow Agent (incurred and invoiced thus far) which shall be due and payable contemporaneously with the Holding Deposit, and from time to time thereafter as incurred and upon written invoice. Escrow Agent's reasonable legal fees are due and payable whether or not the transactions contemplated hereby occur. As between Purchaser and Seller, each shall be responsible for fifty percent (50%) of such Escrow Agent compensation.

(b) The Escrow Agent may retain that portion of the Escrow Account equal to any such unpaid reasonable out-of-pocket costs, expenses and fees incurred by the Escrow Agent as contemplated by Section 5(a) above until such time as such costs, expenses and fees have been paid by the applicable party.

6. Rights, Duties and Immunities of Escrow Agent. Acceptance by the Escrow Agent of its duties under this Escrow Agreement is subject to the following terms and conditions, which all parties to this Escrow Agreement hereby agree shall govern and control the rights, duties and immunities of the Escrow Agent:

(a) The duties and obligations of the Escrow Agent under this Escrow Agreement shall be determined solely by the express provisions of this Escrow Agreement and the Escrow Agent shall not be liable, except for the performance of such duties and obligations as are specifically set out in this Escrow Agreement. No implied duties, covenants or obligations will be read into this Escrow Agreement, and the Escrow Agent shall not be liable for any act done, or omitted to be done, by it in the absence of its own gross negligence or willful misconduct. The Escrow Agent shall not be required to inquire as to the performance or observation of any obligation, term or condition under any agreement or arrangement by Purchaser and Seller. The Escrow Agent is not a party to, and is not bound by, any agreement or other document out of which this Escrow Agreement may arise, nor is Escrow Agent charged with knowledge of the terms of such agreement(s), including, without limit, the Asset Purchase Agreement and the Initial Escrow Agreement. The Escrow Agent shall be under no liability to any Party by reason of any failure on the part of any other Party or any maker, guarantor, endorser or other signatory of any document or any other person to perform such person's obligations under any such document. The Escrow Agent shall not be bound by any waiver, modification, termination or rescission of this Escrow Agreement or any of the terms hereof, unless evidenced by a writing delivered to the Escrow Agent signed by the proper Party or Parties and, if the duties or rights of the Escrow Agent are affected, unless it shall give its prior written consent thereto. This Escrow Agreement shall not be deemed to create a fiduciary relationship between the Parties under state or federal law.

(b) The Escrow Agent shall not be responsible in any manner for the validity or sufficiency of this Escrow Agreement or of any property delivered hereunder, or for the value or collectibility of any note, check or other instrument, if any, so delivered, or for any representations made or obligations assumed by any party other than the Escrow Agent, except in each case as a result of Escrow Agent's own gross negligence, bad faith or willful misconduct.. Nothing herein contained shall be deemed to obligate the Escrow Agent to deliver any cash, instruments, documents or any other property referred to herein, unless the same shall have first been received by the Escrow Agent pursuant to this Escrow Agreement.

4

(c) The Purchaser and Seller hereby jointly and severally agree to indemnify, protect, save and hold the Escrow Agent, its officers, directors, agents and employees (collectively, the **"Indemnitees"**) harmless against, any and all loss, liability, obligation, damage, claim, penalty, tax (excluding any taxes on the Escrow Agent on, or measured by, any compensation received by the Escrow Agent) or expense of any kind or nature whatsoever reasonably arising out of or in connection with the creation, acceptance, operation or administration of this Escrow Agreement, including the reasonable costs and expenses of defending itself against any claim or liability in connection with the exercise or performance of any of its rights, powers or duties hereunder; provided, however, that the Purchaser and Seller will not be required to indemnify, protect, save and hold any Indemnitee harmless from any such claim or liability (or portion thereof) resulting from the gross negligence, bad faith or willful misconduct of any such Indemnitee. Upon the Escrow Agent becoming aware of the occurrence of an event that results in any loss, liability or expense to any Indemnitee, the Escrow Agent will promptly send written notice thereof to the Purchaser and Seller.

(d) The Escrow Agent shall be fully protected in acting on and relying upon any written notice, direction, request, waiver, consent, receipt or other paper or document which the Escrow Agent in good faith believes to have been signed and presented by the proper Party or Parties.

(e) The Escrow Agent shall not be liable for any error of judgment, or for any act done or step taken or omitted by it in good faith or for any mistake in fact or law, or for anything which it may do or refrain from doing in connection herewith, except as a result of its own gross negligence, bad faith or willful misconduct.

(f) The Escrow Agent may seek the advice of legal counsel in the event of any dispute or question as to (i) the construction of any of the provisions of this Escrow Agreement or (ii) its duties hereunder, and it shall incur no liability and shall be fully protected in respect of any action taken, omitted or suffered by it in good faith in accordance with the written advice or opinion of such counsel. The Parties hereto agree to pay the reasonable fees of legal counsel incurred by the Escrow Agent pursuant to this section.

(g) The parties hereto agree that should any dispute arise with respect to the payment, ownership or right of possession of the Escrow Account, the Escrow Agent is authorized and directed to retain in its possession, without liability to anyone, except for its bad faith, willful misconduct or gross negligence, all or any part of the Escrow Account until such dispute shall have been settled either by mutual written agreement by the parties concerned or by the final order, decree or judgment of the Bankruptcy Court and a notice executed by the parties to the dispute or their authorized representatives shall have been delivered to the Escrow Agent setting forth the resolution of the dispute, which notice Purchaser and Seller hereby agree to so execute and deliver to the Escrow Agent in the event that such an order, decree or judgment is obtained from or issued by the Bankruptcy Court.

(h) No provision of this Escrow Agreement will require the Escrow Agent to expend or risk funds or otherwise incur any financial liability in the performance of any of its rights or powers hereunder, if the Escrow Agent has reasonable grounds for believing that

repayment of such funds or adequate indemnity against such risk or liability is not reasonably assured or provided to it.

(i) The Escrow Agent will incur no liability if, by reason of any provision of any present or future law or regulation thereunder, or by any force majeure event, including natural disaster, war or other circumstances beyond its reasonable control, the Escrow Agent will be prevented or forbidden from doing or performing any act or thing which the terms of this Escrow Agreement provide will or may be done or performed, or by reason of any exercise of, or failure to exercise, any discretion provided for in this Escrow Agreement.

(j) Whenever the Escrow Agent is unable to decide between alternative courses of action permitted or required by the terms of this Escrow Agreement, or is unsure as to the application, intent, interpretation or meaning of any provision of this Escrow Agreement, the Escrow Agent will promptly give written notice (in such form as will be appropriate under the circumstances) to the Purchaser and the Seller requesting instruction as to the course of action to be adopted, and, to the extent the Escrow Agent acts in good faith in accordance with any such joint instruction received, the Escrow Agent will not be liable on account of such action to any person.

(k) The agreements set forth in this Section 6 shall survive the resignation or removal of the Escrow Agent, the termination of this Escrow Agreement and the payment of all amounts hereunder.

7. <u>Resignation of Escrow Agent</u>. The Escrow Agent shall have the right to resign upon thirty (30) calendar days' written notice to Seller and Purchaser. In the event of such resignation, Seller and Purchaser shall appoint a mutually acceptable successor escrow agent hereunder by delivering to the Escrow Agent a written notice of such appointment. Upon receipt of such notice, the Escrow Agent shall deliver to the designated successor escrow agent all money and other property held hereunder and shall thereupon be released and discharged from any and all further responsibilities whatsoever under this Escrow Agreement; provided, however, that the Escrow Agent shall not be deprived of its compensation earned prior to such time.

If no successor escrow agent shall have been designated by the date specified in the Escrow Agent's notice, all obligations of the Escrow Agent hereunder shall nevertheless cease and terminate. Its sole responsibility thereafter shall be to keep safe all property then held by it and to deliver the same to a person designated by the Purchaser and Seller or in accordance with the direction of a final order or judgment of the Bankruptcy Court.

8. <u>Notices</u>. All claims, notices, consents, objections and other communications under this Escrow Agreement shall be in writing and shall, except as otherwise provided herein, be deemed to have been duly given when (i) delivered by hand, (ii) sent by facsimile (with receipt confirmed), or (iii) when received by the addressee, if sent by Express Mail, Federal Express or other reputable overnight delivery service, in each case, at the appropriate addresses and facsimile numbers as set forth below:

ESCROW AGENT:

Wilmington Trust Company
Rodney Square North
1100 North Market Street
Wilmington, DE 19890-1625
Attention: David B Young,
         Assistant Vice President
Facsimile: (302) 636-4149

With a copy to:

Moritt Hock Hamroff & Horowitz LLP
400 Garden City Plaza,
Garden City, New York 11530
Attention: Leslie Berkoff, Esq.
Facsimile: (516) 873-2010

**PURCHASER:**

_____
_____
_____
Attn: _____
Facsimile: (\_\_\_) \_\_\_-\_\_\_\_

With a copy to:

Wachtel & Masyr, LLP
110 East 59th Street
New York, NY 10022
Attention: Morris Missry, Esq.
Facsimile: (212) 909-9448

and:

King & Spalding
1185 Avenue of the Americas
New York, NY 10036-4003
Attention: Arthur J Steinberg, Esq.
Facsimile: (212) 556-2222

**SELLER:**

_____
_____
_____

                                        Attn: _____
                                        Facsimile: (___) ___-___

With a copy to:       Pachulski, StangZiehl & Jones LLP
                                150 California Street, 15th Floor
                                San Francisco, CA 94111
                                Attn: David M. Bertenthal, Esq.
                                Facsimile: (415) 263-7010

(or to such other addresses and facsimile numbers as a party may designate as to itself by notice to the other parties). Notwithstanding any of the foregoing, any computation of a time period which is to begin after receipt of a notice by the Escrow Agent shall run from the date of receipt by it.

9. <u>Successors</u>. This Escrow Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns, provided that this Escrow Agreement may not be assigned by any party without the prior written consent of the other parties, which consent shall not be unreasonably withheld.

10. <u>Severability</u>. If any portion or provision of this Escrow Agreement shall to any extent be declared illegal or unenforceable by a court of competent jurisdiction, then the application of such portion or provision in circumstances other than those as to which it is so declared illegal or unenforceable, shall not be affected thereby, and each portion and provision of this Escrow Agreement shall be construed by modifying or limiting it so as to be valid and enforceable to the maximum extent compatible with, and possible under, applicable law. The provisions hereof are severable, and in the event any provision hereof should be held invalid or unenforceable in any respect, it shall not invalidate, render unenforceable or otherwise affect any other provision hereof.

11. <u>Amendments</u>. This Escrow Agreement may be amended or modified at any time or from time to time in writing executed by the parties to this Escrow Agreement.

12. <u>Governing Law</u>. This Escrow Agreement shall be construed and interpreted, and the rights of the parties shall be determined, in accordance with the substantive laws of the State of Delaware, without regard to the conflict of law principles thereof or of any other jurisdiction.

13. JURISDICTION. TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, FOLLOWING SELLER'S FILING OF THE CASE AND SO LONG AS THE BANKRUPTCY COURT RETAINS JURISDICTION, THE BANKRUPTCY COURT SHALL HAVE EXCLUSIVE JURISDICTION TO RESOLVE ANY AND ALL DISPUTES ARISING UNDER THIS ESCROW AGREEMENT AND EACH OF THE PARTIES HERETO HEREBY EXPRESSLY CONSENTS TO SUCH EXCLUSIVE JURISDICTION.

14. <u>Waiver</u>. No waiver of any provision hereof shall be effective unless made in writing and signed by the waiving party. The failure of any party to require the performance of any term

or obligation of this Escrow Agreement, or the waiver by any party of any breach of this Escrow Agreement, shall not prevent any subsequent enforcement of such term or obligation or be deemed a waiver of any subsequent breach.

15. <u>Headings</u>. The headings and captions in this Escrow Agreement are for convenience of reference only and shall not in any way affect the meaning or interpretation of this Escrow Agreement.

16. <u>Counterparts</u>. This Escrow Agreement may be executed in any number of counterparts and by each of the parties hereto in separate counterparts, each of which when so executed shall be deemed to be an original and all of which together shall constitute one and the same agreement. The parties agree that this Escrow Agreement will be considered signed when the signature of a party is delivered by facsimile or electronic mail transmission. Such facsimile or electronic mail signature shall be treated in all respects as having the same effect as an original signature.

17. <u>Business Days</u>. For purposes of this Escrow Agreement, the term "Business Day" shall mean any day that is not a Saturday, Sunday or other day on which commercial banks in the City of New York are required or authorized by law to be closed.

IN WITNESS WHEREOF, the undersigned have executed this Escrow Agreement as of the date first written above.

**SELLER:**

FILIENE'S BASEMENT, a Delaware corporation

By:_____
Name: _____
Its: _____

[FB Subsidiary]

By:_____
Name: _____
Its: _____

**PURCHASER:**

_____, a
Delaware limited liability company

By:_____
Name: _____
Its: _____

**ESCROW AGENT:**

Wilmington Trust Company, a Delaware Banking corporation

By: _____
Name: _____
Title: _____ and Authorized Signatory

# SCHEDULE OF FEES

To act as an
Escrow Agent

**Annual Administration Fee**                            $[_____]

Covers acceptance of appointment as Escrow Agent including complete study of drafts of Escrow Agreement and all supporting documents in connection therewith, conferences until the final Escrow Agreement is agreed upon, execution of final Agreement and administrative duties in connection with the security provisions of the Escrow Agreement. Does not include reasonable out of pocket expenses, including outside counsel's reasonable fees and expenses in connection with the execution of this Escrow Agreement, which will be billed separately. Details with respect to such outside counsel's reasonable fees and expenses are coordinated separately with such counsel.

**Wire Transfer of Funds**                               $25 out going
                                                         $10 incoming

**NOTE**:

Charges for any services not specifically covered in this schedule will be billed commensurate with the services rendered. This schedule reflects charges that are now in effect for our normal and regular services and are subject to modification where unusual conditions or requirements prevail, and does not include reasonable, out of pocket counsel fees or expenses and disbursements, which will be billed at cost.

[Remainder of Page Intentionally Left Blank]