IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FILENE'S BASEMENT, INC., et al., [1] | ) | Case No. 09-11525 (MFW) |
| | ) | |
| Debtors. | ) | |

## MOTION OF THE DEBTORS
### FOR AN ORDER (A) APPROVING SALE PROCEDURES RELATING TO SALE OF ASSETS NOT INCLUDED IN THE SALE TO CROWN FB ACQUISITION LLC, (B) APPROVING SALE OF ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS PURSUANT TO 11 U.S.C. § 363(b), (f), AND (m), (C) APPROVING PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES, (D) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES PURSUANT TO 11 U.S.C. § 365, AND (e) GRANTING RELATED RELIEF

The captioned debtors and debtors in possession (the "Debtors") hereby move this

Court for (a) entry of an order approving sale procedures relating to the sale of assets not

included in the Crown Sale (as defined below) and the assumption and assignment of executory

contracts and unexpired leases, (b) entry of a separate order approving sale of the Purchased

Assets (as defined below) and assumption and assignment of the Assumed Agreements (defined

below) free and clear of all liens, claims, encumbrances, and other interests pursuant to 11

U.S.C. § 363(b), (f), and (m) and 11 U.S.C. § 365, and (c) and granting related relief (the

"Motion"). The Sale Procedures (as defined below) requested herein are without prejudice to the

right of any Bidder to participate in the Crown Sale (as defined below) and to bid for any or all

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Filene's Basement, Inc. (8237); FB Services LLC (7224); and FB Leasing Services LLC (7228). The address for all Debtors is 25 Corporate Drive, Burlington, MA 01803.

of the Crown Assets (as defined below), provided that bidding for the Crown Assets will be governed by bid procedures as fixed by the Court in connection with the Crown Sale. Moreover, the Sale Procedures are without prejudice to the Debtors' right to seek approval of the engagement of one or more retail inventory liquidation professionals prior to or in connection with the Sale Procedures and Sale Hearing. In support of this Motion, the Debtors respectfully state as follows:

## Jurisdiction

1.     The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This proceeding is a core proceeding within the meaning of 28 U.S.C. §§ 157(b)(2).

2.     Venue of this proceeding and this Motion is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

3.     The statutory predicates for the relief sought herein are sections 105, 363, and 365 of chapter 11 of title 11, United States Code (the "Bankruptcy Code"), Rules 2002(a)(2), 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2002-1(b) and 9006-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

## Summary of Relief Requested

4.     By this Motion, the Debtors seek relief in two parts. First, the Debtors seek approval, by entry of an order substantially in the form submitted herewith (the "Procedures Order"), of (a) sale procedures attached to this Motion as Exhibit A (the "Sale Procedures"), including the scheduling of a sale hearing (the "Sale Hearing"), for the sale by the Debtors to one or more buyers of any or all of all the Debtors' commercial real property leases not associated

2

with the Crown Sale; all inventory wherever located; all furniture, fixtures, and equipment (the "FF&E") other than the FF&E associated with the Crown Sale; and all executory contracts other than personal services contracts and those to be assumed and assigned in connection with the Crown Sale (the "Purchased Assets," as described more particularly on Exhibit B hereto) and (b) the approval of procedures with respect to the assumption and assignment of executory contracts and unexpired leases that are assumed and assigned in connection with the sale of the Purchased Assets (the "Assumed Agreements"). Second and after the completion of the auction (the "Auction") contemplated by the Sale Procedures, the Debtors seek approval, by entry of an order substantially in the form submitted herewith (the "Sale Order"), of the proposed sale of any or all of the Purchased Assets, free and clear of liens, claims, and encumbrances and in accordance with Section 363 of the Bankruptcy Code and assumption and assignment of the Assumed Agreements pursuant to an Asset Purchase Agreement (the "APA") substantially in the form attached to this Motion as Exhibit C to be entered into by and between the Debtors and the successful bidder or successful bidders following the Auction of the Purchased Assets (the "Successful Bidder"). Identification of the Successful Bidder may include engagement of one or more retail inventory liquidation professionals prior to or in connection with the Sale Procedures and Sale Hearing.

5.        By this Motion, in order to maximize the value of the Purchased Assets, the Debtors seek to establish procedures for the submission of qualified bids for the Purchased Assets and the Assumed Agreements and to hold the Auction for the Purchased Assets and Assumed Agreements.

3

6.      Following the conclusion of the Auction for the Purchased Assets and Assumed Agreements, the Debtors intend to proceed to the hearing on the proposed sale of the Purchased Assets and assumption and assignment of the Assumed Agreements (the "Sale"), including without limitation approval of the engagement of one or more retail inventory liquidation professionals prior to or in connection with the Sale Procedures and Sale Hearing. with the highest and best offer received as a result of the Auction.

7.      By this Motion the Debtors also request that the Court schedule the Sale Hearing.

## General Background

8.      On May 4, 2009 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under the Bankruptcy Code. The Debtors are continuing in possession of their property and are managing their business as debtors in possession, pursuant to sections 1107 and 1108 of the Bankruptcy Code.

9.      No trustee or examiner has been appointed in these chapter 11 cases (the "Chapter 11 Cases").

10.     The factual background relating to the Debtors' commencement of the Chapter 11 Cases is set forth in detail in the *Declaration of Mark Shulman, President of Filene's Basement, Inc., in Support of First Day Motions* (the "Shulman Declaration") filed on the Petition Date and incorporated herein by reference.

11.     The Debtors operate a value-price fashion retailer carrying men's and women's apparel, accessories, jewelry, shoes, and home fashions, with fine jewelry, shoes, and cosmetics operating as leased departments. The Debtors' stores—which are located primarily in

4

major metropolitan areas of the Eastern and Midwestern United States—have traditionally operated to provide the best selection of stylish, high-end designer, and famous-brand-name merchandise at affordable prices. The Debtors' stores have a selection of upscale designer and better-branded merchandise, including couture items imported directly from the fashion capitals of Europe.

12.     The Debtors' main corporate operations are conducted out of their leased headquarters in Burlington, Massachusetts, with financial operations conducted in Columbus, Ohio. The Debtors currently operate 25 stores, which are located primarily in the metropolitan markets of Boston, New York, Baltimore/Washington, Chicago, Atlanta, Cleveland, Columbus, and Miami. The Debtors also operate a leased 457,000 sq. ft. distribution center in Auburn, Massachusetts. In addition, while the Debtors operate a web site (www.filenesbasement.com), they do not presently sell any merchandise via that site.

13.     The Debtors currently employ approximately 1,900 full and part-time U.S. employees in hourly, salaried, supervisory, management, sales, retail, and administrative positions to perform the functions necessary to effectively and efficiently operate the Debtors' business.

14.     Commencing in March of 2009, Filene's Basement Inc.'s then sole shareholder, Retail Ventures, Inc. ("RVI"), with the assistance of its advisor, Houlihan Lokey Howard & Zukin Capital, Inc. ("Houlihan"), sought to identify a possible purchaser for the Debtors' assets. Commencing on or about March 19, 2009, Houlihan contacted approximately thirteen potential strategic and financial buyers through telephone calls, emails and/or other correspondence. The Debtors are also informed and believe that the list of potential buyers was

5

compiled by Houlihan using Houlihan's internal database and based on discussions with the Debtors and RVI.

15. Of the approximately thirteen parties contacted by Houlihan, six parties signed and returned confidentiality agreements and were provided varying levels of additional information, including a detailed confidential information memorandum. Of the six parties that signed and returned confidentiality agreements, one party expressed definite interest and engaged in more extensive due diligence. In addition, one additional party also learned of the availability of the Debtors' assets and expressed interest.

16. The Debtors' advisors worked with each of these interested parties and, as a result, at the conclusion of the initial effort, the Debtors had two competing bids for various groups of the Debtors' assets (the "Competing Bids"). During the approximately two weeks immediately prior to the Petition Date, the Debtors and their advisors worked with the potential purchasers to develop the Competing Bids.

17. An informal committee of certain unsecured creditors (the "Ad Hoc Committee") formed and was briefed by the Debtors and their professionals on the sale process to date and the terms of the Competing Bids.

18. With the advice and assistance of their advisors, and after reviewing and negotiating with the potential purchasers, the Debtors determined in late April 2009 that a combination of the proposed acquisition of certain assets by Crown FB Acquisition LLC ("Crown") while continuing to examine other avenues of disposing of the Debtors' remaining assets were the best options for the Debtors in order to maximize the value of their assets and business.

6

19. On May 1, 2009, after extensive negotiations, the Debtors entered into an Asset Purchase Agreement (the "Crown APA") with Crown for the sale and purchase of the assets described therein (the "Crown Assets"). Pursuant to the terms of the Crown APA, the Debtors, subject to an auction and sale process, intend to sell the Crown Assets to Crown (or a designated affiliate) and in connection therewith, assign to Crown certain leases, with such sale to be free and clear of all liens, claims and encumbrances pursuant to Bankruptcy Code section 363(f). In addition to the instant Motion, on or about the Petition Date, the Debtors filed separate motions seeking approval of sale procedures related to the Crown Assets and approval of the sale of the Crown assets.

20. During the same time that the Debtors were negotiating the Competing Bids with the potential purchasers, the Debtors continued in their marketing efforts for their remaining assets and will continue in these efforts postpetition. Specifically, prepetition, Abacus Advisors, Inc. ("Abacus"), the firm assisting the Debtors' Chief Restructuring Officer (the "CRO"), has expanded on Houlihan's marketing efforts and will coordinate the marketing effort for the Debtors postpetition. (The Debtors' proposed retention of the CRO is the subject of a separate application to this Court.) Immediately prior to the Petition Date, Abacus distributed a cover memo to two specifically targeted groups using contact information they have from their experience in the retail industry—strategic retailers and financial buyers—in an effort to solicit interest in a possible sale of the Debtors' assets. Parties who expressed an interest were asked to sign and return a confidentiality agreement.

21. The Debtors have also planned a postpetition solicitation that will include mailings to retail landlords, liquidation firms, and an assortment of retail companies who have

7

historically expressed interest in similar sales. Specifically, and pursuant to the proposed Interim Order and Proposed Final Order (1) Authorizing Use of Cash Collateral, (2) Granting Adequate Protection, (3) Modifying the Automatic Stay, and (4) Scheduling a Final Hearing (the "Cash Collateral Stipulation"), the Debtors have undertaken to circulate initial bid packages not later than May 8, 2009. The CRO and Abacus also solicited input from the Ad Hoc Committee in putting together the mailing list for these solicitations. In addition, the Debtors, with Abacus' assistance, have also established a data room that will be made available to interested parties who return signed confidentiality agreements for the purpose of conducting due diligence.

22. Between the prepetition marketing efforts and, with Abacus' assistance, the postpetition marketing of the Debtors' assets, the Debtors believe that the Crown Assets and the Purchased Assets will be adequately marketed so as to maximize value for the Debtors' estates and their creditors.

23. As a result of these conditions, and to help ensure that day to day operations will continue and that an orderly process with respect to the sale of the Purchased Assets and the Crown Assets will be implemented, the Debtors determined that it was in the best interest of the Debtors, their estate, and their creditors to commence the Chapter 11 Cases. The Debtors commenced these Chapter 11 Cases to avail themselves of the provisions of the Bankruptcy Code and preserve the status quo while seeking a sale of their assets to one or more buyers, including the Crown Sale and the sale of the Purchased Assets, described above, in the context of the Chapter 11 Cases. The Debtors intend to use the Chapter 11 process to conduct an orderly disposition of their assets in an effort to maximize the value of their businesses and assets for the benefit of all creditors and other stakeholders.

8

## Relief Requested

24.     Pursuant to this Motion, the Debtors request that this Court: (a) approve the Sale Procedures summarized below as more particularly set forth on Exhibit A to this Motion in connection with the proposed Sale of the Purchased Assets; (b) approve procedures with respect to the assumption and assignment of the Assumed Agreements; (c) schedule the Sale Hearing; and (d) following conclusion of the Auction, approve the Sale Order and authorize the sale of the Purchased Assets and the assumption and assignment of the Assumed Agreements to the Successful Bidder free and clear of liens, claims, and encumbrances.  The Sale Procedures requested herein are without prejudice to the right of any Bidder to participate in the Crown Sale and to bid for any or all of the Crown Assets, provided that bidding for the Crown Assets will be governed by bid procedures as fixed by the Court in connection with the Crown Sale.  Moreover, the Sale Procedures are without prejudice to the Debtors' right to seek approval of the engagement of one or more retail inventory liquidation professionals prior to or in connection with the Sale Procedures and Sale Hearing.

## Summary of Sale Procedures[2]

25.     Qualified Bids:  **A Qualified Bidder under the Sale Procedures is a Potential Bidder who has entered into a confidentiality agreement in a form acceptable to the Debtors and whose most current audited and latest unaudited financial statements or other information provided to the Debtors demonstrate, in the Debtors' sole discretion, the financial capability to consummate a sale transaction.**

---

[2] The following paragraphs summarize certain provisions of the Sale Procedures attached as Exhibit A, reference to which Exhibit A should be made for the full text of the Sale Procedures.

26.     Due Diligence Access: Access to the electronic data room established by the Debtors with respect to the Purchased Assets will be provided to a prospective purchaser after it has entered into a confidentiality agreement with the Debtors.

27.     Bid Deadline: **All bids for the Purchased Assets (each a "Bid") must be submitted in writing by no later than 4:00 p.m. prevailing Eastern Time on that date that is three business days prior to the Sale Hearing** (the "Bid Deadline") to:

a.      Debtors' proposed counsel – Pachulski Stang Ziehl & Jones LLP, Attn: Laura Davis Jones, Esq., 919 North Market Street, 17th Floor, P.O. Box 8705, Wilmington, Delaware 19899-8705 (Courier 19801), facsimile number (302) 652-4400;

b.      The Debtors – c/o Abacus Advisors, Attn: Alan Cohen, 10 Reuten Drive, Closter, NJ 07624;

c.      Counsel for the Debtors' secured lenders – Riemer & Braunstein LLP, Attn: Donald E. Rothman, Esq., and Jaime R. Koff, Esq., Three Center Plaza, Boston, MA 02108, facsimile number (617) 880-3456; and

d.      Counsel for any Official Committee of Unsecured Creditors.

28.     Bid Requirements: **Each Bid (a) must be in writing; (b) must provide that the Bidder can and will close the Sale transaction by no later than June 19, 2009 (unless said date is extended by the Debtors); (c) shall include a deposit (the "Deposit") in the amount of the greater of 10% of the purchase price bid or $25,000, in immediately available funds;** [3] **(d) shall include the Bidder's proposed sale agreement, with a blacklined**

---

[3] Notwithstanding this deposit requirement, the Debtors reserve the right in their sole discretion to consider an alternative deposit.

copy showing proposed changes from the APA; (e) if for less than all of the Purchased Assets, shall designate the Purchased Assets for which the Bid is made; (f) shall identify those executory contracts and unexpired leases of the Debtors that the Bidder wishes to have assumed by the Debtors and assigned to it and those liabilities that the Bidder intends to elect to have assumed and assigned to it; executory contracts and unexpired leases identified by the Bidder may be removed from the list by mutual consent of the Debtors and the Bidder; (g) unless the Debtors in their discretion otherwise agree—cannot be conditioned on the outcome of any unperformed diligence or receipt of board, shareholder, or other corporate approval, cannot contain a financing contingency, and cannot require any break-up fee, expense reimbursement, or bid protection of any kind for the Bidder; (h) shall establish, to the Debtors' satisfaction, the Bidder's financial ability to consummate the proposed transaction and the Bidder's financial ability to provide "adequate assurance of future performance" within the meaning of 11 U.S.C. § 365(f)(2)(B) of any executory contracts and unexpired leases to be assumed and assigned to such Bidder, should the bidder be a Successful Bidder; and (i) shall be irrevocable through the closing of the Sale. Only those Bids that comply with these procedures, as determined by the Debtors in their sole discretion, will be entitled to bid at the Auction.

29.     As Is, Where Is: The sale of the Purchased Assets shall be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Debtors, their agents, or their estates except to the extent set forth in the APA. Each Qualified Bidder shall be deemed to acknowledge and represent that each has had an opportunity to conduct any and all due diligence regarding the Purchased Assets prior to making its offer,

11

that it has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Purchased Assets and Assumed Agreements in making its Bid, and that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Purchased Assets or Assumed Agreements, or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in the Bid Procedures or the terms of the sale of the Purchased Assets that shall be set forth in the final APA.

## **Auction**

30.     The Auction will be held two business days prior to the Sale Hearing at 10:00 a.m., prevailing Eastern time at the offices of Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, P.O. Box 8705, Wilmington, DE 19899-8705.  At the Auction, the minimum starting Bid shall be the amount that is the highest Bid submitted or such amount that the Debtors will determine in their discretion.  Each subsequent overbid shall be in the amount that is greater than the previous highest Bid, in an amount or percentage to be determined by the Debtors in their discretion.  The Debtors reserve the right to reject any Bid and to declare at the conclusion of the Auction that no acceptable bids were submitted.

31.     At the conclusion of the Auction, the Debtors will announce their determination as to the highest or otherwise best bid(s) for all or any portion of the Purchased Assets by the bidder(s) who will become the "Successful Bidder(s)"; provided, however, that the Debtors may in their discretion, determine which bid or combination of bids, if any, in the aggregate constitute the highest or otherwise best offer at the Auction and, thus, the Successful Bid(s).  Formal acceptance of a winning bid, if any, will not occur unless and until the

12

Bankruptcy Court enters an order approving the winning bid and authorizing the Debtors to consummate the Sale following the conclusion of the Sale Hearing. The winning bid may result in the Debtors seeking approval of the engagement of one or more retail inventory liquidation professionals prior to or in connection with the Sale Procedures and Sale Hearing.

32.     The Deposit of a Successful Bidder shall be held until the closing of the Sale and shall be applied in accordance with the Successful Bid. If the closing of the Sale with the Successful Bidder is completed, the Deposit of the next highest bidder designated by the Debtors (the "Next Highest Bidder") shall be returned upon or within one business day after closing of the Sale to the Successful Bidder. **If the closing of the Sale with the Successful Bidder is not completed, the Debtors in the exercise of their discretion may proceed to closing with the Next Highest Bidder,** and the Deposit of the Next Highest Bidder shall be held until the closing of the Sale with the Next Highest Bidder and applied against the purchase price in accordance with the Next Highest Bidder's bid.[4]

### Disclosures Under Local Rule 6004-1 with Respect to Bid Procedures

33.     In accordance with Local Rule 6004-1(c), the Debtors have highlighted by placing in bold type certain of the above provisions, including those provisions involving the qualification of bidders, those provisions governing the determination of qualified bids, and those provisions authorizing the Debtors to close with an alternative qualified bidder.

---

[4] If the Debtors determine that a combination of bids in the aggregate constitute the highest or otherwise best offer at the Auction, then the deposits of the Next Highest Bidder(s) whose bids in the aggregate constitute the next highest bid designated by the Debtors shall be held and applied or released as set forth above in this paragraph.

13

## Notice of Auction and Sale Hearing; Cure Notice

34.     The Debtors will provide notice of the Auction and the Sale Hearing by serving the notice (the "Sale Notice"), substantially in the form of Exhibit D to this Motion, on (a) the U.S. Trustee; (b) counsel to the official committee of unsecured creditors (the "Committee") or prior to the appointment of any Committee, the Debtors' twenty-five largest unsecured creditors (on a consolidated basis); (c) all parties known to be asserting a lien on any of the Debtors' assets; (d) all entities known to have expressed an interest in acquiring any of the Crown Assets or the Purchased Assets; (e) the United States Attorney's office; (f) all state attorneys general in states in which the Debtors do business; (g) various federal and state agencies and authorities asserting jurisdiction over the Crown Assets or the Purchased Assets, including the Internal Revenue Service; (h) counsel for Crown; (i) all of the Debtors' creditors; and (j) all other parties that have filed a notice of appearance and demand for service of papers in the Debtors' chapter 11 cases under Bankruptcy Rule 2002 as of the date of filing the Sale Notice. The Debtors request that the Court approve the form and manner of Sale Notice.

35.     The Debtors will provide notice to parties holding executory contracts or unexpired leases with the Debtors that may be assumed and assigned in conjunction with the proposed Sale, in substantially the form attached to hereto as Exhibit E (the "Cure Notice") no later than five days after entry of the Procedures Order. The Cure Notice will state the date, time, and place of the Sale Hearing as well as the date by which any objection to the assumption and assignment of the Assumed Agreements must be filed and served. The Cure Notice will provide for the ability of the counterparties to request copies of the Sale and Procedures Motion and/or the Procedures Order. The Cure Notice also will identify the amounts, if any, that the

14

Debtors believe are owed to each counterparty to a Assumed Agreement in order to cure any defaults that exist under such contract (the "Cure Costs"). If a contract or lease is assumed and assigned pursuant to the Bankruptcy Court's order approving same, then unless the affected counterparty properly files and serves an objection to the Cure Costs contained in the Cure Notice, the counterparty will receive at the time of the Closing (or as soon as reasonably practicable thereafter), the Cure Costs as set forth in the Cure Notice, with payment made pursuant to the terms of the agreement of the Successful Bidder(s). If an objection is filed by a counterparty to a Assumed Agreement, the Debtors propose that such objection must set forth a specific default in any executory contract or unexpired lease and claim a specific monetary amount that differs from the amount (if any) specified by the Debtors in the Cure Notice or, alternatively, state why the counterparty believes any Cure Costs are owing. The Debtors request that the Court approve the form and manner of the Cure Notice.

36. At any time, in their sole discretion, the Debtors may elect not to proceed with the Auction or the Sale, without liability to any bidder, including but not limited to a situation where the Debtors seek approval of the engagement of one or more retail inventory liquidation professionals prior to or in connection with the Sale Procedures and Sale Hearing.

## Sale Hearing[5]

37. At the Sale Hearing, the Debtors will seek Court approval of the Sale of the Purchased Assets and assumption and assignment of the Assumed Agreements to the Successful Bidder, free and clear of all liens, claims and encumbrances pursuant to 11 U.S.C.

---

[5] As noted above, the Debtors intend to seek approval of the Sale of the Crown Assets free and clear of liens, claims and encumbrances, by a separate Sale motion.

28189-001\DOCS_DE:147743.3

§§ 363 and 365, with all liens, claims and encumbrances to attach to the proceeds of the Sale with the same validity and in the same order of priority as they attached to the Purchased Assets. The Debtors submit, and will present additional evidence as necessary at the Sale Hearing, that the proposed sale is fair, reasonable, and in the best interest of their estates. The Debtors further request that the Bankruptcy Court waive the ten-day stay that may otherwise be applicable under Rules 6004(h) and 6006(d) of the Bankruptcy Rules so that the Sale Order and the assumption and assignment of the Assumed Agreements is effective immediately upon entry.

38.     The Debtors by this Motion request that the Court schedule the Sale Hearing not later than June 15, 2009. The Debtors propose that objections, if any, to the sale be filed on or before 4:00 p.m. the date that is five business days prior to the scheduled Sale Hearing.

39.     Moreover, pursuant to the Cash Collateral Stipulation, with respect to any Sale Order, (i) a closing shall be consummated on or before one (1) business day following the entry by the Court of the Sale Order, (ii) shall be for cash consideration resulting in net proceeds (after payment of all professional fees, other transaction costs and the Carve Out) in an amount in excess of the Prepetition Obligations, and (iii) the cash consideration payable upon the closing of such sale shall be paid directly to the Prepetition Agent for application (x) in satisfaction of the Prepetition Obligations in full in cash, and (y) to fund the Prepetition Indemnity Account.

## Closing

40.     The closing shall take place as soon as practicable after entry of the Sale Order, but no later than June 19, 2009. The closing date may be extended by mutual agreement of the parties.

16

## Approval of the Sale Procedures and the Sale

41.    Section 363(b)(1) of the Bankruptcy Code provides that a debtor, "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Section 105(a) provides in relevant part that "[t]he Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

42.    A sale of the Debtors' assets should be authorized pursuant to section 363 of the Bankruptcy Code if a sound business exists for doing so. *See, e.g., In re Martin*, 91 F.3d 389, 395 (3d Cir. 1996), citing *Fulton State Bank v. Schipper (In re Schipper)*, 933 F.2d 513, 515 (7th Cir. 1991); *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143 (3d Cir. 1986); *Stephens Indus., Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986); *In re Lionel Corp.*, 722 F.2d 1063 (2d Cir. 1983); *In re Titusville Country Club*, 128 B.R. 396 (W.D. Pa. 1991); *In re Delaware & Hudson Railway Co.*, 124 B.R. 169, 176 (D. Del. 1991). The *Delaware & Hudson Railway* court rejected the pre-Code "emergency" or "compelling circumstances" standard, finding the "sound business purpose" standard applicable and, discussing the requirements of that test under *McClung* and *Lionel*, observed:

> A non-exhaustive list of factors to consider in determining if there is a sound business purpose for the sale include: the proportionate value of the asset to the estate as a whole; the amount of elapsed time since the filing; the likelihood that a plan of reorganization will be proposed and confirmed in the near future; the effect of the proposed disposition of the future plan of reorganization; the amount of proceeds to be obtained from the sale versus appraised values of the property; and whether the asset is decreasing or increasing in value. 124 B.R. at 176.

43.    The *Delaware & Hudson Railway* court further held that "[o]nce a court is satisfied that there is a sound business reason or an emergency justifying the pre-confirmation

17

sale, the court must also determine that the trustee has provided the interested parties with adequate and reasonable notice, that the sale price is fair and reasonable and that the purchaser is proceeding in good faith." *Id.*

44.     The Debtors have articulated sound business reasons for a sale of the Purchased Assets. The Debtors, upon the exercise of their business judgment, submit that the immediate sale of the Purchased Assets will maximize value to their estates. Accordingly, the sale of the Purchased Assets by auction, as proposed herein, offers the best possibility of maximizing value for the estate. Furthermore, the Purchased Assets have been thoroughly marketed before the Petition Date, which process will continue after the Petition Date, to all entities likely to have an interest in their acquisition.

## A.      Request to Sell the Purchased Assets
## Free and Clear of Liens, Claims, and Encumbrances

45.     It is appropriate that the Purchased Assets be sold free and clear of liens, claims, encumbrances, and interests pursuant to 11 U.S.C. 363(f) of the Bankruptcy Code, with the exception of any liabilities assumed by the Debtors and assigned to the successful buyer of the Purchased Assets. Section 363(f) provides:

> The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if—
>
>> (1) applicable non-bankruptcy law permits sale of such property free and clear of such interest;
>> (2) such entity consents;
>> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of        all such liens on such property;
>> (4) such interest is in bona fide dispute; or
>> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

    46.    A court may also authorize the sale of a debtor's assets free and clear of any liens, claims, or encumbrances under section 105 of the Bankruptcy Code. *See In re Trans World Airlines, Inc.*, 322 F.3d 283 (3d Cir. 2003); *see also Volvo White Truck Corp. v. Chambersburg Beverage, Inc. (In re White Motor Credit Corp.)*, 75 B.R. 944, 948 (Bankr. N.D. Ohio 1987) ("Authority to conduct such sales [free and clear of liens] is within the court's equitable powers when necessary to carry out the provisions of [the Bankruptcy Code].").

    47.    The term "any interest," as used in section 363(f), is not defined anywhere in the Bankruptcy Code. *Folger Adam Security v. DeMatteis/MacGregor, JV*, 209 F.3d 252, 259 (3d Cir. 2000). In *Folger Adam*, the Third Circuit specifically addressed the scope of the term "any interest." 209 F.3d at 258. The Third Circuit observed that while some courts have "narrowly interpreted that phrase to mean only in rem interests in property," the trend in modern cases is toward "a broader interpretation which includes other obligations that may flow from ownership of the property." *Id.* at 258, citing 3 COLLIER ON BANKRUPTCY 363.06[1]. As determined by the Fourth Circuit in *In re Leckie Smokeless Coal Co.*, 99 F.3d 573, 581-582 (4th Cir. 1996), a case cited approvingly and extensively by the Third Circuit in *Folger Adam*, the scope of 11 U.S.C. § 363(f) is not limited to in rem interests. Thus, the Third Circuit in *Folger Adam* stated that *Leckie* held that the debtors "could sell their assets under § 363(f) free and clear of successor liability that otherwise would have arisen under federal statute.*" Folger Adam*, 209 F.3d at 258.

    48.    Section 363(f) is drafted in the disjunctive. Thus, satisfaction of any of the requirements enumerated therein will suffice to warrant the Debtors' sale of the Purchased

19

Assets free and clear of all interests (i.e., all liens, claims, rights, interests or encumbrances), except with respect to any interests that may be assumed liabilities under the applicable purchase agreement. *See Citicorp Homeowners Services, Inc. v. Elliot*, 94 B.R. 343, 345 (E.D. Pa. 1988). The Debtors submit that each interest that will not be an assumed liability satisfies at least one of the five conditions of section 363(f) of the Bankruptcy Code, and that any such interest will be adequately protected by either being paid in full at the time of closing, or by having it attach to the net proceeds of the sale, subject to any claims and defenses the Debtors may possess with respect thereto. The Debtors accordingly request authority to convey the Purchased Assets to the Successful Bidder(s), free and clear of all Interests, with such interests to attach to the proceeds of the Sale.

## B.   Finding of Good Faith Under Section 363(m) of the Bankruptcy Code

49.   Section 363(m) of the Bankruptcy Code provides:

The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).

50.   While the Bankruptcy Code does not define "good faith," the Third Circuit in *Abbotts Dairies* held that: "[t]he requirement that a purchaser act in good faith . . . speaks to the integrity of his conduct in the course of the sale proceedings. Typically, the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of

20

other bidders." *Abbotts Dairies*, 788 F.2d at 147 (citations omitted). The sale process proposed herein and the Sale Procedures to be approved by the Court ensure that the Purchased Assets will be sold in an arm's-length transaction, in which the successful bidder(s) will have acted in good faith under the *Abbotts Dairy* standards and within the meaning of section 363(m) of the Bankruptcy Code. Thus, the Debtors seek as part of the Sale Order a good faith finding under Section 363(m) of the Bankruptcy Code. As necessary, the Debtors and the successful bidder(s) will present additional evidence regarding the proposed buyer's good faith at the Sale Hearing.

## Assumption and Assignment of Assumed Agreements

51.     The Debtors will be responsible for payment of Cure Costs solely with respect to the assumption and assignment of Assumed Agreements to the extent set forth under the APA with any Successful Bidder. The Successful Bidder(s) shall assume and be responsible for payment of any Cure Costs that may be owed to any counterparty to any other Assumed Agreements in accordance with the terms of the APA with any Successful Bidder. The Successful Bidder(s) shall be responsible for satisfying any requirements regarding adequate assurances of future performance that may be imposed under section 365(b) of the Bankruptcy Code in connection with the proposed assignment of any Assumed Agreements. The Debtors propose that the Court make its determinations concerning adequate assurance of future performance under the Assumed Agreements pursuant to 11 U.S.C. § 365(b) at the Sale Hearing or in the case of any Assumed Agreement not assumed and assigned to the Successful Bidder(s) at the Sale Hearing, at such other hearing to approve assumption and assignment of such Assumed Agreement to the Successful Bidder(s). Cure Costs disputed by any counterparty will

21

be resolved by the Court at the Sale Hearing or at such other hearing to approve assumption and assignment of the relevant contract.

52.     Except to the extent otherwise provided in the APA or the agreement entered into with the Successful Bidder(s), subject to the payment of any Cure Costs, the assignee of an Assumed Agreement will not be subject to any liability to the assigned contract counterparty that accrued or arose before the closing date of the sale of the Purchased Assets and the Debtors shall be relieved of all liability accruing or arising thereafter pursuant to 11 U.S.C. § 365(k).

53.     If any counterparty objects for any reason to the assumption and assignment of an Assumed Agreement, the Debtors propose that the counterparty must file any such objection by no later than 4:00 p.m. Prevailing Eastern Time three business days prior to the Sale Hearing.

## Authorization of Assumption and Assignment of Assumed Agreements

54.     In order to enhance the value to the Debtors' estates, the Debtors' request, in connection with entry of the Sale Order, approval of the assumption and assignment of the Assumed Agreements to the Successful Bidder(s) upon the closing of the transactions contemplated under the APA with the Successful Bidder(s). The Debtors further request that the Sale Order provide that the Assumed Agreements will be assigned to, and remain in full force and effect for the benefit of the Successful Bidder(s), notwithstanding any provisions in the Assumed Agreements, including those described in sections 365(b)(2) and (f)(1) and (3) of the Bankruptcy Code, that prohibit such assignment.

55.     Section 365(f) of the Bankruptcy Code provides, in pertinent part, that:

22

The trustee may assign an executory contract or unexpired lease of the debtor only if –

(A)     the trustee assumes such contract or lease in accordance with the provisions of this section; and

(B)     adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease.

11 U.S.C. § 365(f)(2). Under section 365(a), a debtor "subject to the court's approval, may

assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a).

Section 365(b)(1), in turn, codifies the requirements for assuming an unexpired lease or

executory contract of a debtor, providing that:

(b)(1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee --

(A) cures, or provides adequate assurance that the trustee will promptly cure, such default;

(B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and

(C) provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b)(1).

56.     Although section 365 of the Bankruptcy Code does not set forth standards

for courts to apply in determining whether to approve a debtor in possession's decision to

assume an executory contract, courts have consistently applied a "business judgment" test when

reviewing such a decision. *See, e.g., Group of Institutional Investors v. Chicago, Milwaukee, St.*

*Paul & Pacific Railroad Co.*, 318 U.S. 523, 550 (1953); *Matter of Talco, Inc.*, 558 F.2d 1369,

23

1173 (10th Cir. 1977). A debtor satisfies the "business judgment" test when it determines, in

good faith, that assumption of an executory contract will benefit the estate and the unsecured

creditors. *In re FCX, Inc.*, 60 B.R. 405, 411 (Bankr. E.D. N.Y. 1986). The assumption and

assignment of the Assumed Agreements, or any of them, set forth in the APA, will be a

necessary part of the deal that the Debtors have struck with the Successful Bidder(s) and, as

stated above, will benefit the estates of the Debtors.

57.     The Successful Bidder(s) is responsible for providing evidence of

"adequate assurances of future performance" to the extent required in connection with the

assumption and assignment of any Assumed Agreements. The meaning of "adequate assurance

of future performance" for the purpose of the assumption of executory contracts and unexpired

leases pursuant to section 365 of the Bankruptcy Code depends on the facts and circumstances of

each case, but should be given "practical, pragmatic construction." *See Carlisle Homes, Inc. v.*

*Arrari (In re Carlisle Homes, Inc.)*, 103 B.R. 524, 538 (Bankr. D. N.J. 1989). *See also In re*

*Natco Indus., Inc.*, 54 B.R. 436, 440 (Bankr. S.D. N.Y. 1985) (adequate assurance of future

performance does not mean an absolute assurance that assignee will thrive and pay rent); *In re*

*Bon Ton Rest. & Pastry Shop, Inc.*, 53 B.R. 789, 803 (Bankr. N.D. Ill. 1985). If necessary, the

Successful Bidder(s) shall provide evidence of its ability to provide adequate assurances to

Counterparties at the Sale Hearing.

58.     The Debtors believe pursuant to their business judgment that it is in the

best interest of the Debtors and their estates and creditors to assume and assign the Assumed

Agreements in connection with the APA. Because the Debtors expect to sell their operating

assets in connection with the Sale, and will no longer operate their business after the sale of such

24

assets, and because the Assumed Agreements are inextricably intertwined with such operation, it has no need for the Assumed Agreements. Moreover, the Successful Bidder will have a need for the Assumed Agreements. Therefore, assumption and assignment of the Assumed Agreements is warranted under 11 U.S.C. § 365.

### Waiver of Ten Day Stay Imposed by Bankruptcy Rules 6004(h) and 6006(d)

59.     The Debtors desire to close any sale and effectuate assumption and assignment of any Assumed Agreements as soon as is practicable after entry of an order approving the sale. **Accordingly, the Debtors request the Bankruptcy Court, pursuant to Rules 6004(h) and 6006(d) of the Bankruptcy Rules, waive the ten day stay of the order approving the sale.** *See In re FLYi, Inc., et al.*, Case No. 05-2011 (Bankr. D. Del. Mar. 20, 2006) (authorizing immediate consummation of sale of assets notwithstanding the ten day stay); *In re Mariner Post-Acute Network, Inc.*, Case No. 00-10055 (Bankr. D. Del. Sept. 12, 2001) (waiving the ten day stay); *In re Converse, Inc.*, Case No. 01-00223 (Bankr. D. Del. Apr. 12, 2001) (authorizing immediate consummation of sale of assets notwithstanding the ten day stay).

### Disclosures Under Local Rule 6004-1 with Respect to Sale

60.     In accordance with Local Rule 6004-1(b), the Debtors have highlighted certain provisions, above, with respect to the sale by placing them in bold type, including specifically those with respect to closing and other deadlines, the requirement for a good faith deposit and procedures with respect thereto, and the request for relief from the effect of Bankruptcy Rule 6004(h).

61.     Accordingly, the Debtors request entry of the Procedures Order and approval of the Sale Procedures and, following completion of the Auction, entry of the Sale

25

Order approving the sale and assumption and assignment of the Assumed Agreements, each under Bankruptcy Code sections 363(b), 365, and 105.

## Notice Procedures

62.     Several sections of the Bankruptcy Code dictate the sufficiency of notice and adequacy of service. As discussed below, the content and manner of service of the Motion and the related Sale Notice and Cure contemplated in connection with the Motion satisfies all such requirements.

63.     Section 363 of the Bankruptcy Code provides that a trustee may sell property "after notice and hearing." Under section 102(1) of the Bankruptcy Code, the phrase "after notice and hearing" means "notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances." 11 U.S.C. § 102(1)(A). Creditors have been or will shortly be provided notice of the salient details regarding this Motion and the Sale Hearing. Accordingly, notice is sufficient under section 363 of the Bankruptcy Code.

64.     Rule 2002 of the Bankruptcy Rules requires twenty days notice of proposed sales of property other than in the ordinary course of business. In addition, Rule 2002 provides that, as to sales, notice of a sale shall "include the time and place of any public sale, the terms and conditions of any private sale and the time fixed for filing objections." Fed. R. Bankr. P. 2002. Local Rule 2002-1(b) specifies the parties on whom a motion for a sale other than in the ordinary course of business must be served in cases pending in this jurisdiction. The Debtors believe that the notices set forth under the Sale Procedure in connection with the Sale and the

26

Notice contain the requisite information to reasonably notify parties in interest in satisfaction of the foregoing rules and requirements.

65.     Rule 6004 of the Bankruptcy Rules requires that notices of sales of property out of the ordinary course of business comply with Rule 2002. As set forth above, the Debtors have complied or will comply with Rule 2002.

66.     In addition, the notice of this Motion that is being provided is "reasonably calculated" to apprise interested parties of the pendency of the matter and to afford them an opportunity to object. *See Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950). Parties in interest have been or will be and should be found to have been afforded adequate notice of this Motion and the Sale Hearing to satisfy procedural due process.

67.     The Debtors submit that the notice that they have provided and intend to provide of the Sale Procedures, the sale, the Auction, the Cure Costs, and the Sale Hearing is reasonable and appropriate and should be approved by this Court as adequate and sufficient notice.

### Notice

68.     Notice of this Motion has been given to the following parties or, in lieu thereof, to their counsel, if known: (a) the Office of the United States Trustee for the District of Delaware; (b) the Debtors' secured lenders or their counsel. Following the first day hearing in this case, this Motion will be served on (i) the U.S. Trustee; (ii) counsel to the official committee of unsecured creditors, if any (the "Committee"); (iii) the holders of the twenty-five largest unsecured claims against the Debtors (on a consolidated basis); (iv) all parties known to be

27

asserting a lien on any of the Debtors' assets; (v) all other parties who have filed a notice of appearance and demand for service of papers in the Debtors' chapter 11 cases under Bankruptcy Rule 2002; (vi) all entities known to have expressed an interest in bidding on the Purchased Assets; (vii) the United States Attorney's office; (iix) all state attorneys general in states in which the Debtors do business; (ix) state taxing authorities in the states in which the Debtors do business and the Internal Revenue Service; and (x) counsel for Crown (the "Notice Parties"). The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## No Prior Request

69.     No prior request for the relief sought in this Motion has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court (i) enter the Procedures Order substantially in the form submitted herewith and approve the Sale Procedures in connection with the proposed sale, including the scheduling of the Sale Hearing and approving the form of Sale Notice and Cure Notice; (ii) following the Sale Hearing, enter the Sale Order

28

substantially in the form submitted herewith; and (iii) grant such other and further relief as the

Court deems fair and necessary.

Dated: May 4 , 2009

PACHULSKI STANG ZIEHL & JONES LLP

Laura Davis Jones (Bar No. 2436)
David M. Bertenthal (CA Bar No. 167624)
Michael R. Seidl (Bar No. 3889)
Joshua M. Fried (CA Bar No. 181541)
Timothy P. Cairns (DE Bar No. 4228)
919 North Market Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
E-mail:    ljones@pszjlaw.com
            dbertenthal@pszjlaw.com
            mseidl@pszjlaw.com
            jfried@pszjlaw.com
            tcairns@pszjlaw.com

[Proposed] Counsel to Debtors and Debtors in
Possession