# EXHIBIT A

<u>LEASE BETWEEN JUDITH A. SPINELLI AS LESSOR</u>

<u>AND</u>

<u>FILENE'S BASEMENT, INC. AS LESSEE</u>

LEASE AGREEMENT, dated as of October 31, 1996, between Lessor, having an address at 745 Concord Avenue, Cambridge, Massachusetts, and Lessee, having an address at 40 Walnut Street, Wellesley, Massachusetts.

On June 23, 1980 the Lessor and Ava Botelle Fashions, Inc. ("Ava Botelle") entered into a lease agreement for the Leased Premises (as defined below). Such lease was for a term of 15 years with one five year extension option. On September 14, 1994 Ava Botelle assigned all of its right, title and interest in and to the June 23, 1980 lease to Filene's Basement, Inc. (the "Basement"). The Lessor consented to this assignment, and the Basement subsequently properly extended the June 23, 1980 lease so that the termination dated thereof is now June 30, 2000. The Lessor and the Basement as Lessee desire to continue their Lessor/Lessee relationship and are, therefore, entering into this Lease Agreement.

1. DEMISED PREMISES. In consideration of the rents and covenants herein stipulated to be paid and performed, Lessor hereby demises and lets to Lessee for the term described in paragraph 3, (i) the premises, (ii) all improvements constructed and to be constructed thereon, not including, however, any removable equipment owned, and placed upon such premises, by Lessee and (iii) all easements, rights and appurtenances relating thereto. Said premises, improvements, easements, rights and appurtenances are hereinafter referred to as the Leased Premises. The Leased Premises are more particularly described in Schedule A attached hereto.

2. TITLE AND CONDITIONS. The Leased Premises are demised and let subject to (a) the rights of any parties in possession thereof and the existing state of the title thereof as of the commencement of the term of this Lease, (b) any state of facts which an accurate survey or physical inspection thereof might show, (c) all zoning regulations, restrictions, rules and ordinances, building restrictions and other laws and regulations now in effect or hereafter adopted by an governmental authority having jurisdiction, and (d) with respect to buildings, structures and other improvements located on the Leased Premises, in their condition as of the commencement of the term of this Lease and (except as otherwise provided below ~~in this paragraph~~) without representation or warranty by Lessor.

3. USE OF LEASED PREMISES.  Lessee may occupy and use the Leased Premises for any lawful business purpose.  Any mortgage, deed of trust or similar encumbrance (herein called a Mortgage) placed upon the Leased Premises as security for any indebtedness of Lessor shall be subject to the rights of Lessee under this Lease.

4. PRIMARY TERM.  Subject to the terms, covenants, agreements and conditions contained herein, Lessee shall have and hold the Leased Premises for a primary term (herein called the Primary Term) commencing on July 1 of 2000 and ending at midnight on June 30 of 2005.

5. EXTENDED TERMS.  Upon expiration of the Primary Term, Lessee shall have the right and option to extend this Lease for one additional term of five years (herein called the Extended Term) unless and until this Lease shall be sooner terminated pursuant to the terms of this Lease.  The Extended Term shall commence on the day immediately succeeding the expiration date of the Primary Term and shall end at midnight of the day immediately preceding the fifth anniversary of the first day of the Extended Term.  Lessee shall be deemed to have exercised its right and option to extend this Lease for the Extended Term unless it shall have notified Lessor, in writing, at least 180 days prior to the expiration of the Primary Term that it does not elect to exercise such right and option.

THE BASE RENT FOR THE PRIMARY TERM COMMENCING JULY 1 OF 2000 AND ENDING AT MIDNIGHT ON JUNE 30 OF 2005 SHALL BE $23.00 PER SQUARE FOOT, OR $460,000.00 PER YEAR.

THE BASE RENT FOR THE FIVE YEAR OPTION PERIOD COMMENCING JULY 1 OF 2005 SHALL BE BASED UPON A CONSUMER PRICE INDEX FORMULA WITH A CEILING WITH RESPECT TO THE ANNUAL INCREASE IN RENT IN CONNECTION WITH THE CONSUMER PRICE INDEX FORMULA OF 3 PER CENT PER YEAR.  A MORE DETAILED DESCRIPTION OF THIS FORMULA IS SET FORTH ON SCHEDULE C ATTACHED HERETO.

6. RENT.  The rent Lessee covenants to pay to Lessor, as installments of rent for the Leased Premises during the Primary term of this Lease, i.e., commencing July 1 of 2000 and ending June 30 of 2005, the Basic Rent amount of $23.00 per square foot and shall pay the same at Lessor's address set forth above or at such other place within the continental United States or to such other person as Lessor from time to time may designate to Lessee in writing, in lawful money of the United States of America. The annual rent for the primary term shall be Four Hundred Sixty Thousand ($460,000.00) Dollars and the monthly rent shall be

-2-

Thirty Eight Thousand Three Hundred Thirty Three and 33/100
($38,333.33) Dollars and the rent shall be paid in monthly
installments on the first day of each and every month.

(b) Lessee shall pay all real estate taxes with respect to
the demised premises during the time of its occupancy of said
premises whether during the original term or any extended
term/terms of this Lease.

7. LEASE COMMENCEMENT DATE. The lease commencement date
shall be July 1, 2000.

8. SECURITY DEPOSIT. [Intentionally omitted]

9. NON-DISTURBANCE/QUIET ENJOYMENT. Lessor shall obtain a
non-disturbance agreement from its current lender and from
future lenders who require subordination, which shall not allow
for the early termination or any modification of the lease and
its various extensions and options so long as Lessee is not in
default of the terms of said Lease or extensions and options.

The non-disturbance agreement shall be executed at the time
of lease execution.

10. ACCESS. Lessee shall have access to the Premises
twenty-four (24) hours per day each day of the year. Lessor, at
Lessee's expense shall provide keys to the Lessee with respect
to access to the demised premises. Lessee shall have the right
to use the security system currently existing in the Premises.

11. HEATING, VENTILATION AND AIR CONDITIONING. Lessor will
supply a mechanical system in good working order to provide
adequate heating and cooling to the premises. Lessor will
provide Lessee HVAC so that the temperature in the leased
Premises does not exceed 75 degrees Fahrenheit with 50% relative
humidity in the summer and is not lower than 70 degrees in the
winter during business hours. Lessee shall maintain said
mechanical system.

12. NET LEASE; NON-TERMINABILITY. (a) This Lease shall not
terminate, nor shall Lessee have any right to terminate this
Lease (except as otherwise expressly provided in this Lease),
nor shall Lessee be entitled to any abatement or reduction of
rent hereunder nor shall the obligations of Lessee under this
Lease be affected, by reason of (i) any damage to or the
destruction of all or any part of the Leased Premises for
whatever cause, (ii) the taking of the Leased Premises or any
portion thereof by condemnation, requisition or otherwise for
any reason, or (iii) any other cause whether similar or
-3-

dissimilar to the foregoing, any present or future law to the contrary notwithstanding.

13. LIENS. (a) Lessee will not, directly or indirectly, create or permit to be created by it and will not permit to remain (whether or not created by Lessee), and will promptly discharge, at its expense, any mortgage, lien, encumbrance or charge on, pledge of, or conditional sale or other title retention agreement with respect to, the Leased Premises or any part thereof created by Lessee or affecting Lessee's interest therein or the Basic Rent, additional rent or other sums payable by Lessee under this Lease. In the event of such mortgage lien, encumbrance or charge on, pledge of, or conditional sale or other title retention agreement created by or resulting from any act of, or failure to act by, Lessor, Lessor will promptly discharge the same at its expense. The existence of any mechanic's, laborer's, materialman's, supplier's or vendor's lien, or any right in respect thereof, shall not constitute a violation of this paragraph, if payment is not yet due upon the contract or for the goods or services in respect of which any such lien has arisen. Nothing contained in this Lease shall be construed as constituting the consent or request of Lessor, expressed or implied, of any contractor, subcontractor, laborer, materialman or vendor to or for the performance of any labor or services or the furnishing of any materials for any construction, alteration, addition, repair or demolition of or to the Leased Premises or any part thereof. Notice is hereby given that Lessor will not be liable for any labor, services or materials furnished or to be furnished to Lessee, or to anyone holding the Leased Premises or any part thereof through or under Lessee, and that no mechanic's or other liens for any such labor, services or materials shall attach to or affect the interest of Lessor in and to the Leased Premises.

(b) The term "Permitted Encumbrances" with respect to the Leased Premises means:

(i) Easements, rights of way, servitudes, zoning laws, use regulations and other similar reservations, rights and restrictions, and other minor defects and irregularities in the title to the Leased Premises, which do not materially lessen the value thereof or materially impair the use thereof for the purposes held by Lessor or leased by Lessee;

(ii) The right reserved to or vested in any municipality or public authority by the terms of any right, power, franchise, grant, license, permit or provision of law to terminate such right, power, franchise, grant, license or

-4-

permit, or to purchase, condemn or appropriate the Leased Premises;

(iii) Any liens for taxes, assessments and other governmental charges and any liens of mechanics, materialmen and laborers for work or services performed or materials furnished in connection with the Leased Premises which are not due and payable or the amount or validity of which is being contested at the time by appropriate legal procedures which shall operate to prevent the collection thereof or other realization thereon and the sale or forfeiture of the Leased Premises or any part thereof to satisfy the same, provided that Lease shall have complied with the provisions of this Lease dealing with the context of any such tax, assessment, other governmental charge or lien;

(iv) Any encroachment, encumbrance, exception or violation set forth in Schedule A hereto;

(v) The lien created by any Mortgage and any rights granted as provided therein;

(vi) This Lease, and

(vii) Any Assignment of this Lease made by Lessor as security for a Mortgage.

14. INDEMNIFICATION. Lessee agrees to pay, and to protect, indemnify and save harmless Lessor from and against any and all liabilities, losses, damages, costs, expenses (including all reasonable attorneys' fees and expenses of Lessee and Lessor), causes of action, suits, claims, demands or judgments of any nature whatsoever arising from (i) any injury to, or the death of, any person or any damage to property on the Leased Premises or in any manner growing out of or connected with the use, non-use, condition or occupation of the Leased Premises or any part thereof or resulting from the condition thereof, (ii) violation by Lessee of any agreement or condition of this Lease, and (iii) violation by Lessee of any contractor agreement to which Lessee is a party or any restriction, statute, law, ordinance or regulation, in each case affecting the Leased Premises or any part thereof or the ownership, occupancy or use thereof.

15. MAINTENANCE AND REPAIR. (a) Lessee acknowledges that it has received the Leased Premises in good order and condition. Lessee agrees that it will, at its expense, keep and maintain the Leased Premises, (excluding, however the roof of

-5-

the building at the Leased Premises, which the Lessor agrees to maintain in good repair) including any altered, rebuilt, additional or substituted buildings, structures and other improvements thereto, in good repair and appearance, except for ordinary wear and tear, and will with reasonable promptness make all non-structural changes and repairs of every kind and nature which may be required to be made upon or in connection with the Leased Premises or any part thereof in order to keep and maintain the Leased Premises in good repair and appearance. Lessor shall be required to maintain, repair or rebuild, or to make any structural alterations, replacements or renewals of any nature or description to the Leased Premises or any part thereof so as to keep the Leased Premises in good repair and appearance.

(b) In the event that any buildings, structures or other improvement to the Leased Premises, whether situated upon the Leased Premises at the commencement of this Lease or thereafter constructed thereon, shall by and through the sole activity of the Lessee (i) encroach upon any property, street or right-of-way adjoining or adjacent to the Leased Premises, or (ii) shall violate the agreements or conditions contained in any restrictive covenant affecting the Leased Premises or any part thereof, or (iii) shall hinder or obstruct any easement or right-of-way to which the Leased Premises are subject or (iv) shall impair the rights of others under any such easement or right-of-way, then, promptly after the delivery of the written request of Lessor to Lessee, Lessee shall, at its expense, either (i) obtain valid and effective waivers or settlements of all claims, liabilities and damages resulting from each such encroachment, violation, hindrance, obstruction or impairment, whether the same shall affect Lessor, Lessee or both, (ii) make such changes in the buildings, structures and other improvements to the Leased Premises and take such other action as shall be necessary to remove such encroachments, hindrances or obstructions and to end such violations or impairments, including if necessary the alteration or removal of any building, structure or other improvement to the Leased Premises or (iii) give to Lessor a bond or other form of indemnity reasonably satisfactory to Lessor, indemnifying Lessor against loss arising out of any such encroachment, violation, hindrance, obstruction or impairment.

16. ALTERATIONS. (a) Lessee may, at its expense, without approval of the Lessor, make non-structural additions to and alterations of the buildings, structures or other improvements to the Leased Premises, and Lessee may make substitutions and replacements for the same on the Leased Premises, provided that (i) the market value of the Leased Premises shall not thereby be lessened, (ii) the foregoing actions shall be performed in a

-6-

good and workmanlike manner, and (iii) such additions, alterations, substitutions and replacements shall be expeditiously completed in compliance with all laws, ordinances, orders, rules, regulations and requirements applicable thereto. Lessee shall promptly pay all costs and expenses of each such addition, alteration, substitution or replacement and shall discharge all liens filed against the Leased Premises arising out of the same. Lessee shall procure and pay for all permits and licenses required in connection with any such addition, alteration, substitution or replacement. Lessee shall obtain Lessor's written approval with respect to any proposed structural additions and alterations which approval shall not be unreasonably withheld.

17. CONDEMNATION. (a) Subject to the rights of Lessee hereinafter set forth in this paragraph 17, Lessee hereby irrevocably assigns to Lessor any award or payment to which Lessee may be or become entitled by reason of any taking of the Leased Premises or any part thereof, in or by condemnation or other eminent domain proceedings pursuant to any law, general or special, or by reason of the temporary requisition of the use or occupancy of the Leased Premises or any part thereof, by any governmental authority, civil or military, whether the same shall be paid or payable in respect of Lessee's leasehold interest hereunder or otherwise. Lessor shall be entitled to participate in any such proceedings at Lessee's expense.

(b) If (i) the entire Leased Premises shall be taken in or by condemnation or other eminent domain proceedings pursuant to any law, general or special, or (ii) any substantial portion of the Leased Premises which is sufficient to render the remaining portion thereof uneconomic for Lessee's continued use or occupancy in Lessee's business shall be taken in or by such proceedings, then Lessee shall, not later than 30 days after receipt by it of official notification of any such taking, give notice to Lessor of its intention to terminate this Lease on any business day specified in such notice which occurs not less than 90 nor more than 120 days after receipt of such official notification. This Lease shall terminate on such date, except with respect to obligations and liabilities of Lessee under this Lease, actual or contingent, which have arisen on or prior to such date, upon payment by Lessee of all installments of Basic Rent and all other sums then due and payable under this Lease to and including such termination date.

(c) If (i) a portion of the Leased Premises shall be taken in or by condemnation or other eminent domain proceedings pursuant to any law, general or special, which taking is not sufficient to authorize or require that Lessee give notice of

-7-

its intention to terminate this Lease as provided in paragraph 17(b), or (ii) the use or occupancy of the Leased Premises or any part thereof shall be temporarily requisitioned by any governmental authority, civil or military, then this Lease shall continue in full effect with an appropriate abatement or reduction of Basic Rent, additional rent or other sums payable by Lessee hereunder, based upon the amount of square footage of the Leased Premises taken or impacted by such taking. Lessee may, but shall not be required to, at its expense, repair any damage caused by any such taking or requisition, so that, after completion of such repair, the Leased Premises shall be, as nearly as possible, in a condition as good the condition thereof immediately prior to such taking or requisition, except for ordinary wear and tear. In the event of any such lesser taking in or by condemnation or other eminent domain proceedings and Lessee elects to repair as provided above, Lessee shall be entitled to receive the Net Award payable in connection with such taking, but such payment shall be made only against certificates of Lessee, signed by the President or a Vice President of Lessee, delivered to Lessor from time to time as such work of repair progresses or is completed, each such certificate describing such work of repair for which Lessee is requesting payment, the cost incurred by Lessee in connection therewith and stating that Lessee has not theretofore received payment for such work of repair.

(d) Any proceeds of the Net Award remaining after the final payment has been made for such work of repair referred to in paragraph 17(c) shall be retained by Lessor. Thereafter, each installment of Basic Rent payable during the Primary Term on and after the first Basic Rent payable during the Primary Term on and after the first Basic Rent Payment Date occurring 30 days or more after the final payment to Lessee of such proceeds, as provided in the next preceding sentence, shall be reduced by a fraction, the numerator of which fraction shall be the amount of such Net Award so retained by Lessor, and the denominator of which fraction shall be $38,333.33.

(e) In the event of any temporary requisition referred to in paragraph 17(c), Lessee shall be entitled to receive the entire Net Award payable by reason of such temporary requisition.

(f) If the cost of any repairs made by Lessee pursuant to paragraph 17(c) shall exceed the amount of the Net Award, the deficiency shall be paid by Lessor. No payments shall be made to Lessee pursuant to paragraph 17(c) or (e), if any default shall have happened and be continuing under this Lease unless and until such default shall have been cured or removed.

-8-

(g) For the purposes of this Lease, all amounts payable pursuant to any agreement with any condemning authority which has been made in settlement of or under threat of any condemnation or other eminent domain proceeding affecting the Leased Premises shall be deemed to constitute an award made in such proceeding.

18. INSURANCE. (a) Lessee will at all times maintain, at its expense, insurance on the Leased Premises of the following character:

(i) Insurance against loss or damage by fire, lighting, windstorm, hail, explosion, aircraft, smoke damage, vehicle damage and other risks from time to time included under "extended coverage" policies and such other risks as are or shall customarily be insured against by persons, corporate or otherwise, engaged in businesses similar to that of Lessee and with respect to property that is similar to the Leased Premises, in amounts sufficient to prevent Lessor or Lessee from becoming a co-insurer of any loss under the applicable policies but in any event in amounts not less than the full insurable value of the Leased Premises. The term "full insurable value," as used herein, means actual replacement value less physical depreciation.

(ii) General public liabilities insurance against claims for bodily injury, death or property damage occurring on, in or about the Leased Premises and the adjoining streets, sidewalks and passageways, such insurance to afford protection to Lessor of not less than $2,000,000.00 with respect to any one accident, and not less than $1,000,000.00 with respect to property damage. Policies for such insurance shall be for the mutual benefit of Lessor, Lessee and the mortgagee under any Mortgage.

(iii) Workers' compensation insurance covering all persons employed in connection with any work done on or about the Leased Premises with respect to which claims for death or bodily injury could be asserted against Lessor, Lessee or the Leased Premises, or in lieu of such workers' compensation insurance, a program of self-insurance complying with the rules, regulations and requirements of the appropriate state agency of the state in which the Leased Premises are situated from time to time in force.

(v) Such other insurance on the Leased Premises in such amounts and against such other insurable hazards which at the time are commonly obtained in the case of property

-9-

similar to the Leased Premises, including war risk
insurance when and to the extent obtainable from the United
States Government or an agency thereof.

Such insurance shall be written by companies of recognized
financial standing which are authorized to do an insurance
business in the state in which Leased Premises are located, and
such insurance shall name as the insured parties thereunder
Lessor and Lessee, as their interests may appear.  Lessor shall
not be required to prosecute any claim against, or to contest
any settlement proposed by, any insurer, provided, that Lessee
may, at its expense prosecute any such claim or contest any such
settlement, and in such event Lessee may bring such prosecution
or contest in the name of Lessor, Lessee or both, and Lessor
will join therein at Lessee's written request upon the receipt
by Lessor of an indemnity from lessee against any and all costs,
liabilities and expenses in connection with such prosecution or
contest.

(b) Insurance claims by reason of damage to or destruction
of any portion of the Leased Premises shall be adjusted by
Lessee, but Lessor and the mortgagee under a Mortgage shall have
the right to join with Lessee in adjusting any such loss.  If
the entire amount of any proceeds paid pursuant to any such
claim shall not exceed $200,000.00, then such proceeds shall be
payable to Lessee.  If the entire amount of any proceeds paid
pursuant to any such claim shall exceed $200,000.00, then such
proceeds shall be paid to Lessee by the recipient thereof but
only upon certificates of Lessee, signed by the President or a
Vice President thereof, delivered to Lessor from time to time as
the work of rebuilding, replacing and repairing the damage or
destruction to the Leased Premises progresses, each such
certificate describing such work for which Lessee is requesting
payment, the cost incurred by Lessee in connection therewith and
stating that Lessee has not theretofore received payment for
such work.  Upon completion of such work, any remaining proceeds
will be paid to Lessee upon delivery to Lessor of a certificate
of Lessee, signed by the President or a Vice President thereof,
to the effect that such work has been completed.  No payment of
any proceeds shall be made to Lessee pursuant to this paragraph
18(b), if any default shall have happened and be continuing
under this Lease unless and until such default shall have been
cured or removed.

(c) Every insurance policy referred to in clauses (i) and
iv) of paragraph 18(a) shall bear a first mortgagee endorsement
in favor of the mortgagee under a first mortgage of the Leased
Premises; and any loss under any such policy shall be made
payable to such mortgagee, provided that any recoveries under

-10-

any of said policies shall be applied by such mortgagee. Every policy which Lessee is obligated to carry shall contain an agreement by the insurer that it will not cancel such policy after 10 days' prior written notice to Lessor and such mortgagee and that any loss otherwise payable thereunder shall be payable notwithstanding any act or negligence of Lessor or Lessee which might, absent such agreement, result in a forfeiture of all or a part of such insurance payment and notwithstanding (i) the occupation or use of the Leased Premises for purposes more hazardous than permitted by the terms of such policy, (ii) any foreclosure or other action or proceeding taken by such mortgage pursuant to any provision of such Mortgage upon the happening of an event of default, as defined therein, or (iii) any change in title or ownership of the Leased Premises.

(d) Lessee shall deliver to Lessor promptly after the execution and delivery of this Lease the original or duplicate policies or certificates of the insurers, satisfactory to the mortgagee under a first Mortgage of the Leased Premises, evidencing all the insurance which is required to be maintained by Lessee hereunder, and Lessee shall, within 30 days prior to the expiration of any such insurance, deliver copies of such policies or other certificates of the insurers evidencing the renewal of such insurance. Should Lessee fail to effect, maintain or renew any insurance provided for in this paragraph 18, or to pay the premium therefor, or to deliver to Lessor copies of any of such policies or certificates, then and in any of said events Lessor, at its option, but without obligation so to do, may upon 5 days' notice to Lessee, procure such insurance, and any sums expended by it to procure such insurance shall be additional rent hereunder and shall be repaid by Lessee within 5 days following the date on which such expenditure shall be made by Lessor.

(e) Lessee shall not obtain or carry separate insurance concurrent in form or contributing in the event of loss with that required in this paragraph 18 to be furnished by Lessee unless Lessor is included therein as a named insured, with loss payable as in this Lease provided. Lessee shall immediately notify Lessor whenever any such separate insurance is obtained and shall deliver to lessor the policies or certificates evidencing the same.

19. CASUALTY. (a) If the Leased Premises or any part thereof shall be damaged or destroyed by fire or other casualty, and if the estimated cost of rebuilding, replacing and repairing the same shall be less than $25,000, Lessee shall, with reasonable promptness and diligence, rebuild, replace and repair any damage or destruction to the Leased Premises, at its

-11-

expense, in such manner as to restore the same to an economic unit having a fair market value which the Leased Premises had immediately prior to such damage or destruction.

(b) If the Leased Premises shall be substantially damaged or destroyed in any single casualty so that the Leased Premises shall be uneconomic for restoration or for Lessee's continued use and occupancy in Lessee's business, then at Lessee's option, Lessee may give notice to Lessor, within 30 days after the occurrence of such damage or destruction, of Lessee's intention to terminate this Lease on any business day specified in such notice which occurs not less than 30 nor more than 90 days after the occurrence of such damage or destruction, provided that such notice shall be accompanied by a certificate of Lessee, signed the President or a Vice President thereof, stating that in the judgment of lessee, the Leased Premises are uneconomic for Lessee's continued use and occupancy in Lessee's business by reason of such damage or destruction. This Lease shall terminate on such termination date, except with respect to obligations and liabilities of Lessee under this Lease, actual or contingent, which have arisen on or prior to such date, upon payment by Lessee of all installments of Basic Rent and other sums then due and payable under this Lease to and including such termination date.

20. ASSIGNMENT AND SUBLETTING. Lessee shall only be allowed to sublease the demised premises to a retail business operation. Lessee may sublet all or any part of the Leased Premises for retail purposes only and may assign all its rights and interests under this Lease for retail purposes only and with the written consent of Lessor which consent shall not be unreasonably withheld, condition or delayed, provided that such sublease shall be subject to the provisions of this Lease. If Lessee assigns all its rights and interests under this Lease, the assignee under such assignment shall expressly assume all the obligations of Lessee hereunder in a written instrument delivered to Lessor at the time of such assignment. No assignment or sublease made as permitted by this paragraph 20 shall affect or reduce any of the obligations of lessee hereunder, and all such obligations shall continue in full effect as obligations of a principal and not as obligations of a guarantor or surety, to the same extent as though no assignment or subletting had been made. No sublease or assignment made as permitted by this paragraph 20 shall impose any obligations on Lessor or otherwise affect any of the rights of Lessor under this Lease. Neither this Lease nor the term hereby demised shall be mortgaged by Lessee, nor shall Lessee mortgage or pledge the interest of Lessee in and to any sublease of the Leased Premises or the rentals payable thereunder. Any such

-12-

mortgage, pledge, sublease or assignment made in violation of this paragraph 20 shall be void. In any event, Lessee shall obtain Lessor's written approval with respect to any assignment and sublease, which approval shall not be unreasonably withheld.

Lessor shall share equally any increase of any increased rent paid by the Sublessee over the rent which the Lessee is otherwise obligated to pay Lessor by the terms of this Lease.

21. CONDITIONAL LIMITATIONS; DEFAULT PROVISION. (a) Any of the following occurrences or acts shall constitute an Event of Default under this Lease: (i) if Lessee, at any time during the continuance of this Lease (and regardless of the pendency of any bankruptcy, reorganization, receivership, insolvency or other proceedings, in law, in equity, or before any administrative tribunal, which have or might have the effect of preventing Lessee from complying with the terms of this Lease), shall (1) fail to make any payment of Basic Rent, additional rent or other sum herein required to be paid by Lessee, and Lessee shall fail to make any such payment for a period of 10 days after delivery by Lessor of written notice to Lessee that any such payment has become due, or (2) fail to observe or perform any other provision hereof for 60 days after Lessor shall have delivered to Lessee notice of such failure (provided, that in the case of any default referred to in this clause (2) which cannot with diligence be cured within such 60-day period, if Lessee shall proceed promptly to cure the same and thereafter shall prosecute the curing of such default with diligence, then upon receipt by Lessor of a certificate from the President or a Vice President of Lessee stating the reason that such default cannot be cured within 30 days and stating that Lessee is proceeding with diligence to cure such default, the time within which such failure may be cured shall be extended for period as may be reasonably necessary to complete the curing of the same with diligence), or (ii) if Lessee shall file a petition in bankruptcy or for reorganization or for an arrangement pursuant to any present or future federal or state bankruptcy law or under any similar federal or state law, or shall be adjudicated a bankrupt or insolvent or shall make an assignment for the benefit of its creditors or shall admit in writing its inability to pay its debts generally as they become due, or if a petition or answer proposing the adjudication of Lessee as a bankrupt or its reorganization under any present or future federal or state bankruptcy law or any similar federal or state law shall be filed in any court and such petition or answer shall not be discharged or denied within 120 days after the filing thereof, or (iii) if a receiver, trustee or liquidator of Lessee or of all or substantially all of the assets of Lessee or of the Leased Premises shall be appointed in any proceedings brought by

-13-

Lessee, or if any proceeding brought against Lessee shall not be discharged within 120 days after such appointment, or if Lessee shall consent to or acquiesce in such appointment.

(b) If an Event of Default shall have happened and be continuing, Lessor shall have the right at its election, then at any time thereafter while such Event of Default shall continue, to give Lessee written notice of Lessor's intention to terminate the term of this Lease on a date specified in such notice. Upon the giving of such notice, the term of this Lease and the estate hereby granted shall expire and terminate on such date as fully and completely and with the same effect as if such date were the date hereinbefore fixed for the expiration of the term of this Lease, and all rights of Lessee hereunder shall expire and terminate, but Lessee shall remain liable as hereafter provided.

(c) If an Event of Default shall have happened and be continuing, Lessor shall have the immediate right, whether or not the term of this Lease shall have been terminated to re-enter and repossess the Leased Premises or any part thereof by force, summary proceedings, ejected or otherwise and the right to remove all persons and property therefrom. Lessor shall be under no liability for or by reason of any such entry, repossession or removal. No such re-entry or taking of possession of the Leased Premises by Lessor shall be construed as election on lessor's part to terminate the term of this Lease unless a written notice of such intention be given to Lessee pursuant to this Lease, or unless the termination of this Lease be decreed by a court of competent jurisdiction.

(d) At any time or from time to time after the repossession of the Leased Premises or any part thereof pursuant to the terms of this Lease, Lessor may (but shall be under no obligation to) relet the Leased Premises or any part thereof for the account of Lessee, without notice to Lessee, for such term or terms (which may be greater or less than the period which would otherwise have constituted the balance of the term of this Lease) and on such conditions as may be then typical and customary in the marketplace (which may include concessions or free rent) and for such uses as Lessor, in its absolute discretion, may determine, and Lessor may collect and receive any rents payable by reason of such reletting. Notwithstanding the foregoing provisions of the terms of this Lease, Lessor agrees to use its best efforts to accomplish such reletting; provided, however, that Lessor shall not be liable for any failure to relet the Leased Premises or any part thereof or for any failure to collect any rent due upon any such reletting.

(e) No expiration or termination of the term of this Lease
-14-

by operation of law or otherwise, and no repossession of the Leased Premises or any part thereof pursuant to this Lease or otherwise, and no reletting of the Leased Premises or any part thereof, shall relieve Lessee of its liabilities and obligations hereunder, all of which shall survive such expiration, termination, repossession or reletting.

(f) In the event of any expiration or termination of this Lease or repossession of the Leased Premises or any part thereof by reason of the occurrence of an Event of Default, Lessee will pay to Lessor the Basic Rent, additional rent and other sums required to be paid by Lessee to and including the date of such expiration, termination or repossession; and, thereafter, Lessee shall, until the end of what would have been the term of this Lease in the absence of such expiration, termination or repossession, and whether or not the Leased Premises or any part thereof shall have been relet, be liable to Lessor for, and shall pay to Lessor, as liquidated and agreed current damages: (i) the Basic Rent, additional rent and other sums which would be payable under this Lease by Lessee in the absence of such expiration, termination or repossession, less (ii) the net proceeds, if any, of any reletting effected for the account of Lessee pursuant to the terms of this Lease, after deducting from such proceeds all Lessor's expenses in connection with such reletting (including, without limitation, all repossession costs, brokerage commissions, legal expenses, attorneys' fees, employees' expenses, alteration costs and expenses of preparation for such reletting). Lessee will pay such current damages on the days on which the Basic Rent would have been payable under this Lease in the absence of such expiration, termination or repossession, and Lessor shall be entitled to recover the same from Lessee on each such day.

22. ADDITIONAL RIGHTS OF LESSOR. (a) No right or remedy herein conferred upon or reserved to Lessor is intended to be exclusive of any other right or remedy, and each and every right and remedy shall be cumulative and in addition to any other right or remedy given hereunder or now or hereafter existing at law or in equity or by statute. The failure of Lessor to insist at any time upon the strict performance of any covenant or agreement or to exercise any option, right, or power or remedy contained in this Lease shall not be construed as a waiver or a relinquishment thereof for the future. A receipt by Lessor of any Basic Rent, any additional rent or any other sum payable hereunder with knowledge of the breach of any covenant or agreement contained in this Lease shall not be deemed a waiver of such breach, and no waiver by Lessor of any provision of this Lease shall be deemed to have been made unless expressed in writing and signed by Lessor. In addition to other remedies

-15-

provided in this Lease, Lessor shall be entitled, to the extent permitted by applicable law, to injunctive relief in case of the violation, or attempted or threatened violation, of any of the covenants, agreements, conditions or provisions of this Lease, or to a decree compelling performance of any of the covenants, agreements, conditions or provisions of this Lease, or to any other remedy allowed to Lessor at or in equity.

(b) Lessee hereby waives and surrenders for itself and all those claiming under it, including creditors of all kinds, (i) any right and privilege which it or any of them may have under any present or future constitution, statute or rule of law to redeem the Leased Premises or to have a continuance of this Lease for the term hereby demised after termination of Lessee's right of occupancy by order or judgment of any court or by any legal process or writ, or under the terms of this Lease, or after the proper termination of the term of this Lease as herein provided, and (ii) the benefits of any present or future constitution, statute or rule of law which exempts property from liability for debt or for distress for rent.

(c) In the event Lessee shall be in default in the performance of any of its obligations under this Lease, and an action shall be brought for the enforcement thereof in which it shall be determined that Lessee was in default, Lessee shall pay to Lessor all the expenses incurred in connection therewith including reasonable attorneys' fees. In the event Lessor shall, without fault on its part, be a party to any litigation commenced against Lessee, if Lessee, at its expense, shall fail to provide Lessor with counsel approved by Lessor, Lessee shall pay all costs and reasonable attorneys' fees incurred or paid by Lessor in connection with such litigation.

23. NOTICES, DEMANDS, AND OTHER INSTRUMENTS. (a) All notices, demands, requests, consents, approvals and other instruments required or permitted to be given pursuant to the terms of this Lease shall be in writing and shall be deemed to have been properly given if (a) with respect to Lessee, sent by registered or certified mail, postage prepaid, addressed to Lessee at: 40 Walnut Street, Wellesley, Massachusetts 02181, Attn: Steven R. Siegel, Executive Vice President and Chief Financial Officer and (b) with respect to Lessor, sent by registered or certified mail, postage prepaid, addressed to Lessor at: 745 Concord Avenue, Cambridge, Massachusetts 02138.

(b) Lessor and Lessee shall each have the right from time to time to specify as its address for purposes of this Lease, including without limitation, this paragraph 23, any other address in the United States of America upon giving 15 days'

-16-

written notice thereof, similarly given, to the other party.

24. ESTOPPEL CERTIFICATE. Lessee and Lessor each will, at any time and from time to time (but not more often than once every six months), upon not less than 20 days' prior request by the other, execute, acknowledge and deliver to the other a statement in writing, executed by the President or any Vice President of Lessee or by the Lessor, certifying that this Lease is unmodified and in full effect (or, if there have been modifications, that this Lease is in full effect as modified, and setting forth such modifications) and the dates to which the Basic Rent, additional rent and other sums payable hereunder have been paid, and either stating that to the knowledge of the signer of such certificate no default exists hereunder or specifying each such default of which the signer may have knowledge; it being intended that any such statement may be relied upon by the Lessee or mortgagee under any Mortgage or by any prospective purchaser of the Leased Premises.

25. NO MERGER. There shall be no merger of this Lease or of the leasehold estate hereby created with the fee estate in the Leased Premises or any part thereof by reason of the fact that the same person may acquire or hold, directly or indirectly, this Lease or the leasehold estate hereby created or any interest in this Lease or in such leasehold estate and the fee estate in the Leased Premises or any interest in such fee estate. This Lease shall be be terminated for any reason except as expressly provided in this instrument.

26. SURRENDER. Upon the expiration or earlier termination of this Lease, Lessee shall peaceably leave and surrender the Leased Premises to Lessor in the same condition in which the Leased Premises were originally received from Lessor at the commencement of this Lease, except as repaired, rebuilt, restored, altered or added to as provided in, permitted by or required by any provision of this Lease and except for ordinary wear and tear, casualty and taking. Lessee shall remove from the Leased Premises on or prior to such expiration or earlier termination all property situated thereon which is not owned by Lessor and, at its expense, shall, on or prior to such expiration or earlier termination, repair any damage caused by such removal. Property not so removed shall become the property of Lessor, and Lessor may thereafter cause such property to be removed from the Leased Premises and disposed of, but Lessee shall pay the reasonable cost of any such removal and disposition and the reasonable cost of repairing any damage caused by such removal minus any net proceeds received by Lessor by reason of such disposition.

-17-

27. SEPARABILITY. Each and every covenant and agreement contained in this Lease is, and shall be construed to be, a separate and independent covenant and agreement, and the breach of any such covenant or agreement by Lessor shall not discharge or relieve Lessee from its obligations to perform the same. If any term or provision of this Lease or the application thereof to any person or circumstances shall to any extent be invalid and unenforceable, the remainder of this Lease, or the application of such term or provision to persons or circumstances other than those as to which it is invalid or unenforceable, shall not be affected thereby, and each term and provisions of this Lease shall be valid and shall be enforced to the extent permitted by law.

28. BINDING EFFECT. All of the covenants, conditions and obligations contained in this Lease shall be binding upon and inure to the benefit of the respective successors and assigns of Lessor and Lessee to the same extent as if each such successor and assign were in each case named as a party to this Lease. This Lease may not be changed, modified or discharged except by a writing signed by Lessor and Lessee.

29. HEADINGS. The headings of the various paragraphs of this Lease have been inserted for convenient reference only and shall not to any extent have the effect of modifying, amending or changing the expressed terms and provisions of this Lease.

30. GOVERNING LAW. This Lease shall be governed by and interpreted under the laws of the state in which the Leased Premises are located.

31. SCHEDULES. The following are Schedules A and B referred to in this Lease.

32. NOTICE OF LEASE. The Lessor agrees that upon request of the Lessee she will join in the execution of a recordable Notice of Lease as defined in Section 4 of Chapter 183 of the General Laws of Massachusetts.


Judith Ann Spinelli,
Lessor


By_____

-18-

Attest:

By:_____

Witnesses:

Filene's Basement,
Inc., Lessee

By _____
EVP O CFC

Attest:

By_____

Witnesses:

*Elaine B. Hurst.*

The Commonwealth of Massachusetts
SS. Date 11/1/96
Then personally appeared the above named
*Steven Siegel*
and acknowledged the foregoing instrument
to be his/her free act and deed, before me.
ELAINE B. HURST, Notary Public
My Commission Expires November 9, 2001

-19-

SCHEDULE A TO LEASE

[Description of Leased Premises]

SCHEDULE B TO LEASE

Basic Rent Payments

A. The Basic Rent payment to be made under this
   Lease on each Basic Rent Payment Date during
   the Primary Term:                                    $38,333.33

B. The Basic Rent payment to be made under this
   Lease on each Basic Rent Payment Date during
   each Extended Term:                                  $See
                                                        Schedule C

## SCHEDULE C

The Extended Term shall commence on the day succeeding the expiration of the Primary Term and shall end on the day immediately preceding the fifth anniversary of the commencement of the Extended Term. All of the terms, covenants and provisions of this Lease applicable immediately prior to the expiration of the Primary Term shall apply to the Extended Term except that (i) the annual Base Rent for the Extended Term shall be fixed on the first day of July, 2005 (the "Calculation Date") and shall be equal to the greater of (a) the product of (1) the Base Rent in effect on July 1, 2000 without giving effect to any abatements, set-offs or concessions then in effect (the "<u>Prior Rent</u>"), increased by a yearly computation consisting of (2) a fraction, the denominator of which shall be the aggregate of the Index as of June, 2000 plus the percentage increase of the Index for each of the five (5) years preceeding the Calculation Date (with a maximum increase allowable of three percent (3%) per year), and the numerator of which shall be the Index for June, 2000, or (b) the Prior Rent.

"<u>Index</u>", as used in this Schedule C shall mean the Consumer Price Index for Urban Wage Earners and Clerical Workers, Boston, Massachusetts, All Items 1982-1984=100. The Index is presently published by the Bureau of Labor Statistics of the United States Department of Labor. In the event publication of the Index ceases, the computation of the Base Rent due from Tenant during each year of the term with respect to which the Index is to be applied shall be computed upon the basis of whatever index published by the United States Department of Labor at that time is most nearly comparable as a measure of general changes in price levels for the Boston area.

FILENES
10/16/1996