IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FILENE'S BASEMENT, INC., et al.,[1] | ) | Case No. 09-11525 (MFW) |
| | ) | |
| Debtors. | ) | Re: Docket No. 25 |

**ORDER (I) APPROVING ASSET PURCHASE AGREEMENT AND AUTHORIZING THE SALE OF CERTAIN OF THE DEBTORS' ASSETS OUTSIDE THE ORDINARY COURSE OF BUSINESS TO SYL LLC, A WHOLLY OWNED SUBSIDIARY OF SYMS CORP; (II) AUTHORIZING THE SALE OF ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS PURSUANT TO SECTIONS 363(B), (F) AND (M) OF THE BANKRUPTCY CODE, (III) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (IV) GRANTING RELATED RELIEF**

This matter coming before the Court on the *Debtors' Motion for an Order:*

*(I) Approving Asset Purchase Agreement and Authorizing the Sale of Certain of Assets Outside the Ordinary Course of Business to the Purchaser or a Higher and Better Bidder;*

*(II) Authorizing the Sale of Assets Free and Clear of All Liens, Claims, Encumbrances and Interests Pursuant to Sections 363(b), (f) and (m) of the Bankruptcy Code, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and*

*(IV) Granting Related Relief* (the "Sale Motion") filed by the captioned debtors and debtors-in-possession (the "Debtors"); the Court having entered the order *(A) Approving Bid Procedures for the Sale of Certain of the Debtors' Assets; (B) Scheduling an Auction and Hearing to Consider the Sale and Approve the Form and Manner of Notice Related Thereto; (C) Establishing*

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Filene's Basement, Inc. (8237); FB Services LLC (7224); and FB Leasing Services LLC (7228). The address for all Debtors is 25 Corporate Drive, Suite 400, Burlington, MA 01803.

*Procedures Relating to the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, Including Notice of Proposed Cure Amounts; (D) Authorizing Debtors to Offer Certain Bid Protections and (E) Granting Related Relief* [Docket No. 123] (the "Bid Procedures Order"); an Auction of the Debtors' assets having been conducted as a result of the receipt of "Competing Bids" (as defined in the Bid Procedures Order) pursuant to the Bid Procedures Order on June 5, 2009, June 12, 2009, and June 15, 2009; the Debtors having executed an Asset Purchase Agreement dated as of June 17, 2009, substantially in the form attached hereto as Exhibit "A" (the "APA"), with the Purchaser (as defined in the APA) who was determined by the Debtors as having submitted the highest or otherwise best bid for the Assets (as defined in the APA) pursuant to the APA; there being no objections to the Sale Motion, or any objections thereto having been withdrawn, waived, settled or overruled on the merits; the hearing on the Sale Motion (the "Sale Hearing") having been held on June 10, 2009, June 12, 2009, and June 17, 2009; all interested parties having been duly served with appropriate notice and having been afforded an opportunity to be heard with respect to the Sale Motion and all relief related thereto; the Court being otherwise duly informed in the premises[2];

## IT IS HEREBY FOUND AND DETERMINED THAT:

A.      This Court has jurisdiction over this Sale Motion pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N) and (O). Venue of these cases and the Sale Motion in this district is proper under 28 U.S.C. §§ 1408

---

[2] All capitalized terms not defined in this Order having the same meanings as in the Motion, except that, as provided in Paragraph 5 below, the term "Purchaser" shall be inclusive of the 426 Landlord, solely with respect to the acquisition of the 426 Claims and the protections provided to the Purchaser under this Order, but not with respect to any obligations of the Purchaser.

and 1409.  The statutory predicates for the relief sought in the Sale Motion are Sections 105(a),

363(b), (f), (m) and (n), and 365 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.*,

as amended (the "Bankruptcy Code"), and Rules 2002, 6004, 6006 and 9014 of the Federal Rules

of Bankruptcy Procedure (the "Bankruptcy Rules").

      B.     The Debtors have conducted a thorough and adequate search for potential

purchasers for the Assets, and the Sale was conducted in accordance with the requirements of the

Bid Procedures Order, as reflected in testimony, offers of proof by counsel or other evidence

produced at the Sale Hearing.

      C.     In accordance with the terms of the Bid Procedures Order, the Debtors served

Notice of the Sale Hearing (as defined in the Bid Procedures Order) on (a) the U.S. Trustee;

(b) counsel to the official committee of unsecured creditors (the "Committee"); (c) all parties

known to be asserting a lien on any of the Debtors' assets; (d) non-debtor counterparties to the

Assumed Contracts, if any; (e) all entities known to have expressed an interest in acquiring any

of the Assets, and known liquidators of real property leases (which the Debtors and their advisors

reasonably determined might be interested in any of the Assets); (f) the United States Attorney's

office; (g) all state attorney generals in states in which the Debtors do business; (h) various

known federal and state agencies and authorities asserting jurisdiction over the Assets, including

the Internal Revenue Service; (i) Crown FB, LLC, and its counsel; and (j) all other parties that

have filed a notice of appearance and demand for service of papers in the Debtors' chapter 11

cases under Bankruptcy Rule 2002 as of the date of the Bid Procedures Order.  The Debtors

served the Cure Notice (as defined in the Bid Procedures Order) on all counterparties to the

Assumed Contracts and all other parties that have filed a notice of appearance and demand for

service of papers in the Debtors' chapter 11 cases under Bankruptcy Rule 2002 as of the date of the Bid Procedures Order. The Debtors served the Creditor Notice (as defined in the Bid Procedures Order) on all of their known creditors. In light of such service,. proper, timely, adequate and sufficient notice of the Sale Motion, the Sale Hearing, and the transaction contemplated by the APA and this Order (the "Transaction" or the "Sale"), including, without limitation, the assumption and assignment of the Assumed Contracts, has been provided in accordance with Sections 105(a), 363 and 365 of the Bankruptcy Code and Rules 2002, 6004, 6006, and 9014 of the Bankruptcy Rules. Such notice was good, sufficient and appropriate under the particular circumstances, and no other or further notice of the Sale Motion, the Sale Hearing, or the Transaction, including, without limitation, the assumption and assignment of the Assumed Contracts, is or shall be required.

D.     As demonstrated by (i) the testimony and/or other evidence proffered at the Sale Hearing, and (ii) the representations of counsel made on the record at the Sale Hearing, the Debtors have conducted the sale process fairly and openly in a manner reasonably calculated to produce the highest or otherwise best offer for the Assets under the circumstances and in compliance with the Bid Procedures Order. The highest or otherwise best offer received by the Debtors for the Assets at or before the Sale Hearing was the offer by SYL, LLC, a wholly owned subsidiary of the Syms Corp., the Purchaser, as such offer is reflected in the APA. The Back-up Bidder with respect to the proposed sale was a joint bid of Crown FB LLC and K&G Acquisition Corp. as described in greater detail in the record of the Auction.

E.     Approval of the APA and consummation of the Transaction, including the sale of the Assets at this time, is in the best interests of the Debtors, their creditors, estates, and other

4

parties in interest. The Debtors have established that strong business reasons exist for (i) selling the Assets outside the ordinary course of business and outside a plan and (ii) the assumption and assignment of the Assumed Contracts as specified in the APA. The sale of the Assets pursuant to the APA will produce higher value than could be obtained in a liquidation sale.

F.     The Debtors have demonstrated that sale of the Assets and consummation of the Sale reflects the exercise of the Debtors' sound business judgment.

G.     Upon review of the evidence presented and proffered, the Court finds that the APA was negotiated, proposed and entered into by the Debtors and the Purchaser without collusion, in good faith, and from arm's-length bargaining positions. The terms of the APA are fair and reasonable. Neither the Debtors, nor the Purchaser have engaged in any conduct that would cause or permit the APA or any part of the Transaction to be avoided, or for the imposition of costs and damages against the Purchaser under Section 363(n) of the Bankruptcy Code.

H.     Upon review of the evidence presented or proffered, the Court finds that the Purchaser is a good faith purchaser under Section 363(m) of the Bankruptcy Code and, as such, is entitled to all of the protections afforded thereby. The Purchaser will be acting in good faith within the meaning of Section 363(m) of the Bankruptcy Code in closing the sale of the Assets pursuant to the APA at any time after the entry of this Order, and the ten (10) day stay otherwise in effect under Bankruptcy Rules 6004 and 6006 is hereby waived and dispensed with, and this Order shall be effective immediately upon entry thereof.

I.     Except as otherwise set forth herein, the Debtors are the sole and lawful owner of the Assets. Subject to certain exceptions set forth herein, the Debtors may sell the Assets to the

Purchaser free and clear of all liens, claims, encumbrances and interests ("Liens") in accordance with, and to the extent permitted by, section 363(f) of the Bankruptcy Code. As a condition of purchasing the Assets, the Purchaser requires that the Assets be sold free and clear of all Liens, except those explicitly and expressly assumed by the Purchaser in the APA (which shall be limited to the Assumed Liabilities) (as defined in the APA)). Accordingly, the transfer of the Assets to the Purchaser is or will be a legal, valid and effective transfer of the Assets, and will vest the Purchaser with all right, title and interest in and to the Assets, free and clear of all Liens, except those explicitly and expressly assumed by the Purchaser in the APA. Except as otherwise expressly set forth in the APA, the transfer of the Assets to Purchaser does not and will not subject Purchaser to any liability whatsoever with respect to the operation of the Debtors' business and/or the ownership of the Assets prior to the Closing.

J.     Except as set forth herein, non-debtor parties holding valid Liens in or with respect to the Assets, including parties to Assumed Contracts, who did not object to the Sale Motion or those whose objections were withdrawn are deemed to have consented to the sale of the Assets free and clear of their Liens in or with respect to the Assets pursuant to sections 363(f)(2) and 365 of the Bankruptcy Code.

K.     For purposes of section 363(b)(1) of the Bankruptcy Code, the Debtors have, in connection with offering product or service, previously disclosed to one or more individuals a policy prohibiting the transfer of "personally identifiable information" (as defined in 11 U.S.C. section 101(41A)) about individuals to persons that are not affiliated with the debtors, but the sale or lease proposed is consistent with that policy because the policy requires the buyer to honor the policy

6

L.     At the Auction on June 5, 2009, K&G Acquisition Corp., an indirect, wholly-owned subsidiary of The Men's Wearhouse, Inc. ("TMW"), submitted a bid to purchase the Assets for $67 million, which bid was conditioned upon confirmation of a plan of reorganization.  At that time, the Debtors, in consultation with the Committee, determined that TMW had submitted the highest or otherwise best bid for the Assets and that TMW was the Successful Bidder.  At a status conference on June 10, 2009 in connection with the Auction, the Court determined that the Auction should continue and the Debtors and the Committee advised the Court and parties in interest, among other things, that in light of the value TMW brought to the Auction process, they had agreed to the granting of an allowed administrative claim to TMW in the amount of TMW's actual out of pocket expenses (including the fees and expenses of its third party professionals) incurred in connection with its bid for the Assets, subject to the Court's review and approval of the reasonableness of such fees and expenses after application by TMW on notice to parties-in-interest.  At the continued Auction on June 15, 2009, the Debtors and the Committee reaffirmed their agreement with respect to the granting of TMW's administrative claim on the terms previously announced at the status conference on June 10, 2009,  in recognition of TMW's efforts and to obviate any objections with respect to the Auction process and the value of the bids, including the Purchaser's bid, which was selected by the Debtors, in consultation with the Committee, as the highest and best bid for the Assets.

M.     At the continued Auction conducted on June 15, 2009, the Debtors and the Committee agreed to support an additional $50,000 in expense reimbursement in connection with the bid of Crown FB, LLC ("Crown").

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

The Sale Motion is GRANTED by this Order and all objections thereto which have not been waived, withdrawn, or settled as reflected on the docket of these cases or the record of the Sale Hearing are hereby overruled.

### Approval of the Asset Purchase Agreement

1.      The APA, as received by the parties in interest and presented to the Court, and all of the terms and conditions thereof, as may be amended, including as may be amended by this Order, are hereby approved.

2.      Pursuant to Sections 363(b) and (f) of the Bankruptcy Code, the Debtors are authorized to consummate the sale of the Assets pursuant to and in accordance with the terms and conditions of the APA and this Order.

3.      The Debtors are empowered to perform under, consummate and implement the APA, and are authorized, without further Court order, to take all other actions as are necessary to effectuate the Transaction, including, exercising reasonable efforts in executing and delivering any additional instruments and documents that may be reasonably necessary or desirable to implement the APA, and to take all further actions as may be requested by the Purchaser for the purpose of assigning, transferring, granting, conveying and conferring to the Purchaser or reducing to possession the Assets and the Assumed Contracts, or as may be necessary or appropriate to the performance of the obligations as contemplated by the APA.

8

## Transfer of Assets Free and Clear of Liens

4. At Closing, Purchaser shall acquire the Assets in consideration of the Purchase Price. Upon the payment of the Purchase Price to the Debtors, the Assets, including but not limited to the Intellectual Property, shall be transferred, and title passed, to the Purchaser free and clear of all Liens other than the Assumed Liabilities (as defined in the APA), with all such Liens of any kind or nature whatsoever (other than the Assumed Liabilities) attaching to the proceeds of the sale ultimately attributable to the Assets against or in which the holder of an interest claims or may claim an interest in the order of their priority, with the same validity, force and effect which they now have, subject to any claims and defenses the Debtors may possess with respect thereto. The proceeds of sale shall be subject to the Liens held by the Prepetition Agent on behalf of the Prepetition Lenders and the Debtors are hereby authorized to pay to the Prepetition Agent on behalf of the Prepetition Lenders sufficient proceeds to pay any currently outstanding amount of the Prepetition Obligations as defined in the Final Order (1) Authorizing Use of Cash Collateral, (2) Granting Adequate Protection, and (3) Modifying the Automatic Stay.

5. As provided for in Section 1.1(*l*) and Section 8.7 of the APA, at Closing, 426 Washington Street Owner LLC (the "426 Landlord") shall acquire all rights to causes of action, accounts receivables, lawsuits, rights to legal or equitable remedies, judgments and claims of any nature (whether legal or equitable, secured or unsecured, matured or un-matured, known or unknown, liquidated or unliquidated, contingent or non-contingent, senior or subordinated, disputed or non-disputed) owned or assertable by, or available to, any Debtor or Debtors' estate in these chapter 11 cases (whether or not such cause of action, accounts

9

receivable, lawsuit, right to legal or equitable remedies, judgment or claim is being pursued) against any and all entities, including without limitation 426 Landlord, to the extent (and only to the extent) arising with respect to or in any way related to the Lease, dated as of April 30, 1988, as amended, between The May Department Stores Company, a New York corporation, and Federated Department Stores, Inc., a Delaware corporation, for the property located at 426 Washington Street, Boston, Massachusetts (the "Downtown Crossing Lease"), including for any amounts due from 426 Washington Street Owner LLC (the current owner) to any Debtor or Debtors' estate in these chapter 11 cases or whether arising by way of counterclaim, set off, rights of self-help under such lease or otherwise (the "426 Claims"). As used in this Order, the term "Purchaser" shall be inclusive of the 426 Landlord, solely with respect to the acquisition of the 426 Claims and the protections provided to the Purchaser under this Order, but not with respect to any obligations of the Purchaser.

6.      Except for the Assumed Liabilities (as defined in the APA) or as otherwise expressly provided for in the APA and this Order, the Purchaser shall not have any liability or responsibility for any liability, commitment or other obligation of and claims against the Debtors arising under or related to the Assets. Without limiting the generality of the foregoing, and except as otherwise specifically provided in the APA, the Purchaser shall not be liable for any liabilities of and obligations against the Assets, Debtors or any of their predecessors or affiliates including, but not limited to, liabilities whether known or unknown as of the Closing Date, now existing or hereafter arising, whether fixed or contingent, with respect to the Debtors or any obligations of the Debtors arising prior to the Closing Date, whether relating to or arising out of

the Business (as defined in the APA), the Excluded Assets (as defined in the APA), the Assets, the transfer of the Assets to Purchaser or otherwise, other than the Assumed Liabilities.

7.      Except as expressly permitted or otherwise specifically provided by the APA or this Order, all parties holding Liens of any kind or nature whatsoever against Debtors or the Assets (whether legal or equitable, secured or unsecured, matured or un-matured, known or unknown, liquidated or unliquidated, contingent or non-contingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to, the Debtors, the Assets, the operation of the Debtors' business prior to the Closing Date, or the transfer of the Assets to the Purchaser, hereby are forever barred and estopped from asserting such persons' or entities' Liens against the Purchaser, their successors or assigns, their Assets or assets, which claims are hereby transferred to the sale proceeds whether or not a party asserting any such claim has delivered to Purchaser a release. But for the Assumed Liabilities, Purchaser shall not be liable for any claims of any kind or nature, whether prepetition or postpetition, matured or un-matured, fixed or contingent, liquidated or unliquidated, known or unknown, against the Debtors or any of their predecessors or affiliates, and the Purchaser shall have no successor liability with respect to same.

8.      Pursuant to sections 365(b), (c) and (f) of the Bankruptcy Code, and subject to this Order, the Debtors are authorized to assume and assign the Assumed Leases and Assumed Contracts as were identified in the APA, and as supplemented and modified in accordance with the APA (hereinafter referred to collectively as the "Assumed Contracts"). A schedule of the Assumed Contracts is attached hereto as Exhibit "B."

11

9.     The Assumed Contracts: shall be deemed assumed and assigned to the Purchaser as of the Closing Date. The Purchaser shall be deemed to have provided adequate assurance of its future performance under the relevant Assumed Contracts within the meaning of sections 365(b)(1)(C), 365(b)(3) (to the extent applicable) and 365(f)(2)(B) of the Bankruptcy Code. The Assumed Contracts are in force, effective, and upon payment of the allowed Cure Amounts, no defaults shall exist thereunder, monetary, or non-monetary.

10.     Upon Closing, the Purchaser shall assume full responsibility and liability for all Assumed Contracts, and Debtors shall have no further responsibility, financial or otherwise, under any Assumed Contracts for (i) any monetary or non-monetary defaults, breaches or other damages associated with the Assumed Contracts, arising or accruing subsequent to the Closing, or (ii) any Assumed Liabilities. (but no later than five days After the Closing Date)

11.     On or as promptly after the Closing Date as practical, the Cure Amounts to which no objections have been filed, or to which the Debtors and applicable non-debtor contract or which are otherwise undisputed, party have agreed as to the allowed Cure Amount(s), shall be paid with the Debtors to pay all Real Estate Cures and the Purchaser to pay all Other Cure Amounts.

12.     Pursuant to sections 105(a), 363 and 365 of the Bankruptcy Code, all parties to the Assumed Contracts are forever barred from raising or asserting against the Purchaser any assignment fee, default, breach or claim or pecuniary loss, or condition to assignment, arising under or related to the Assumed Contracts existing as of the Closing or arising by reason of the Closing. Payment of the Cure Amounts shall be deemed to discharge the Debtors' obligation to: (i) cure, or provide adequate assurance that the Debtors will promptly cure, any defaults under the Assumed Contracts; and (ii) compensate, or provide adequate

12

assurance that the Debtors will promptly compensate any non-debtor party to the Assumed Contracts for any actual pecuniary loss resulting from any default under the Assumed Contracts.

13.     In accordance with sections 365(b)(2) and (f) of the Bankruptcy Code, upon transfer of the Assumed Contracts to the Purchaser, (i) the Purchaser shall have all of the rights of the Debtors thereunder and each provision of such Assumed Contracts shall remain in full force and effect for the benefit of the Purchaser notwithstanding any provision in any such Assumed Lease or in applicable law that prohibits, restricts or limits in any way such assignment or transfer, and (ii) no Assumed Lease may be terminated, or the rights of any party modified in any respect, including pursuant to any "change of control" clause, by any other party thereto as a result of the consummation of the Transaction.

14.     The transfer of the Assets to the Purchaser pursuant to the APA and this Order constitutes a legal, valid, and effective transfer of the Assets, and shall vest the Purchaser with the same right, title and interest of the Debtors in and to the Assets free and clear of all Liens of any kind or nature whatsoever (but for the Assumed Liabilities) notwithstanding any requirement for approval or consent by any entity (as defined in Section 101(15) of the Bankruptcy Code).

15.     The transfer of the Assets to the Purchaser pursuant to the APA is an exchange for consideration by the Purchaser that constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession or the District of Columbia.

**Additional Provisions**

16.     On the Closing Date of the Transaction, each of the Debtors' creditors,

secured or otherwise, are authorized to execute such documents and take all other actions as may

be necessary to release their liens, claims or encumbrances in or against the Assets, if any, as

such liens, claims or encumbrances may have been recorded or may otherwise exist.

17.     The automatic stay provisions of section 362 of the Bankruptcy Code are

modified and vacated to the extent necessary to implement the terms and conditions of this

Order.  If any person or entity asserting a security interest has filed financing statements,

mortgages, construction liens, mechanic's liens, *lis pendens*, or other documents or agreements

evidencing Liens with respect to the Assets, and has not delivered to the Debtors and/or the

Purchaser prior to the Closing Date, in proper form for filing and executed by the appropriate

parties, termination statements, instruments of satisfaction, and/or releases of all liens which the

person or entity has with respect to any of the Assets then (a) the Debtors or the Purchaser are

hereby authorized to execute and file such statements, instruments, releases and other documents

on behalf of the person or entity with respect to the Assets and (b) the Purchaser is hereby

authorized to file, register, or otherwise record a certified copy of this Order, which, once filed,

registered, or otherwise recorded, shall constitute conclusive evidence of the release of all Liens

in or against the Assets of any kind or nature whatsoever.

18.     This Sale Order shall be binding upon all filing agents, filing officers, title

agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds,

administrative agencies, governmental departments, secretaries of state, federal, state, and local

officials, and all other persons and entities who may be required by operation of law, the duties

of their office, or contract, to accept, file, register or otherwise record or release any documents

or instruments, or who may be required to report or insure any title or state of title in or to any of the Assets. Each and every federal, state, and local governmental agency or department or office is hereby authorized to accept this Sale Order and any and all documents and instruments necessary and appropriate to consummate the Transaction contemplated by the APA.

19.     This Court shall retain exclusive jurisdiction to implement and effectuate the provisions of this Order and the APA and to resolve any issue or dispute concerning the interpretation, implementation or enforcement of this Order and the APA and any subsequent agreement as required to be entered into between the Debtors and the Purchaser pursuant to this Order, or the rights and duties of the parties hereunder or thereunder, including, without limitation, any issue or dispute concerning the transfer of the Assets free and clear of Liens.

20.     Any stay, modification, reversal or vacation of this Order will not affect the validity of any obligation of the Debtors to the Purchaser incurred under this Order. Notwithstanding any such stay, modification, reversal or vacation, all obligations incurred by the Debtors under this Order and the APA prior to the effective date of such stay, modification, reversal or vacation will be governed in all respects by the original provisions of this Order, and the Purchaser is entitled to the rights, privileges and benefits granted in this Order with respect to all such obligations.

21.     Nothing contained in any plan confirmed in these cases or any Order of this Court confirming such plan shall conflict with or derogate from the provisions of the APA or the terms of this Order.

22.     The Transaction contemplated by the APA is undertaken by the Purchaser in good faith, as that term is used in Section 363(m) of the Bankruptcy Code. Accordingly, the

15

reversal or modification on appeal of the authorization provided herein to consummate the Transaction shall not affect the validity of the Transaction as to the Purchaser, except to the extent such authorization is duly stayed pending such appeal prior to such consummation. The evidence presented or proffered has demonstrated that the Purchaser is a purchaser in good faith of the Assets and is entitled to all of the protections afforded by Section 363(m) of the Bankruptcy Code.

23.    The terms and provisions of this Order shall be binding in all respects upon and shall inure to the benefit of, the Debtors, their successors and assigns, if any, their estates and their creditors, the Purchaser and their affiliates, successors and assigns, and shall be binding in all respects upon any affected third parties including, but not limited to, all persons asserting Liens in or against such Assets, notwithstanding any subsequent appointment of any Chapter 11 or Chapter 7 trustee(s), upon which such terms and provisions likewise shall be binding.

24.    Based upon the evidence presented or proffered, it has been determined that the Purchaser shall not be deemed to (a) be the successor in interest of the Debtors; (b) have, de facto or otherwise, merged with or into the Debtors; or (c) be a continuation of the Debtors. Neither the purchase of the Assets by Purchaser nor the Transaction contemplated hereby will cause the Purchaser or any of its affiliates to be deemed a successor in any respect to Debtors' business within the meaning of any federal, state or local revenue, pension, ERISA, tax, labor or environmental law, rule or regulation or under any products liability law or doctrine with respect to Debtors' liabilities under such laws, rules, regulations and doctrines.

16

25.     The failure specifically to include any particular provision of the APA in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the APA be authorized and approved in its entirety. Likewise, all of the provisions of this Order are non-severable and mutually dependent. In the event there are any inconsistencies between this Order and the Sale Motion or the APA, the terms of this Order shall control.

26.     The APA and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto, in a writing to be signed by all parties, and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment or supplement does not has a material adverse effect on the Debtors' estates.

27.     This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay in the implementation of this Order. In the event that all conditions precedent to closing have been met or waived under the APA, the Debtors and the Purchaser are hereby authorized to consummate the Transaction upon entry of this Order or as soon as reasonably possible thereafter.

28.     In recognition of the value created through TMW's participation in the Auction process, and consistent with the agreement by the Debtors and the Committee at the June 10, 2009 status conference and at the June 15, 2009 Auction, and so as to avoid any

17

disputes between the parties about the Auction process or the value of each bid, TMW shall have an allowed administrative claim pursuant to 11 U.S.C § 503(b) for its actual out of pocket expenses (including the fees and expenses of its third party professionals) incurred in connection with its bid for the Assets (the "TMW Admin Claim"). The reasonableness of the amount of the TMW Admin Claim shall be determined by the Court after application by TMW on notice to parties in interest and paid by the Debtors within five (5) days of this Court's determination of its reasonableness.

29.     In recognition of the additional value created through the participation of Crown in connection with the continued Auction conducted on June 12, 2009, and June 15, 2009, including but not limited to in connection with its joint bid with TMW, and in addition to the Break-Up Fee and Expense Reimbursement approved as payable to Crown in connection with the Bid Procedures Order, Crown shall be allowed a further Expense Reimbursement of $50,000 to be paid at Closing.

30.     Notwithstanding any other provision in this Order, upon assumption and assignment of the Assumed Contracts, the Purchaser shall assume and be responsible for performing all obligations and liabilities arising under the Assumed Contracts from and after the Closing Date.

31.     The objections to the Cure Amounts (individually, a "Cure Objection," and collectively, the "Cure Objections") interposed by 4 USS LLC, 201 Needham Street LLC, 426 Washington Street Owner LLC, CF 620 Owner One LLC, Connecticut/DeSales Partnership, FB Newton Properties LLC, Federal Realty Investment Trust, Grosvenor International (American Freeholds) Limited and BBCAF-VRC, LLC, Manhasset Venture, LLC, Press

18

Building, LLC, Teachers Insurance and Annuity Association of America, and Vornado Bergen Mall LLC (the "Objectors") are hereby reserved and continued to that omnibus hearing scheduled for June 25, 2009, at 10:00 a.m., or such later time as may be agreed by the Debtors and each of Objectors with respect to its Cure Objection. Notwithstanding any other provisions of this Order, upon the Closing Date, the Debtors shall reserve $3.25 million (or, if less, the cure amounts asserted by the foregoing parties in the Cure Objections) from the proceeds of the Transaction, which reserve shall be used to satisfy agreed Cure Amounts with respect to the Cure Objections or such Cure Amounts with respect to the Cure Objections as may be fixed by further, final order of the Court. The establishment of this reserve and the provisions of this Paragraph 31 are without prejudice to the rights, claims, causes of action, and defenses of the Debtors and the Objectors with respect to the Cure Objections.

32. The Cure Objection interposed by Quest 28 Millbury LLC ("Quest") is deemed withdrawn, the Debtors and Quest having agreed that the Cure Amount owed to Quest is $353,735.75 and that such sum shall be paid to Quest at the Closing or promptly thereafter, and Quest having acknowledged that neither Debtors nor Purchaser, or any of them, shall be responsible or liable for any other amounts or lease obligations identified or referred to in the Cure Objection interposed by Quest.

33. Notwithstanding any other provision herein, the sale, assumption and assignment of the Debtors' lease (the "Lease") of nonresidential real property at 1133 Connecticut Avenue, N.W., Washington, DC with Connecticut/DeSales Partnership ("Conn/DeS") shall be subject to claims one and two of the complaint (the "Lease Claims") filed on October 6, 2008, by Conn/DeS in Civil Action No. 08-0007104, pending in the Superior

19

Court for the District of Columbia (the "DC Action") against Filene's Basement, Inc. ("FBI"). On consummation of the sale, the Purchaser shall assume the entire interest and position of FBI in the Lease Claims, and FBI will remain as the defendant with respect to claims three through six of the complaint. Within thirty (30) days after the sale, unless extended by consent of Conn/DeS, the Purchaser shall give written notice to the court in the DC Action that (a) the purchaser has assumed FBI's entire interest and position in the Lease Claims and (b) as a result, the previously filed suggestion of bankruptcy in the DC Action is no longer applicable to the Lease Claims. At the same time, the Purchaser shall seek to be substituted in FBI's place in the DC Action with respect to the Lease Claims only. After assignment of the Lease, the Debtors shall not have any liability for any breach of the Lease occurring after such assignment. The Debtors, the Purchaser, and Conn/DeS reserve all rights, claims, causes of action, and defenses, without limitation, with respect to the DC Action, and therefore no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to the DC Action or to any rights, claims, causes of action, and defenses, without limitation, with respect to the DC Action.

34. At Closing, pursuant to Section 8.7 of the APA, the Debtors are hereby authorized and directed to enter into an agreement with 426 Landlord that has the effect of terminating the 426 Lease immediately as of the Closing.

35. Notwithstanding any other provision of this Order, no provision of this Order shall operate as a release of claims that the Pension Benefit Guaranty Corporation or the Filene's Basement, Inc. Pension Plan may assert.

20

36.     Any and all monetary amounts, if any, that may become payable by the Debtors to the Purchaser pursuant to true-up's, adjustments, or reconciliations agreed by the parties to be undertaken in respect of amounts estimated by the parties at Closing for the purposes of closing the transaction shall (a) constitute allowed superpriority administrative expenses of the Debtor's estate under §§ 503(b) and 507(a)(1) of the Bankruptcy Code, to the extent of any such reconciled amounts determined to be due from the Debtors to the Purchaser by agreement of the parties or Order of this Court and (b) be paid by the Debtor in the time and manner provided for in the agreement (and such related agreements) without further court order.

37.     No bulk sales law or any similar law of any state or other jurisdiction applies in any way to the Sale.

38. 39     The findings of fact set forth above and conclusions of law stated herein shall constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any finding of fact later shall be determined to be a conclusion of law, it shall be so deemed, and to the extent any conclusion of law later shall be determined to be a finding of fact, it shall be so deemed.

Date: June 17, 2009

_____
The Honorable Mary F. Walrath
United States Bankruptcy Judge

38. Insert attached hereto.

Insert re: #38

38. The provisions of this order in general, and any provision regarding "claims", "Liens" or "Assumed Liabilities" in particular, notwithstanding, Purchaser shall remain liable for all so-called year-end adjustments or true-ups as and when same become due pursuant to the terms of the Real Property Leases, irrespective of when said obligations may have accrued.